## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALAN D. BARR and  
JOHN MALANDRUCCOLO, JR.,  

    Plaintiffs,  

      v.  

CARPENTERS PENSION AND ANNUITY  
PLAN OF PHILADELPHIA AND  
VICINITY, successor by merger to  
CARPENTERS LOCAL 626 PENSION  
AND ANNUITY PLAN,  

    Defendant.

Civil Action No. 04-1468

---

### DEFENDANT'S OPENING BRIEF
### IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### AGAINST PLAINTIFFS

Timothy J. Snyder (No. 2408)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6645
Facsimile: (302) 576-3336
Email: tsnyder@ycst.com

Of Counsel:

Kent Cprek
JENNINGS SIGMOND, P.C
510 Walnut Street, Suite 1600
Philadelphia, PA 19106-3683
(215) 351-0615

Counsel for Defendant

September 30, 2005

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ............................................................................ ii

STATEMENT OF THE STAGE AND NATURE OF PROCEEDING............................. 1

SUMMARY OF ARGUMENT ......................................................................... 2

STATEMENT OF FACTS .............................................................................. 4

ARGUMENT ............................................................................................. 7

I.      THE STANDARDS FOR SUMMARY JUDGMENT............................... 7

II.     THE PLAN REQUIRES AN ADVANCE APPLICATION TO BEGIN
        PAYMENT OF MONTHLY BENEFITS ................................................ 9

        A.      The Plan Terms ............................................................... 9

        B.      The Summary Plan Description ..................................... 11

III.    THE DECISION OF THE TRUSTEES WAS NOT ARBITRARY OR
        CAPRICIOUS...................................................................................... 14

        A.      The Decision of the Trustees Is Final And Binding Under
                the Terms of the Plan .................................................... 14

        B.      Deference Is Particularly Important In Multiemployer Plans
                As The Joint Board Of Trustees Acts As An Arbitrator .............. 16

        C.      The Trustees' Rationally Interpreted The Plan To Require
                An Advance Application To Avoid Unexpected Costs and
                Financial Gamesmanship by Participants ...................... 20

IV.     BARR'S CLAIMS ARE TIME-BARRED............................................. 22

CONCLUSION............................................................................................. 24

# TABLE OF AUTHORITIES

<u>Page No.</u>

**Cases**

*Abnathya v. Hoffman-LaRoche, Inc.,*
  2 F.3d 40 (3d Cir.1993) ........................................................................ 14

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)........................................................................ 7, 8, 9

*Arco-Polymers, Inc. v. OCAW, Local 874,*
  671 F.2d 752 (3d Cir. 1982) .................................................................. 18

*Baker v. Greater Kansas City Laborers Welfare Fund,*
  699 F.Supp. 210 (W.D. Mo. 1988) ........................................................ 15

*Block v. Pitney Bowes, Inc.,*
  952 F.2d 1450 (D.C. Cir. 1992)............................................................. 16

*Brentwood Medical Associates v. United Mine Workers of America,*
  396 F.3d 237 (3rd Cir. 2005) ................................................................ 19

*British Airways Bd. v. Boeing Co.,*
  585 F.2d 946 (9th Cir. 1978) .................................................................. 8

*Cawby v. Delaware Department Of Labor, Unemployment Insurance*
*  Appeal Board,*
  -- A.2d -- 2000 WL 33157793 (Del.Super. 2000) ...................................... 21

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)........................................................................ 7, 8, 9

*Citgo Asphalt Refining Co. v. Paper, Allied-Industries, Chemical & Energy*
*  Workers Int'l Union, Local No. 2-991,*
  385 F.3d 809 (3d Cir. 2004) .................................................................. 20

*Dade v. North American Phillips Corp.,*
  68 F.3d 1558 (3d Cir. 1995) .................................................................. 15

*Davis v. Burlington Industries, Inc.*
  966 F.2d 890 (4th Cir. 1992) ................................................................. 15

*Dist. 2 United Mine Workers of Amer. v. Helen Min. Co.,*
  762 F.2d 1155 (3d Cir. 1985) ................................................................ 15

*Eastern Associated Coal Corp. v. United Mine Workers,*
    531 U.S. 57 (2000)........................................................................................... 19

*Edwards v. Wilkes-Barre Publishing Co., Pension Trust,*
    757 F.2d 52 (3d Cir. 1985) ........................................................................... 16

*Epright v. Environmental Resources Management, Inc. Health & Welfare Plan,*
    81 F.3d 335 (3d Cir. 1996) ........................................................................... 16

*Firestone Tire and Rubber Co. v. Bruch,*
    489 U.S. 101 (1989)....................................................................................... 14

*Fontana v. Diversified Group Administrators, Inc.*
    67 Fed.Appx. 722 (3d Cir. 2003)................................................................ 22

*Freccia v. Conectiv,*
    379 F.Supp.2d 620 (D. Del. 2004)............................................................... 20

*Fregara v. Jet Aviation Business Jets,*
    764 F.Supp. 940 (D. N.J. 1991).................................................................... 8

*Gaydosh v. Lewis,*
    410 F.2d 262 (D.C. Cir. 1969)...................................................................... 17

*General Drivers, W.&H., Local Union No. 89 v. Riss and Company, Inc.,*
    372 U.S. 517 (1963)....................................................................................... 16

*General Motors Corp. v. Willis,*
    --A.2d -- 2000 WL 1611067 (Del.Super. 2000) ......................................... 21

*Hlinka v. Bethlehem Steel Corp.,*
    863 F.2d 279 (3d Cir. 1988) ......................................................................... 15

*International Brotherhood of Teamsters, C.W.&H. of America, Local 249 v.*
    *Western Pennsylvania Motor Carriers Association,*
    574 F.2d 783 (3d Cir. 1978) ......................................................................... 16

*J.E. Mamiye & Sons, Inc. v. Fidelity Bank,*
    813 F.2d 610 (3d Cir. 1987) ......................................................................... 8

*Jersey Central Power & Light Co. v. Lacey Township,*
    772 F.2d 1103 (3d Cir. 1985) ....................................................................... 8

*Kane Gas, Light & Health Co. v. International Brotherhood of Firemen and Oilers,*
    687 F.2d 673 (3d Cir. 1982) ......................................................................... 19

*Keebler Co. v. Truck Drivers, Local 170,*
    247 F.3d 8 (1st Cir. 2001)............................................................................. 20

*Lattimer-Stevens Company v. United Steelworkers of America,*
    913 F.2d 1166 (6th Cir. 1990) .................................................................. 17

*Lord v. Reliance Standard Life Insurance Co.,*
    362 F.Supp.2d 480 (D. Del. 2005).............................................................. 14

*Ludwig Honold Manufacturing Co. v. Fletcher,*
    405 F.2d 1123 (3d Cir. 1969) .......................................................... 17, 18

*Lujan v. National Wildlife Fed.,* 497 U.S. 871, 888 (1990).................................................. 9
*Major League Baseball Players Ass'n. v. Garvey*
    532 U.S. 504 (2001)........................................................................... 17, 18

*Major League Umpires Association v. American League of Professiona*
    *Baseball Clubs,*
    357 F.3d 272 (3d Cir. 2004) ....................................................................... 18

*Martorana v. Board of Trustees, Steamfitters L.U. 420 H.W. and Pension Fund,*
    404 F.3d 797 (3d Cir. 2005) ....................................................................... 14

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1989)............................................................................... 7, 8

*Moats v. United Mine Workers of America,*
    981 F.2d 685 (3d Cir. 1992) ............................................................... 14, 16

*Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.,*
    868 F.2d 52 (3d Cir. 1989) ........................................................................ 19

*Nazay v. Miller,*
    949 F.2d 1323 (3d Cir. 1991) ............................................................ 14, 15

*News America Publications, Daily Racing Form Division v. Newark*
    *Typographical Union, Local 103,*
    918 F.2d 21, 24 (3d Cir.), *reh. denied,* 921 F.2d 400 (3d Cir. 1990) ..................... 17, 18

*NF&M Corp. v. United Steelworkers of America,*
    524 F.2d 756, 759 (3d Cir. 1975) .............................................................. 18

*Pell v. E.I. DuPont De Nemours & Co.*
    348 F.Supp.2d 306 (D. Del. 2004)............................................................. 14

*Peterson v. Lehigh Valley District Council,*
    676 F.2d 81 (3d Cir. 1982) ......................................................................... 7

*Richmond, Fredericksburg & Potomac Railroad Company v. Transportation*
    *Communications International Union,*
    973 F.2d 276 (4th Cir. 1992)...................................................................... 17

iv

*Roberts & Schaeffer Co. v. Local 1846, UMWA,*
    812 F.2d 883 (3d Cir. 1987) ............................................................... 18, 19

*Rueda v. Seafarers Intern. Union,*
    576 F.2d 939 (1st Cir. 1978) ...................................................................... 17

*Sandoval v. Aetna Life and Cas. Ins. Co.,*
    967 F.2d 377 (10th Cir. 1992) ................................................................... 16

*Sandy v. Reliance Life Insurance Co.,*
    222 F. 3d 1202 (9th Cir. 2000) ................................................................. 15

*Siegel Transfer, Inc. v. Carrier Express, Inc.,*
    54 F.3d 1125 (3d Cir. 1995) ................................................................... 8, 9

*Stafford v. E.I. Dupont De Nemours,*
    27 Fed.Appx. 137; 27 Employee Benefits Cas. (BNA) 1582 (3d Cir. 2002) ............... 22

*Syed v. Hercules, Inc.,*
    214 F.3d 155 (3d Cir. 2000) ...................................................................... 22

*Tanoma Mining Co., Inc. v. Local Union No. 1269, UMWA,*
    896 F.2d 745 (3d Cir. 1990) ...................................................................... 18

*Tomlin v. Board of Trustees,*
    386 F.2d 148 (9th Cir. 1978) ..................................................................... 16

*Tunnell v. Wiley,*
    514 F.2d 971 (3d Cir. 1975) ........................................................................ 8

*United Paperworkers International Union v. Misco,*
    484 U.S. 29 (1987) ............................................................................. 18, 19

*United Parcel Service, Inc. v. International Brotherhood of Teamsters,*
    *C.W.&H. of America, Local Union No. 430,*
    55 F.3d 138 (3d Cir. 1995) ........................................................................ 18

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,*
    363 U.S. 593 (1960) ............................................................................. 17, 19

*Vitale v. Latrobe Area Hospital,*
    420 F.3d 278 (3d Cir. 2005) ...................................................................... 15

*W.R. Grace & Co. v. Local Union 759, International Union of the United*
    *Rubber, Cork, Linoleum and Plastic Workers of America,*
    461 U.S. 757 (1983) .................................................................................. 19

v

*West Indian Co., Ltd. v. Government of Virgin Islands,*
    844 F.2d 1007 (3d Cir. 1988) ........................................................................ 8

**Statutes**

26 U.S.C. §401(a)(9) ..................................................................................... 11

29 U.S.C. §186(c)(5) ................................................................................. 3, 16

29 U.S.C. §1104(a)(1)(D) ............................................................................. 15

29 U.S.C. §4041A ........................................................................................ 11

10 Del.C. §8111 ........................................................................................... 22

19 Del.C. §3313(p) ....................................................................................... 21

**Rules**

Fed.R.Civ.P. 56(c) ......................................................................................... 7

Fed.R.Civ.P. 56(e) ......................................................................................... 7

**Regulations**

*Preamble, Notice Of Proposed Rulemaking, Special Rules Under Section 417(a)(7)
    For Written Explanations Provided By Qualified Retirement Plans After Annuity
    Starting Dates,*
    66 Fed. Reg. 3915 2001-1 C.B. 961 (January 17, 2001) ............................. 10

Treas. Reg. [26 C.F.R.] 1.401-1(b)(1)(i) ..................................................... 11

Treas. Reg. [26 C.F.R.] 1.417(e)-1 .............................................................. 10

DB01:1864279.1                                                    019367.1005

## STATEMENT OF THE STAGE AND NATURE OF PROCEEDING

Defendants Carpenters Local 626 Pension and Annuity Plan ("Local 626 Plan") and its successor by merger, the Carpenters Pension and Annuity Plan of Philadelphia and Vicinity, file this Motion for Summary Judgment. Plaintiffs are current disability retirees from the Local 626 Plan, before its merger. Plaintiffs' eligibility for a pension is not in issue. The only issue presented by the Complaint is whether Plaintiffs are entitled to benefits back to their original date of disability, rather than benefits starting only with the month after they filed an actual pension application with the Local 626 Plan office.

Barr filed an application to retire under the Local 626 Plan on November 22, 2002, Barr Ex. 3, Appx. A1.[1]  On December 13, 2002, Barr received a Social Security Disability Award that he forwarded to the Fund Office, Barr Ex. 9, Appx. A9. He was a granted a disability pension by the Local 626 Plan, effective December 1, 2002, and received his first check in early January 2003, Barr 14, 26, Appx. A48. In response to a request for payments for June to November the Local 626 Plan issued an initial determination denying the request on August 6, 2003, Barr Ex. 5A, Appx. A10a. On May 26, 2004, Barr filed an appeal from that determination, Barr Ex. 6, Appx. A12. On July 20, 2004, the Local 626 Plan Trustees responded to the May 26, 2004 letter and again denied the request, Barr Ex. 1, Appx. A13. Barr filed this action on November 24, 2004, D.I. 1.

---

1    The excerpts from depositions and related exhibits supporting this Motion are contained in a separate Appendix filed with this Motion.  The depositions and related exhibits is referenced by the name of the deponent, Plaintiff Alan D. Barr ("Barr") , Plaintiff John Malandruccolo, Jr., ("Malandruccolo") Scott Ernsberger ("Ernsberger"), the manager of the Local 626 Benefit Fund Office at GEMGroup or Jane't Garnett ("Garnett"), a Pension Analyst with GEMGroup. The  citation format is "[deponent name], [transcript page number]" or "[deponent name], [exhibit number] [section number, if applicable]," followed by the page number in the Appendix in the format "Appx. A [page number]."

1

Malandruccolo filed an application to retire under the Local 626 Plan on June 18, 2003, Malandruccolo Ex. 13, Appx. A68.  On June 7, 2003, Malandruccolo received a Social Security Disability Award with a disability date of December 17, 2002 that he provided to the Fund office, Malandruccolo Ex. 14, Appx. A74.  He was a granted a disability pension by the Local 626 Plan, effective July 1, 2003, Malandruccolo Ex. 14, Appx. A77.  Malandruccolo filed a letter to request payments for January to June on July 11, 2003, Malandruccolo Ex. 17, Appx. A75. The Local 626 Plan Trustees deferred consideration of the appeal until the second quarterly meeting after the appeal and issued a decision denying the request on January 16, 2004, Malandruccolo Ex. 17, Appx. A77. On April 25, 2004, Malandruccolo filed a renewed appeal, Malandruccolo Ex. 14, Appx. A78. On July 20, 2004, the Local 626 Plan Trustees responded to the April 25 letter and again denied the request, Malandruccolo Ex. 14, Appx. A79. Malandruccolo filed this action on November 24, 2004, D.I. 1.

An answer to the Complaint was filed on December 28, 2004, D.I. 5. The case then proceeded through discovery, which has now closed. Defendants now move for summary judgment.

## SUMMARY OF ARGUMENT

The sole claim made by Plaintiffs is that they are entitled to disability benefits back to the first month after their date of disability (as determined by the Social Security Administration) under the terms of the Carpenters Local 626 Pension and Annuity Plan ("Local 626 Plan").  Neither Plaintiff read the Plan document or summary plan description that contradicted their claims and assumptions.  Both now nonetheless complain that they should receive benefits for earlier months, because of a settlement with another participant.

2

The section on "General Conditions" for payment of pension benefits under the Local 626 Plan explicitly provided that "[p]ayment will not ... be made until a complete application is filed or before Retirement, separation from service, death, Disability or termination of the Plan unless required by law", Garnett, Ex. G1, Local 626 Plan, §5.01, Appx. A172. The summary plan description confirmed this with its advice that "[y]our benefit will be paid after you stop carpentry work in Delaware and Maryland and surrounding metropolitan areas and file a benefit application," Barr Ex. 10, Local 626 Plan Summary Plan Description, p.10, Appx. A18. The Trustees of the Plan have interpreted and applied the Local 626 Plan to allow payment of pension benefits to begin only on the first day of the month after an actual benefit application is filed with the Pension Plan Office.

The Local 626 Plan is a multiemployer pension plan that is governed by a joint board of labor and management Trustees, as required by 29 U.S.C. §186(c)(5). The Plan provides that the decision of the Trustees on a benefit application and an appeal is final and binding and, consistent with case law on joint labor-management committees, will be overturned only for the narrow grounds on which an arbitration award can be overturned, Garnett Ex. G1, Local 626 Plan, §7.09, Appx. A175. The Trustees' interpretation of the Plan and practices thus is reviewed only under a very deferential "arbitrary and capricious" standard of review – especially as every dollar paid to one participant from the limited asset pool of a multiemployer plan affects other participants.

The Trustees' interpretation of the Plan to require the filing of an application to begin payment of monthly pension benefits is entirely rational and consistent with the practice of the Local 626 Plan. It avoids unexpected costs for retroactive benefit (often

3

years after the fact in disability cases) that have not been anticipated in setting

contribution levels and funding the plan. The application rule also prevents participants

from gaming the system, as, for example, by settling or collecting a workers'

compensation, unemployment insurance or other claim that might be affected by pension

eligibility, and then claiming a retroactive pension from the plan for the same period of

time. Plaintiffs simply cannot satisfy their burden of proving arbitrary and capricious

action by the Trustees on the undisputed facts.

Barr's claim is also time-barred under the one-year limitations period in

Delaware. Barr was a granted a disability pension by the Local 626 Plan, effective

December 1, 2002, and received his first check in early January 2003. He received an

initial determination denying the request for retroactive payment on August 6, 2003.  He

did not timely appeal from that denial. He also only filed suit well over a year later on

November 24, 2004 and is time-barred.

## STATEMENT OF FACTS

Plaintiffs Alan D. Barr ("Barr") and John Malandruccolo, Jr. ("Malandruccolo")

were participants in the Carpenters Local 626 Pension and Annuity Plan ("Local 626

Plan"), Barr 8, Malandruccolo 9, Appx. A29, A95.  After their retirement, the Local 626

Plan merged into the Carpenters Pension and Annuity Plan of Philadelphia and Vicinity,

effective August 31, 2004 ("Council Plan"), Complaint and Answer, ¶3, D.I. 1, 5.  The

merged plan thus appears as a defendant in this action.[2]

---

2       The terms of the Merger Agreement leave prior Local 626 plan pensions in place
and pay them under the terms of the prior Local 626 Plan.

Barr

Alan D. Barr is a former carpenter with Local 626 in Delaware, Barr 8, Appx.
A29. He began work under the Local 626 Plan in 1987, Barr 8, Appx. A29. He currently
receives a disability pension from the merged Carpenters plan after retiring from the
Local 626 Plan, Barr, 8, 10, Appx. A29, A31.

Barr did not read the Local 626 Plan Summary Plan Description (SPD) provided
to him in 2001 nor the pension application form, Barr 53,17,29,38, 23-24, Barr Ex. 3, 10,
Appx. A63, A38, A51, A60, A45-A46, A15-A25. Barr filed his application for Social
Security disability benefits in May 2002, Barr 9, Appx. A30. However, he only applied
for a disability pension under the Local 626 Plan on November 22, 2002, Barr Ex. 3,
Appx. A3. On December 13, 2002, Barr received an award of Social Security disability
benefits with a disability date of May 12, 2002, Barr 8-9, 33-34, Appx. A29-A30, A9.
He forwarded this to the Local 626 Plan, where it was received on December 22, 2002,
Barr 13, Barr Ex. 9, Appx. A34, A9 (date received stamp). Barr was then granted a
"Disability A" pension by the Plan office, Barr 26, 13-14, Barr Ex. 9, Appx. A48, A34-
A35, A10, A11. His first check was paid to him for the month of December 2002, Barr
14, 26, Appx. A35, A48.

After his retirement, Barr heard a rumor that one participant had received
retroactive benefits, Barr 15, Appx. A36.[3] He then asked the Plan for retroactive
payment of benefits from June 2002, the first day of the month after he was found
disabled by Social Security, Barr 16, Appx. A37. The Plan Office denied his request on
August 6, 2003, Barr 26-27; Barr Ex 5A, Appx. A48-A49, A10a. Barr did not appeal

---

3    There is no record of a letter before 2004 in Barr's files or Plan files. The request
was however answered.

from that determination until May 26, 2004, Barr 25-26, Barr Ex. 6, Appx. A47-A48,

A12. The Trustees answered the May 26 letter on July 20, 2004, Barr Ex. 7, Appx. A13.

>        Malandruccolo

Malandruccolo is similarly a retired participant from the Local 626 Plan,

Malandruccolo 9, Appx. A95. Malandruccolo had a lawyer and filed for worker's

compensation sometime before stopping work in 2002, Malandruccolo 17-18, 21-24, 29-

30, 50, Appx. A102-A107, A108-A109, A123. He filed for Social Security disability

benefits immediately after stopping work in December 2002, Malandruccolo 53, Appx.

A126. Malandruccolo only filed an application with the Local 626 Plan Office on June

18, 2003, Malandruccolo 42, Malandruccolo Ex. 13, Appx. A115, A71. His pension was

made effective July 2003 and is currently being paid, Malandruccolo 61, 34;

Malandruccolo Ex. 14, Appx. A134, A113, A79.

Alan Barr spoke to Malandruccolo about a possible claim for retroactive benefits,

Malandruccolo 71-72, Appx. A143-A144. As a result, Malandruccolo's wife, who

handles all of his affairs, wrote a letter to the Local 626 Plan that he signed on July 11,

2003 requesting monthly benefits retroactive to December 2002, when he was found

disabled by Social Security, on the sole claim that he did not know what Social Security

would do, Malandruccolo 62-65, Malandruccolo Ex. 17, Appx. A135-A138, A75. The

Trustees responded in a letter dated January 16, 2004 and denied the claim on the basis of

the Plan rule requiring an advance application, Malandruccolo 67; Malandruccolo Ex.

14, Appx. A140, A79.

Malandruccolo filed a renewed appeal on April 25, 2004, Malandruccolo 67,

Malandruccolo, Ex. 14, Appx. A140, AA78. The Trustees answered the April 25 letter

on July 20, 2004 and again denied the request, Malandruccolo Ex. 14, Appx. A79.

6

## ARGUMENT

### I.    THE STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides:

> [Summary Judgment] shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

Fed.R.Civ.P. 56(c). As explained in *Peterson v. Lehigh Valley District Council*, 676 F.2d

81, 83 (3d Cir. 1982), summary judgment is a "useful procedure when there is no dispute

about the critical facts and it serves to eliminate the expense and delay of unnecessary

trials."

Under the standards announced by the United States Supreme Court's summary

judgment trilogy, "the mere existence of some alleged factual dispute between the parties

will not defeat an otherwise properly supported motion . . . the requirement is that there

be *no genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-248 (1986) (emphasis in original). See also, *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1989). A

disputed fact is "material" only if it affects the outcome of the suit. *Anderson*, 477 U.S.

at 248. Where the moving party has made a properly supported motion for summary

judgment, the nonmoving party must come forward with specific facts to show that there

is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 248.

Once the movant demonstrates that an essential element of the nonmovant's case

is lacking, the nonmoving party "may not rest upon mere allegations or denials" of its

pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to demonstrate a

factual controversy as to that element. *Anderson,* 477 U.S. at 247; *J.E. Mamiye & Sons,*

7

*Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir. 1987). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *Matsushita*, 475 U.S. at 586 (nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts"); *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).

Statements in legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); *Tunnell v. Wiley*, 514 F.2d 971, 975 n.4 (3d Cir. 1975). "[A] genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice." *Jersey Central Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985).

"Factual disputes that are irrelevant or unnecessary will not be considered." *Anderson,* 477 U.S. at 248. *See also, West Indian Co., Ltd. v. Government of Virgin Islands*, 844 F.2d 1007, 1016 (3d Cir. 1988) (upholding the use of summary judgment where "disputes over these and other items claimed by the intervenors to be material facts are not `disputes over a fact that might affect the outcome of the suit, under the governing law. . .'"). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Fregara v. Jet Aviation Business Jets*, 764 F.Supp. 940, 945 (D.

8

N.J. 1991). "The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit." *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 888 (1990).

The existence of a genuine issue of material fact is determined by whether the evidence of the non-moving party is such that the fact finder reasonably could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. If the nonmovant fails to make a sufficient showing regarding an essential element of its case upon which it will bear the ultimate burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. *Celotex*, 477 U.S. at 321; *Siegel*, 54 F.3d at 1130-31. As demonstrated below, there are no genuine issues of material fact in this case and Defendants are entitled to judgment as a matter of law. Accordingly, the Court should dispose of this action by summary judgment and dismiss Plaintiff's Complaint.

## II. THE PLAN REQUIRES AN ADVANCE APPLICATION TO BEGIN PAYMENT OF MONTHLY BENEFITS

The only issues raised before the plan administrator were general claims of unfairness in the belief that other participants had received retroactive benefits and a generic claim that the plan document required such payments, Barr 16, Barr Ex. 5A, 6, Appx. A37, A10a, A11a, Malandruccolo 50, Malandruccolo Exs. 17, 14, Appx. A123, A75, A78. The complaint cites only the terms of the Local 626 Plan as the basis for Plaintiffs' claims.

### A. The Plan Terms

The structure and terms of the Local 626 Plan are straightforward and clear. Article 4 of the Plan, titled "BENEFITS," describes a number of retirement options and the monthly benefit payable under each option, Garnett Ex. G1, Local 626 Plan, Article

9

4, Appx. A169 – A171. This Article describes the calculation of the monthly benefit
amount under each option and provides that a participant may – but need not – retire after
the earliest possible date for payment under each option, see e.g. Garnett Ex. G1, Local
626 Plan §§4.01, 4.08, 4.09, 4.10. Appx A169-A171. This optional language recognizes
that a participant may wish to delay retirement past the earliest available date for a
variety of reasons. In the context of the Local 626 Plan, these include loss of the right to
elect "Special Early Retirement" with a special subsidy from ages 60-65, on a disability
retirement, Garnett Ex. G1, Local 626 Plan, §4.10(b) Appx. A171, avoiding a reduction
in benefits for early retirement, Garnett Ex. G1, Local 626 Plan, §4.09(b), Appx. A171, a
suspension of benefits on an anticipated return to work, Garnett Ex. G1, Local 626 Plan,
§§ 5.06, 5.07, Appx. A172, A173, or loss of other sources of income that might be
adversely affected by payment of a pension, such as unemployment insurance or workers
compensation.[4]

The Plan places the onus on a participant affirmatively to elect retirement through
rules on actual payment in a separate Article 5 – aptly termed "PAYMENT OF
BENEFITS," Garnett Ex. G1, Local 626 Plan, Article 5 (Appx. A172). Section 5.01
contains the overriding "General Conditions" on payment of any monthly retirement
benefit under the Plan.

---

4    The Internal Revenue Service has recently highlighted the problems with
retroactive payment of benefits in regulations that require a plan to disclose any reduction
in survivor benefits or other potential loss from retroactive payments, Treas. Reg. [26
C.F.R.] 1.417(e)-1; *Preamble, Notice Of Proposed Rulemaking, Special Rules Under
Section 417(a)(7) For Written Explanations Provided By Qualified Retirement Plans
After Annuity Starting Dates*, 66 Fed. Reg. 3915, 3918, 2001-1 C.B. 961 (January 17,
2001). A reduction can occur where the retroactive benefit has a lower monthly amount
due to an early retirement reduction, or, after normal retirement age, the absence of an
actuarial (interest) increase for delayed retirement.

> **General Conditions.** Benefits will only be paid to Vested
> Participants and their Spouses and Beneficiaries. *Payment will not*
> *otherwise be made until a complete application is filed or before*
> *Retirement, separation from service, death, Disability or*
> *termination of the Plan unless required by law.* Payment of the
> accrued benefit (and any subsidies or ancillary benefits) to or with
> respect to a Participant under the Plan shall not be duplicated. No
> more than one form of payment or benefit shall be paid for any one
> month notwithstanding the occurrence of multiple retirement
> events or the existence of multiple payment options in or before
> the month.

Garnett Ex. G1, Local 626 Plan, §5.01, Appx. A172 (emphasis supplied). This set of

general conditions mandates: (1) an application, and (2) a permissible distributable event

for a pension plan under IRS regulations, Treas. Reg. [26 C.F.R.] 1.401-1(b)(1)(i), 1.401-

2, 29 U.S.C. §4041A, before payment of any benefit under the Plan.[5] The Trustees thus

properly began payment of Plaintiffs' monthly retirement benefits only in the month after

they filed their applications with the Plan office.

### B.    The Summary Plan Description

The summary plan description reflects the Trustees' interpretation and Plan

practice. At the very beginning of the section on "PAYMENT OF BENEFITS," Barr Ex.

10; Malandruccolo, Ex. 15,  Local 626 Plan Summary Plan Description (2002) – Active

Participants ("Local 626 Plan SPD"), Appx. A18, A83 (emphasis supplied), the booklet

explains the general conditions for payment of benefits.

### PAYMENT OF BENEFITS

### When can I retire and get my normal retirement benefit?

> Your full unreduced earned monthly benefit can be paid after you
> vest and reach age 65. Your benefit will be paid after you stop
> carpentry work in Delaware and Maryland and surrounding

---

5    The only exception to the application rule is mandatory payments after age 70 ½
that are "required by law" and must be initiated by the plan even in the absence of a
claim, 26 U.S.C. §401(a)(9); Garnett Ex. G1, Local 626 Plan, §5.03, Appx. A172.

metropolitan areas and file a benefit application. The Plan will begin payments to you after you reach age 70½ even if you do not apply and continue working.

**Can I get benefits before normal retirement age?**

You can get your full earned monthly benefit before age 65 by qualifying for Special Early Retirement or if you become disabled. You may also receive reduced early retirement benefits. The availability of these options depends on the number of "Benefit Years" you earn and other conditions.

Barr did not read the Local 626 Plan Summary Plan Description (SPD) provided to him

in 2001 nor the pension application form, Barr 53, 17, 29, 38, 23-24, Barr Ex. 3, 10,

Appx. A63, A38, A51, A60, A45-A46, A15-A25. Malandruccolo claims that he (or his

wife) read the SPD, Malandruccolo 55-56, 61, 65-66, 81-82, Appx. A128-A129, A134,

A139-A140, A153-A154. If that is true, his claimed belief that he thought a Social

Security disability award was required for a disability pension application,

Malandruccolo 62-63, Appx. A135-A136, and his appeal on the basis that he did not

know what Social Security would do, Malandruccolo Ex. 17, Appx. A75, are

unreasonable and even bizarre.

While the Plan was amended before his application,[6] a short look at the SPD

provisions on disability pensions would have dispelled Plaintiffs' claims and

misperceptions for other reasons as well. If Malandruccolo had read the SPD, he might

have noticed that the Plan's prior disability provisions, for a participant with ten (10) or

_____

6       For applications after June 1, 2001, the Local 626 Plan raised the disability standard to match the "total and permanent" concept used by Social Security, but still allowed 60 months of payment without a Social Security disability award. Barr Ex. 3, Appx. A2 (revised standard noted on application); Garnett Ex. G2, Local 626 Plan amendment, P. 3, Appx. A180. This is the "Disability B" procedure that was explained to Barr, Barr 12-13, 25, Garnett 17, 19-22, Appx. A34, A47, A159-A160.

more years of service, only required occupational disability and inability to work as a

carpenter for the first 60 months of payments. As the booklet explained,

### What if I am disabled?

You can retire early after a disability. If you have more than ten
(10) Benefit Years of credit (800 or more contributory hours for a
Plan Year), the disability need only prevent you from performing
the principal functions of a carpenter. If you have less than ten
(10) years of benefit credit, you must be totally disabled from all
work under the rules for Social Security disability benefits.

*      *      *

There is a cap of sixty (60) monthly disability payments in the
absence of a Social Security disability benefit award. If you take a
disability pension, you cannot take Special Early Retirement later
unless you recover and return to regular work.

The benefit for a participant with an award of Social Security
disability benefits is payable while you are disabled. If you remain
disabled until normal retirement age, you will be treated as taking
normal retirement at that time.

Barr Ex. 10, Malandruccolo Ex. 15, Local 626 Plan SPD, p.12, Appx. A20, A85. This

clearly contradicted Malandruccolo's claimed (and clearly unilateral) misperception that

an award of Social Security benefits was a condition to payment of a disability pension.

Barr similarly might have realized the advantages of the "Disability B" option that

allowed him to begin benefits immediately (albeit under a more stringent disability

standard by the time of his application) and gave him up to five (5) years to receive an

award of Social Security disability benefits. The SPD clearly put both Plaintiffs at least

on inquiry notice about the supposed need for a Social Security award to receive a

disability pension.

### III.    THE DECISION OF THE TRUSTEES WAS NOT ARBITRARY OR CAPRICIOUS

####    A.    The Decision of the Trustees Is Final And Binding Under the Terms of the Plan

Under *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989), ERISA

fiduciaries who have discretion to interpret the terms of the plan can only be reversed by

a reviewing court for an arbitrary and capricious action. As the Supreme Court explained,

> Trust principles made a deferential standard of review appropriate
> when a trustee exercises discretionary powers.  Where discretion is
> conferred upon the trustee with respect to the exercise of a power,
> its exercise is not subject to control by the court except to prevent
> an abuse of discretion.  A trustee may be given power to construe
> disputed or doubtful terms, and in such circumstances the trustee's
> interpretation will not be disturbed if reasonable.

*Id.* (citations omitted).  *See also, Lord v. Reliance Standard Life Insurance Co.,* 362

F.Supp.2d 480, 484 (D. Del. 2005); *Pell v. E.I. DuPont De Nemours & Co.,* 348

F.Supp.2d 306, 311 (D. Del. 2004); *Martorana v. Board of Trustees, Steamfitters L.U.*

*420 H.W. and Pension Fund,* 404 F.3d 797, 801 (3d Cir. 2005)*, Abnathya v. Hoffman-*

*LaRoche, Inc.,* 2 F.3d 40, 48 (3d Cir.1993); *Moats v. United Mine Workers of America,*

981 F.2d 685, 687 (3d Cir. 1992); *Nazay v. Miller*, 949 F.2d 1323, 1335 (3d Cir. 1991).

Section 7.09 of the Local 626 Plan, as in effect at the time of Plaintiffs' retirement

provided in pertinent part:

> **Finality.** An unappealed denial or decision or exercise of
> discretion by the Trustees on a claim is final and binding. Judicial
> review shall be limited to the grounds on which an arbitration
> award may be vacated under the Federal Arbitration Act in Title 9,
> U.S.C.

Garnett Ex. G1, §7.09, Appx A175.  The Trust Agreement similarly provided that:

> The Board of Trustees shall have the power to construe all
> provisions of the agreement and rules and regulations issued
> thereunder, and the terms used therein and any construction

14

> adopted by the Board of Trustees in good faith shall be binding
> upon... any employees and beneficiaries thereof.

Cprek Ex. 19, Trust Agreement, Art. IV, §4, Appx. A195. As summarized in *Sandy v.*

*Reliance Life Insurance Co.*, 222 F. 3d 1202, 1205-1206 (9th Cir. 2000), the cases

consistently hold that such language limits the scope of review.

A plan is to be enforced as written unless it violates a provision of ERISA. *Dade*

*v. North American Phillips Corp.*, 68 F.3d 1558, 1561 (3d Cir. 1995). "If the language is

unclear, [a court] must defer to a reasonable interpretation of the plan by the [fiduciary]."

*Davis v. Burlington Industries, Inc.,* 966 F.2d 890, 895 (4th Cir. 1992). Under *Vitale v.*

*Latrobe Area Hospital*, 420 F.3d 278, 280, 284-285 (3d Cir. 2005), this deference

includes a duty to uphold a denial of benefits to one participant under plan terms, despite

a grant of benefits to other arguably ineligible participants in distinguishable

circumstances.

A plan's adherence to its lawful eligibility rules is simply not arbitrary or

capricious, *Vitale*, 420 F.3d at 284, quoting *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d

279, 286 (3d Cir. 1988). *Nazay v. Miller*, 949 F.2d 1323, 1338 (3d Cir. 1991)

(enforcement of plan provision on pre-certification not arbitrary and capricious); *Dist. 2*

*United Mine Workers of Amer. v. Helen Min. Co.*, 762 F.2d 1155, 1161 (3d Cir. 1985)

(enforcement of plan provision requiring prior approval of surgical treatment in order to

be eligible for benefit not arbitrary or capricious); *Baker v. Greater Kansas City Laborers*

*Welfare Fund*, 699 F.Supp. 210, 212 (W.D. Mo. 1988) (no duty to relax health insurance

eligibility requirements in times of high unemployment or hardship). It is the duty of a

fiduciary under ERISA, 29 U.S.C. §1104(a)(1)(D), to "...discharge his duties...in

accordance with the documents and instruments governing the plan..." In this case the decision of the Trustees is neither arbitrary nor capricious.

The essential inquiry is whether the Trustees reasonably construed and applied the plan in this case, *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992), and afforded the claimant a full and fair review, *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 381-382 (10th Cir. 1992). The trustees are not obligated to interpret the Plan in a particular manner and, whatever the plausibility of a Plaintiff's alternative interpretation, "[i]t is for the trustees, not the court, to choose between two reasonable alternatives." *Edwards v. Wilkes-Barre Publishing Co., Pension Trust*, 757 F.2d 52, 57 (3d Cir. 1985), citing *Tomlin v. Board of Trustees*, 386 F.2d 148, 151 (9th Cir. 1978). See also, *Moats*, 981 at 687-688. Under *Epright v. Environmental Resources Management, Inc. Health & Welfare Plan,* 81 F.3d 335, 340, 343 (3d Cir. 1996), an ERISA plan decision must be upheld if it has any reasonable basis.

### B.    Deference Is Particularly Important In Multiemployer Plans As The Joint Board Of Trustees Acts As An Arbitrator

Deference is particularly important in multiemployer plans. Joint labor-management committees, similar to the joint board that must and does govern the Local 626 Plan, under 29 US.C. §186(c)(5), have been recognized as a form of arbitration, *General Drivers, W.&H., Local Union No. 89 v. Riss and Company, Inc.,* 372 U.S. 517, 518 (1963); *International Brotherhood of Teamsters, C.W.&H. of America, Local 249 v. Western Pennsylvania Motor Carriers Association,* 574 F.2d 783, 786 n. 3 (3d Cir. 1978). Section 7.09 of the Local 626 Plan document, Garnett Ex. G1, §7.09, Appx. A175, thus limits review to the well-developed standards applicable to an arbitration award. This recognizes that the joint board is the best place to balance "... the trustees'

responsibility to all potential beneficiaries." *Rueda v. Seafarers Intern. Union*, 576 F.2d

939, 942 (1st Cir. 1978), citing *Gaydosh v. Lewis*, 410 F.2d 262 (D.C. Cir. 1969), and not

just the needs of a single plaintiff, in the context of a multiemployer plan with limited

assets and set contributions from employers.

"Judicial review of a labor-arbitration decision . . . is very limited." *Major League*

*Baseball Players Ass'n. v. Garvey,* 532 U.S. 504, 509 (2001), and is "one of the

narrowest standards of judicial review in all of American jurisprudence." *Lattimer-*

*Stevens Company v. United Steelworkers of America*, 913 F.2d 1166, 1169 (6th Cir.

1990). See also, *Richmond, Fredericksburg & Potomac Railroad Company v.*

*Transportation Communications International Union*, 973 F.2d 276, 278 (4th Cir. 1992)

("[J]udicial review of an arbitration award is 'among the narrowest known to the law.'")

(citation omitted). As summarized in *News America Publications, Daily Racing Form*

*Division v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir.), *reh.*

*denied*, 921 F.2d 400 (3d Cir. 1990) (citations omitted)

> . . . A court may not review the merits of the arbitral decision . . .
> A court does not review the award to ascertain whether the
> arbitrator has applied the correct principles of law . . . An arbitral
> award may not be overturned for factual error. . . or because the
> court disagrees with the arbitrator's assessment of the credibility of
> witnesses, or the weight the arbitrator has given to testimony . . .

As Judge Aldisert recognized over three decades ago in *Ludwig Honold Manufacturing*

*Co. v. Fletcher*, 405 F.2d 1123, 1126 (3d Cir. 1969), federal law elevates arbitration to

"an exalted status."

An arbitrator's award must be enforced so long as it draws its essence from the

underlying agreement, *United Steelworkers of America v. Enterprise Wheel & Car Corp.*,

363 U.S. 593, 597 (1960); *United Parcel Service, Inc. v. International Brotherhood of*

17

*Teamsters, C.W.&H. of America, Local Union No. 430*, 55 F.3d 138, 141 (3d Cir. 1995). An award draws its essence from the agreement if "the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold*, 405 F.2d at 1128; *Tanoma Mining Co., Inc. v. Local Union No. 1269, UMWA*, 896 F.2d 745, 748 (3d Cir. 1990); *Roberts & Schaeffer Co. v. Local 1846, UMWA*, 812 F.2d 883, 885 (3d Cir. 1987). A court "may only determine whether the arbitrator's award was totally unsupported by principles of contract construction." *Arco-Polymers, Inc. v. OCAW, Local 874*, 671 F.2d 752, 755 (3d Cir. 1982). Only where there is a "manifest disregard of the agreement, totally unsupported by principles of contract construction ..., may a reviewing court disturb the award." *Ludwig Honold*, 405 F. 2d at 1128. As *News America Publications*, 918 F.2d at 24, concluded, "[a]s long as the arbitrator has *arguably* constructed or applied the contract, the award must be enforced, regardless of the fact that a court is convinced that [the] arbitrator has committed serious error."

"Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Garvey*, 532 U.S. at 509, citing *United Paperworkers International Union v. Misco*, 484 U.S. 29, 36 (1987). See also, *Major League Umpires Association v. American League of Professional Baseball Clubs*, 357 F.3d 272, 379(3d Cir. 2004) ("Our role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by the arbitrator."); *NF&M Corp. v. United Steelworkers of America*, 524 F.2d 756, 759 (3d Cir. 1975) ("a court is precluded from overturning an award for [the arbitrator's] errors in assessing the credibility of witnesses, in the weight accorded their

testimony, or in the determination of factual issues."). "It is [.. ]not the role of a court to
correct factual or legal errors made by an arbitrator." *Brentwood Medical Associates v.
United Mine Workers of America*, 396 F.3d 237, 240 (3rd Cir. 2005). As explained in
*Eastern Associated Coal Corp. v. United Mine Workers,* 531 U.S. 57, 62 (2000), quoting
*United Paperworkers*, 484 U.S. at 38, "..as long as [an] arbitrator is even arguably
construing or applying the contact and acting within the scope of his authority,' the fact
that 'a court is convinced that he committed serious error does not suffice to overturn his
decision.'"

"Courts have no business overruling [an arbitrator] because their interpretation of
the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599. "[A] federal court
may not overrule an arbitrator's decision because the court believes its own interpretation
of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759,
International Union of the United Rubber, Cork, Linoleum and Plastic Workers of
America*, 461 U.S. 757, 764 (1983). *See also, Mutual Fire, Marine & Inland Ins. Co. v.
Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989) ("[i]t is not this Court's role ... to
sit as the [arbitration] panel did and reexamine the evidence under the guise of
determining whether the arbitrators exceeded their powers."). Arbitration awards are to
be upheld even where the courts have expressed doubts about the arbitrator's rationale.
*See, e.g., Roberts & Schaefer,* 812 F.2d at 885 ("[e]ven when the award was dubious, and
the result one that we would not have reached had the matter been submitted to the court
originally, we have upheld the arbitrator's decision"); *Kane Gas, Light & Health Co. v.
International Brotherhood of Firemen and Oilers*, 687 F.2d 673, 679, 681 (3d Cir. 1982)
("Admittedly, we find it as difficult as does the Company to comprehend the arbitrator's

determination . . . [W]hile we would not have made the findings made by the arbitrator, and would not have evaluated the evidence as he did, we see no basis… for disturbing the arbitrator's award."); *Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 11 (1st Cir. 2001) ("We share the district court's skepticism about the merits of the arbitrator's rationale . . . Even so, such skepticism is not enough to vacate the arbitrator's decision."). Therefore, as the Third Circuit has just reiterated, *Citgo Asphalt Refining Co. v. Paper, Allied-Industries, Chemical & Energy Workers Int'l Union, Local No. 2-991,* 385 F.3d 809, 816 (3d Cir. 2004), a court should not disturb a labor arbitration award "even if [it] find[s] the basis for it to be ambiguous or [it] disagrees with [the arbitrator's] conclusions under the law."

### C.     The Trustees' Rationally Interpreted The Plan To Require An Advance Application To Avoid Unexpected Costs and Financial Gamesmanship by Participants

In review of a benefit decision under ERISA, a court must consider only the record before the plan administrator at the time the decision was reached. *Freccia v. Conectiv,* 379 F.Supp.2d 620, 626-627 (D. Del. 2004) (collecting cases). The only issues raised before the plan administrator were general claims of unfairness and a generic claim that the Plan not document required retroactive payments. The Trustees' interpretation of the Plan to require the filing of an application to begin payment of monthly pension benefits is entirely rational and consistent with the practice of the Local 626 Plan.

Plaintiffs' apparent claim that Section 5.01 of the Local 626 Plan is meaningless and that the phrase "may retire" obligates the Plan to place every one in pay status back to the earliest possible date once an application is filed would favor them, but harm other participants. To reiterate, *supra* at 9, the earliest possible retirement date may adversely affect a participant by loss of the right to elect "Special Early Retirement" with a special

20

subsidy from ages 60-65 on a disability retirement, a reduction in benefits for early

retirement, Local 626 Plan, a suspension of benefits on an anticipated return to work, or

loss of other sources of income that might be adversely affected by payment of a pension.

The Plan's interpretation and practice allows participants to weigh the financial

advantages and disadvantages of a current pension and to elect the retirement date that is

most advantageous to them – rather than forcing the Plan to place everyone in pay status

at the earliest possible date regardless of the date of application.

The application requirement also serves other valid plan purposes. It avoids

unknown and unexpected costs for retroactive benefit (often years after the fact in

disability cases) that have not been anticipated in setting contribution levels and funding

the plan.[7] The application rule also prevents participants from gaming the system, as, for

example, by settling or collecting a workers' compensation, unemployment insurance or

other claim that might be affected by pension eligibility, and then claiming a retroactive

pension from the plan for the same period of time. C.f., 19 Del.C. §3313(p) (offset of

unemployment benefits by private pension); *Cawby v. Delaware Department Of Labor,*

*Unemployment Insurance Appeal Board*, -- A.2d --, 2000 WL 33157793 (Del.Super.

2000)(applying pension offset rule); *General Motors Corp. v. Willis*, -- A.2d --, 2000 WL

1611067 (Del.Super. 2000)(disallowing reduction of workers' compensation for age and

service pension, but implying a possibly different result for a disability pension where

---

7        As the facts of this case show, the plan only requires a notice of intent to begin
benefits with the application to set the starting date for payment.  Barr filed his
application on November 22, 2002. He did not actually receive his Social Security award
until December 22, 2002 and only then submitted the information needed to support a
disability claim. The Plan nonetheless began payments with a December 1 installment.
The application allows the plan to anticipate the cost of the claim even if the actual
evidence to support a claim is only received later.

21

eligibility is based on the same injury)  Plaintiffs simply cannot satisfy their burden of proving arbitrary and capricious action by the Trustees for a policy that rationally allows participants to make retirement choices that are most beneficial to them and also serves valid financial concerns of the plan.

## IV.    BARR'S CLAIMS ARE TIME-BARRED

Plaintiffs' claims are barred by the applicable statute of limitations. Under *Syed v. Hercules, Inc.*, 214 F.3d 155, 161 (3d Cir. 2000),  the one-year limitations period in Delaware's Wage Payment and Collections Law, 10 Del.C. §8111, applies to Plaintiffs' claims for benefits.

All of the payments claimed by Barr were due at or shortly after his pension effective date in December 2002.  The Plan answered his appeal on August 6, 2003, Barr Ex. 5A, Appx. A10a, with an appeal deadline of February 2, 2004, *id.*. While the plan responded to his belated "appeal" of May 26, 2004 in July 2004, this courtesy did not toll the limitations period nor revive his unappealed pension award, beginning only in December 2002. See, *Stafford v. E.I. Dupont De Nemours*, 27 Fed.Appx. 137, 140; 27 Employee Benefits Cas. (BNA) 1582 (3d Cir. 2002)(*per curiam* and non-precedential) (voluntary reconsideration is benevolent and not to be punished by reviving a claim barred by limitations); *Fontana v. Diversified Group Administrators, Inc.,* 67 Fed.Appx. 722, 724 (3d Cir. 2003) (*per curiam* and non-precedential) (claim accrues no later than the date a response to a timely appeal was due; absence of a response does not eternally toll the ERISA limitations period until a formal response).  A participant who fails to file a timely appeal has even less basis to toll the limitations period than an employee who waits in vain for a plan response to a timely appeal.

The August 6, 2003 letter to Barr and the Local 626 Plan expressly provided that an initial Plan decision will become binding in the absence of a timely appeal, Barr Ex. 5A;Garnett Ex. G1, §7.09, Appx. A10a, A175. Barr knew that his pension would only begin with the month of December 2002 and had the plan documents (on which he relies) in his hand; there is no excuse for his belated appeal. If exhaustion principles and the terms of the Plan are to have any meaning, the absence of a timely appeal must bar his claim.

Barr, in all events, knew that his claim for retroactive benefits was denied by early August 2003.  He nonetheless waited until November 24, 2004 to sue. This is well beyond the one-year limit for such suits in Delaware.

## CONCLUSION

The Court should grant summary judgment to Defendants and dismiss the

Complaint.

Respectfully submitted,

Timothy J. Snyder (No. 2408)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6645
Facsimile: (302) 576-3336
Email: tsnyder@ycst.com

Of Counsel:

Kent Cprek
JENNINGS SIGMOND, P.C
510 Walnut Street, Suite 1600
Philadelphia, PA 19106-3683
(215) 351-0615

Counsel for Defendant

September 30, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2005, I electronically filed a true and correct copy of the Defendants' Opening Brief in Support of Defendants' Motion for Summary Judgment using CM/ECF, which will send notification that such filing is available for viewing and downloading. I further certify that on September 30, 2005, I caused a copy of the Defendants' Opening Brief in Support of Defendants' Motion for Summary Judgment to be served on the following counsel of record in the manner indicated below:

### HAND DELIVERY

Joseph M. Bernstein, Esquire
800 North King Street, Suite 202
Wilmington, DE 19801

Timothy J. Snyder (No. 2408)