**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ALAN D. BARR and
JOHN MALANDRUCCOLO, JR.,

Plaintiffs,

v.

CARPENTERS PENSION AND ANNUITY
PLAN OF PHILADELPHIA AND
VICINITY, successor by merger to
CARPENTERS LOCAL 626 PENSION
AND ANNUITY PLAN,

Defendant.

Civil Action No. 04-1468

**COMPENDIA TO DEFENDANT'S OPENING BRIEF
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AGAINST PLAINTIFFS**

Timothy J. Snyder (No. 2408)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6645
Facsimile: (302) 576-3336
Email: tsnyder@ycst.com

Kent Cprek
JENNINGS SIGMOND, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106-3683
(215) 351-0615

Counsel for Defendant



93 F.3d 600 Page 1
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

**Briefs and Other Related Documents**

United States Court of Appeals,
Ninth Circuit.
Mario CANSECO; James Daniels; Manuel Delgado; Jessie Riley; Corse Whitehurst, Jr., individually and on behalf of all those similarly situated, Plaintiffs-Appellants,
v.
CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA; Board of Trustees of the Construction Laborers Pension Trust for Southern California, individually and in their official capacities, Defendants-Appellees.
**No. 95-55011.**

Argued and Submitted April 11, 1996.
Decided Aug. 20, 1996.

Class of retirees brought action under Employee Retirement Income Security Act (ERISA) against pension plan and its board of trustees, seeking payment of retirement benefits retroactive to date class members originally became eligible for benefits. The United States District Court for the Central District of California, Robert M. Takasugi, J., granted summary judgment in favor of pension plan and board of trustees. Retirees appealed. The Court of Appeals, Michael Daly Hawkins, Circuit Judge, held that: (1) retirees were entitled under pension plan to retroactive payment of retirement benefits for which they did not apply, and (2) retirees were entitled to award of attorney fees incurred on appeal.

Reversed and remanded with instructions.

West Headnotes

**[1] Limitation of Actions 58(1)**
241k58(1) Most Cited Cases
Retirees' ERISA action against pension plan and its board of trustees to recover retroactive payment of retirement benefits accrued at time trustees denied benefits. Employee Retirement Income Security Act of 1974, § § 502(e), 514(b)(1), 29 U.S.C.A. § § 1132(e), 1144(b)(1).

**[2] Labor and Employment 677**
231Hk677 Most Cited Cases
(Formerly 296k139)
Exercise of discretionary authority by pension plan trustees in denying retirees retroactive payment of retirement benefits was "act or omission" within meaning of ERISA section excluding from federal court's jurisdiction any action involving act or omission which occurred before certain date. Employee Retirement Income Security Act of 1974, § 514(b)(1), 29 U.S.C.A. § 1144(b)(1).

**[3] Labor and Employment 688**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 2
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

231Hk688 Most Cited Cases
(Formerly 296k139)
In retirees' ERISA action to recover retirement benefits, abuse of discretion standard governed review of pension plan trustees' decision to deny retroactive payment of retirement benefits to eligible retirees, where trust agreement which established pension plan provided that trustees were to have power to administer plan, including power to construe provisions of plan, and that any such construction was binding upon any and all parties or persons affected thereby. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[4] **Labor and Employment** 688
231Hk688 Most Cited Cases
(Formerly 296k139)
In ERISA actions to challenge denial of benefits based on plan administrator's interpretation of plan, district court must review for abuse of discretion benefits decisions of plan administrators and other fiduciaries to whom plan grants discretionary authority to determine eligibility for benefits or to construe terms of plan. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[5] **Federal Courts** 776
170Bk776 Most Cited Cases
Court of Appeals reviews de novo district court's application of abuse of discretion standard in ERISA action challenging denial of benefits based on plan administrator's interpretation of plan. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[6] **Labor and Employment** 613
231Hk613 Most Cited Cases
(Formerly 296k135)
Under terms of pension plan, retiree's submission of application for retirement benefits was not condition of eligibility, but was merely administrative procedure that triggered commencement of benefits payments, and therefore retirees who satisfied plan's eligibility requirements were entitled to retroactive payment of retirement benefits for which they had not applied; language of plan guaranteed retirement benefits to employees who met service, age and covered hours requirements, and did not mention filing of application as one of eligibility requirements. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[7] **Labor and Employment** 532
231Hk532 Most Cited Cases
(Formerly 296k136)
Pension plan trustees or administrators may not construe plan so as to impose additional requirement for benefits eligibility that clashes with terms of plan. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[8] **Federal Courts** 937.1
170Bk937.1 Most Cited Cases
Remand to pension plan trustees was not necessary in ERISA action after Court of Appeals determined trustees had improperly denied eligible retirees retroactive

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 3
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

payment of retirement benefits, as no factual determinations remained to be made in case. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

**[9] Labor and Employment 704**
231Hk704 Most Cited Cases
(Formerly 296k142)
Remand to plan administrator is appropriate in ERISA action where that administrator has construed plan provision erroneously and therefore has not yet had opportunity of applying plan, properly construed, to claimant's application for benefits. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

**[10] Labor and Employment 722**
231Hk722 Most Cited Cases
(Formerly 296k143)
Retirees who ultimately prevailed in ERISA action against pension plan and its board of trustees to recover retroactive payment of retirement benefits were entitled to award of attorney fees incurred on appeal from district court order granting summary judgment in favor of pension plan and board of trustees. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), (g)(1), 29 U.S.C.A. § 1132(a)(1)(B), (g)(1).

**[11] Labor and Employment 711**
231Hk711 Most Cited Cases
(Formerly 296k143)
Award of attorney fees is discretionary in ERISA action to enforce rights under plan based on consideration of following factors, among others: degree of opposing party's culpability or bad faith, ability of opposing party to satisfy award of fees, whether award of fees against opposing party would deter others from acting under similar circumstances, whether party requesting fees sought to benefit all participants and beneficiaries of ERISA plan or to resolve significant legal question regarding ERISA, and relative merits of parties' positions. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

**[12] Labor and Employment 712**
231Hk712 Most Cited Cases
(Formerly 296k143)
Ordinarily, if plan participant or beneficiary prevails in ERISA action to enforce his or her rights under plan, recovery of attorney fees is appropriate, absent special circumstances making award unjust. Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).
***602** Neal S. Dudovitz and Ruth M. Zacarias, San Fernando Valley Neighborhood Legal Services, Pacoima, California, Jeffrey Lewis, Sigman, Lewis & Feinberg, Oakland, California, for plaintiffs-appellants.

John S. Miller, Jr., Cox, Castle & Nicholson, Los Angeles, California, for defendants-appellees.

Appeal from the United States District Court for the Central District of California, Robert M. Takasugi, District Judge, Presiding. D.C. No. CV-92-00262-RMT.

Before: GOODWIN and HAWKINS, Circuit Judges, and WARE, [FN*] District Judge.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 4
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

FN* Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

MICHAEL DALY HAWKINS, Circuit Judge:

[1][2] Plaintiffs-appellants, a class of retired construction workers denied retroactive pension benefits ("Retirees"), appeal the district court's grant of summary judgment in favor of defendants-appellees, the Construction Laborers Pension Trust for Southern California ("the CLPT") and the CLPT's Board of Trustees ("Trustees"). After the Trustees refused to pay the Retirees retroactive retirement benefits based on their failure to apply for those benefits, the Retirees filed suit against the CLPT and its Trustees to recover retirement benefits dating back to the time they became eligible for those benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the district court's summary judgment order because we conclude that the CLPT pension plan entitles the Retirees to retirement benefits retroactive to the date they reached age 62 and became eligible for those benefits. [FN1]

FN1. Appellees challenged the district court's subject matter jurisdiction below, and renew that challenge on appeal. This argument is without merit. The district court had jurisdiction pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e), which grants federal district courts jurisdiction over actions by pension plan participants seeking to recover benefits or to enforce their rights under a plan. Appellees point out that 29 U.S.C. § 1144(b)(1) excludes from jurisdiction "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." We have held that a cause of action for recovery of benefits accrues at the time the benefits are denied. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1501 (9th Cir.1984). In this case, the Trustees of the CLPT denied benefits well after January 1, 1975. Moreover, we have held that there is an "act or omission" within the meaning of § 1144(b)(1) where "benefits have been denied as the result of a significant act of discretion under or interpretation of [a pension] plan[.]" *Smith v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry*, 857 F.2d 587, 590 (9th Cir.1988). Here, the Trustees denied benefits pursuant to their discretionary authority under the CLPT plan. Jurisdiction was therefore proper in the district court.

## FACTUAL AND PROCEDURAL HISTORY

### I. The class action suit against the CLPT and its trustees

Appellant and lead plaintiff Mario Canseco is 77 years old. For nearly 30 years, he worked in the construction industry in Southern California. In 1975, at age 56, Canseco became permanently disabled and was unable to continue working as a construction laborer. Although Canseco had worked in the industry for nearly 30 years, the 1975 CLPT records erroneously indicated that he had accumulated only 14 years and 10 months of service, just shy of the 15- year eligibility requirement for normal retirement benefits under the CLPT plan. When Canseco asked union officials whether he was eligible for pension benefits, they erroneously informed him that he was not eligible because he had not met the 15-year service minimum. Believing the CLPT records were accurate, and knowing his permanent disability would prevent him from earning additional years of service, Canseco did not apply for pension benefits under the CLPT plan.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 5
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

***603** In 1987, however, the possibility of CLPT pension benefits suddenly materialized for Canseco. He received a notice from a federal district court in California informing him that he may be entitled to pension benefits as a result of a judgment in a class action suit against the CLPT plan. That judgment, contained in *Ponce v. Construction Laborers Pension Trust for Southern California,* 582 F.Supp. 1310 (C.D.Cal.1984), *aff'd,* 774 F.2d 1401 (9th Cir.1985), *cert. denied,* 479 U.S. 890, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986), held that the CLPT's 15-year service requirement was arbitrary and capricious and constituted a structural defect in violation of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and required the Trustees of the CLPT to lower the eligibility threshold from 15 years of service to 10 years. *Ponce,* 582 F.Supp. at 1318. *Ponce* established new eligibility rules for construction workers who had been illegally denied benefits because they had attained more than 10 years but less than 15 years of service. The notice informed Canseco that he might qualify for pension benefits because CLPT records indicated that he had attained between 10 and 15 years of service. Canseco promptly applied for pension benefits under the *Ponce* judgment.

The Trustees administering the *Ponce* judgment initially concluded, based on the CLPT's erroneous records of Canseco's service history, that he was eligible for *Ponce* benefits. However, after paying Canseco his initial benefits, the Trustees discovered that the records were erroneous, and that Canseco had actually accrued nearly 23 years of service before becoming disabled. Because Canseco had attained well over the 15 years required for eligibility, the Trustees concluded he had been eligible for normal retirement benefits of $988 a month beginning in 1981, when he reached age 62, the minimum age required for eligibility under the CLPT plan. As noted above, however, Canseco had not applied for pension benefits when he turned 62 because he had been told--erroneously--that he failed to satisfy the service requirement for normal retirement benefits.

Although the Trustees concluded that Canseco had been eligible for normal retirement benefits beginning in January 1981, when he turned 62, they refused to pay him benefits retroactive to that date because--applying nearly perfect *Catch-22* logic--he had failed to apply for them. Instead, the Trustees accorded Canseco benefits retroactive only to March 1, 1985, the year after he turned 65, pursuant to Section 5.04 of the CLPT plan, which provides that benefit payments "shall commence not later than" March 1 of the year following the retiree's 65th birthday. The Trustees denied Canseco retroactive benefits, however, for the period from January 1981, when he turned 62, to March 1, 1985, the year after he turned 65. [FN2] Canseco appealed the Trustees' decision to the CLPT's Pension Appeals Committee, but the Committee rejected his appeal in January 1989.

FN2. Canseco alleges lost retroactive benefits of $988 per month for 50 months, or $49,440, excluding interest.

In January 1992, Canseco filed a class action suit in federal district court against the Trustees and the CLPT, seeking the payment of benefits retroactive to the date the class members originally became eligible for normal retirement benefits. He sought to represent all those CLPT plan participants who, like him, had attained eligibility for normal retirement benefits but who were accorded retroactive benefits beginning March 1 of the year after they turned 65. [FN3] After the Retirees and the Trustees filed cross-motions for summary judgment, the district court granted summary judgment for the Trustees as to all the Retirees' claims.

FN3. The district court certified the following class and sub-class as to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 6
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

certain of Canseco's claims:
(1) the class: "[a]ll persons who are, were, or will become entitled to vested pension benefits under the ... [CLPT plan] and whose benefits entitlement date was, is or will be involuntarily set by Sections 5.03 or 5.04 of the Plan," and (2) the sub-class: "[a]ll members of the class whose pension entitlement was determined after applying for benefits under the Consent Judgment in [*Ponce*.]"
The district court reserved ruling on class certification as to the remaining claims until it had resolved the merits of those claims, which are not at issue in this appeal.

The Retirees appeal the district court's summary judgment order only as to their ***604** first three claims. The Retirees' first claim, which arises under 29 U.S.C. § 1132(a)(1)(B), is that the terms of the CLPT plan entitle them to retirement benefits retroactive to the date they became eligible for those benefits. Their second claim is that the Trustees' denial of retroactive benefits constituted a breach of their fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104. Finally, their third claim is that the Trustees' denial of retroactive benefits violated ERISA's non-forfeitability provision, 29 U.S.C. § 1053.

**II. The CLPT plan**

Several provisions of the CLPT plan are relevant to this appeal. [FN4] Central to the issue of eligibility for "normal" or "regular" retirement benefits is Article 2 of the plan, which describes "Eligibility for Retirement Benefits." Section 2.02 of Article 2 establishes three alternative plans under which an employee may attain eligibility for retirement on a "Regular Pension." Section 2.02 provides:

FN4. Unless otherwise noted, references are to the May 1979 CLPT plan, which was in effect at the time of the relevant actions by the CLPT Trustees. Although the CLPT plan has been amended in various respects since its enactment in 1962, it retains its original provision for a pension based on 15 years of service and attainment of age 62.

2.02. *Regular Pension.* An employee shall be entitled to retire on a Regular Pension under this Plan if he satisfies all of the requirements of one of the following plans[.]

Plan Two, the plan at issue in this appeal, contains three requirements for eligibility:
A. [Employee] has completed at least 15 years of credited service[.]
B. [Employee] has attained age 62.
C. [Employee] has actually worked in Covered Employment for at least 700 hours following the date with respect to which contributions are first made for him. [FN5]

FN5. In 1976, the Trustees modified the CLPT plan pursuant to ERISA requirements. They created an additional category of eligibility (now known as Plan One), providing that an employee was eligible for pension benefits after only 10 years of service, and upon reaching age 65. Today, the CLPT still contains both categories of eligibility: Plan One and Plan Two.

Section 2.02.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 7
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

Article 5 of the CLPT plan, entitled "Payment of Benefits," describes the payment of pension benefits. Section 5.01 of Article 5 provides:

**Application.** An employee who meets the conditions for eligibility set forth herein shall, upon approval of an application submitted to the Board in a form satisfactory to the Board, become entitled to Pension Benefits under the Plan.

Two other sections of Article 5 describe the earliest and latest dates an eligible employee may begin to receive benefits. Section 5.03 establishes the earliest date an eligible employee may begin to receive payments, and provides, in relevant part:

**Date of Commencement of Payment.**

* * *

Pension Benefits with respect to any eligible Employee shall, subject to approval of the Employee's application by the Board, commence as of the first day of the calendar month next following the month in which the applicant fills out and signs his pension application provided that such application is received by the Board not later than the 15th day of the month next following the month in which such pension application is filled out and signed. If not received by the 15th of the month, pension benefits shall commence as of the 1st day of the calendar month next following receipt by the Board of the pension application. In any event Pension Benefits shall not commence earlier than the date of the Employee's eligibility for Pension Benefits.

Section 5.03.

Section 5.04 describes the latest date an eligible employee may begin to receive benefits, providing, in relevant part:

**Maximum Commencement Dates.**

Notwithstanding anything to the contrary contained above, and unless the Employee elects otherwise, the payment of an Employee's retirement benefit shall commence ***605** not later than March 1 of the year following the calendar year in which the latest of the following events occurs: (a) The Employee's attainment of age 65. (b) The lapse of 10 years since the Employee commenced participation in the Plan. (c) The termination of the Employee's service under this or a related Plan. (d) A date later than the latest date specified in (a), (b) or (c) if the Employee elects in writing to have payment of benefits commence on such later date.

* * *

Section 5.04.

**ANALYSIS**

The Retirees' first claim arises under the Employee Retirement Income Security Act ("ERISA"), which authorizes participants and beneficiaries of a pension plan to bring suit to recover the benefits to which they are entitled under the terms of that plan. 29 U.S.C. § 1132(a)(1)(B). [FN6] The Retirees allege that the CLPT plan entitles them, retroactively, to pension benefits for which they were eligible at age 62, but for which they failed to apply. They seek pension benefits retroactive to the date they reached age 62 and attained eligibility. The Retirees dispute the Trustees' interpretation of the CLPT plan, which states, first, that an application is a prerequisite for the receipt of benefits, and, second, that the plan does not permit retroactive payments. The district court held that the Trustees' interpretation did not "clearly conflict with the plain language of the plan" and therefore was not "arbitrary and capricious." Because we conclude reversal of the district court's summary judgment order is warranted on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 8
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

the basis of the Retirees' first claim, we need not reach their other two claims.

FN6. 29 U.S.C. § 1132(a)(1)(B) allows a cause of action "to recover benefits due to [a plan participant or beneficiary] under the terms of [the] plan, to enforce [the claimant's] rights under the terms of the plan, or to clarify [the claimant's] rights to future benefits under the terms of the plan[.]"

[3][4] In actions under 29 U.S.C. § 1132(a)(1)(B) to challenge the denial of benefits based on a plan administrator's interpretation of a plan, the district court must review for abuse of discretion the benefits decisions of plan administrators and other fiduciaries to whom the plan grants "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). *Accord Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 552 (9th Cir.), *cert. denied,* 516 U.S. 908, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). In this case, the trust agreement establishing the CLPT plan grants the Trustees discretion to construe the terms of the CLPT plan because it provides that the Trustees "shall have the power to administer the [CLPT] Fund[,]" including the power "to construe the provisions of ... the [CLPT] Plan[,]" and that "any such construction adopted by the Board in good faith shall be binding upon any and all parties or persons affected thereby." We have construed comparable language in other plan provisions to confer interpretive discretion. *See Eley v. Boeing Co.,* 945 F.2d 276, 278 (9th Cir.1991) (describing similar plan provisions).

[5] We review de novo the district court's application of the abuse of discretion standard. *Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1471 (9th Cir.1993). We have equated the abuse of discretion standard with "arbitrary and capricious" review. *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1524 (9th Cir.1993).

Although ERISA creates a cause of action for plan participants and beneficiaries to enforce their rights under a plan, *see* 29 U.S.C. § 1132(a)(1)(B), the statute itself does not resolve many of the issues raised by such claims. Instead, federal courts have developed a "federal common law of rights and obligations under ERISA-regulated plans." [FN7] ***606** *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987) (discussing obligation of courts to develop federal common law of ERISA); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1499- 1500 (9th Cir.1984). In the course of developing a "federal common law ... [of] ERISA-regulated plans[,]" federal courts have articulated several principles that bear on the resolution of the Retirees' claim.

FN7. The legislative history of ERISA indicates that Congress contemplated that federal courts adjudicating claims for denial of pension benefits would develop federal common law principles to govern those claims.
The ERISA Conference Report states that suits to enforce the terms of individual plans "are to be regarded as arising under the laws of the United States in similar fashion to those brought under Section 301 of the Labor Management Relations Act." H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327, 3 ERISA Legislative History 4594. Additionally, Sen. Javits explained in a floor statement that Congress "intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension funds." 3 ERISA Legislative History 4771.

**I. Interpretive principles in the federal common law of ERISA**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 9
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

**A. The plain language of the plan**

[6] A key principle guiding our resolution of the Retirees' claim is that we must look to the plain language of the CLPT plan to determine whether the Trustees' interpretation of that plan is "arbitrary and capricious." We have consistently explained that "trustees abuse their discretion if they ... construe provisions of [a] plan in a way that clearly conflicts with the plain language of the plan." *Johnson v. Trustees of the Western Conf. of Teamsters Pension Trust Fund,* 879 F.2d 651, 654 (9th Cir.1989) (citation omitted); *accord Saffle v. Sierra Pacific Power Co.,* 85 F.3d 455 (9th Cir.1996); *Eley,* 945 F.2d at 279 (citing *Johnson,* 879 F.2d at 654); *see also Menhorn,* 738 F.2d at 1500, n. 2 ("[a]ctions to recover benefits or enforce rights under the terms of a plan will typically involve the application of [ ] general principles of contract law[.]"). The question we must ask in resolving this dispute is not "whose interpretation of the plan documents is most persuasive, but whether the [Trustees'] interpretation is unreasonable." *Winters,* 49 F.3d at 553 (citation omitted).

To determine whether the Retirees are entitled to retroactive retirement benefits despite their failure to apply for benefits, we look to the CLPT plan provisions governing benefit eligibility and benefit payments. We start with Article II, which governs "Eligibility for Retirement Benefits." Section 2.02 of Article 2 provides that an employee "*shall be entitled* to retire on a Regular Pension under this Plan *if he satisfies all of the requirements of one of the following plans* [.]" Section 2.02 (emphasis added). It then enumerates three requirements for eligibility under Plan Two: (1) 15 years of service, (2) attainment of age 62, and (3) 700 "covered hours" of employment. By its mandatory language ("shall be entitled"), Section 2.02 provides that these three criteria--years of service, age, and covered hours--are the sole and exclusive requirements for eligibility under the CLPT plan. Section 2.02 thus does not require an application for benefits as a condition of eligibility. Instead, Section 2.02 confers eligibility on an employee once he has satisfied the three conditions listed in Plan Two. In plain and absolute terms, Section 2.02 provides that an employee who satisfies all three requirements "*shall be entitled* to retire on a Regular Pension." (emphasis added). Section 2.02 thus guarantees normal retirement benefits to eligible employees.

Sections 5.01 and 5.03 reinforce our conclusion that an application is not a condition of eligibility under the CLPT plan. First, although Section 5.01 requires an eligible employee to submit an application to begin receiving benefit payments, it does not require an application as a condition of eligibility. On the contrary, Section 5.01 refers to employees who *already* "meet[ ] the conditions of eligibility[,]" and provides that such employees "shall, upon approval of an application ... become entitled to [p]ension [b]enefits[.]" By referring to eligible employees, Section 5.01 clearly contemplates that an employee will already have satisfied the conditions of eligibility before applying for payments to begin. Section 5.01 thus suggests that eligibility is defined elsewhere in the CLPT plan, and does not depend on the submission of an application.

Second, Section 5.03 describes the earliest date payments may commence for an "eligible [e]mployee[:]" generally the first day of ***607** the month after the employee fills out and signs an application, but "[i]n any event," no earlier than "the date of the Employee's eligibility for Pension Benefits." Section 5.03. Section 5.03's reference to "the date of [an] [e]mployee's eligibility" suggests that the date of eligibility is wholly independent from the date of application. Indeed, as noted above, Section 2.02 establishes that the date of eligibility is the first date all of the following are true: (1) the employee has completed 15

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 10
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

years of service, (2) the employee has reached age 62, and (3) the employee has worked 700 covered hours. The date an employee applies for benefits thus has no bearing on the date that employee becomes eligible for retirement benefits.

Finally, the structure of the CLPT plan reinforces our conclusion that the plan does not require an application as a condition of eligibility. Article 2 and Article 5 cover separate provisions of the plan: Article 2 governs "Eligibility for Retirement Benefits," while Article 5 governs "Payment of Benefits." The separation of these provisions into different articles of the CLPT plan indicates that *eligibility* for retirement benefits is wholly independent from the *payment* of those benefits.

We are not persuaded by the Trustees' assertion that the CLPT plan bars the retroactive payment of retirement benefits to an employee who is eligible for those benefits. Nowhere does the CLPT plan provide that an employee's failure to submit an application for benefits will result in the retroactive loss of benefits for which that employee is eligible. Although an application is required to initiate *payment* of benefits, it does not follow from this procedural requirement that the failure to apply for payment of benefits entails the complete loss of those benefits retroactively. On the contrary, the plain terms of Section 2.02 mandate that an eligible employee "*shall be entitled* to retire on a Regular Pension under this Plan *if he satisfies all of the requirements* of one of the following plans[.]" Section 2.02 (emphasis added). This mandatory language guarantees retirement benefits to employees who have met the three requirements of eligibility: service, age, and covered hours. An employee's failure to apply for retirement benefits cannot destroy that employee's eligibility.

The Trustees construe Sections 5.01 and 5.04 to prohibit the payment of retroactive benefits. The Trustees' interpretation of these sections is not reasonable, however, since it places Sections 5.01 and 5.04 in conflict with the mandatory language of Section 2.02. Section 5.01 simply requires an employee to comply with an administrative formality--the submission of an application--in order to begin receiving payments. This procedural requirement does not prohibit the retroactive payment of benefits, however. Section 5.04 provides that the payment of benefits "shall commence" not later than March 1 of the year following the employee's 65th birthday. This section simply identifies the latest date the CLPT plan must begin disbursing benefits to an eligible employee, but it does not prevent the pension plan from disbursing retroactive benefits. As we explained above, Section 2.02, by its mandatory language, guarantees normal retirement benefits to eligible employees. The payment of benefits retroactive to the date of eligibility is necessary to preserve Section 2.02's guarantee. By construing the CLPT plan to preclude the retroactive payment of benefits to eligible employees, the Trustees strip Section 2.02 of its meaning. Such an interpretation is arbitrary and capricious.

Confronted with a similar interpretive issue, the Fourth Circuit held that a pension plan administrator could not deny an eligible plan participant retroactive benefits on the basis of that participant's failure to timely apply for those benefits. *Cotter v. Eastern Conf. of Teamsters Retirement Plan,* 898 F.2d 424 (4th Cir.1990). The facts of *Cotter* are strikingly similar to the facts of this case. The plaintiff in *Cotter,* like the Retirees in this case, failed to claim retirement benefits at the time he became eligible for them because he believed, erroneously, that he was ineligible for benefits. Cotter was employed for 20 years by the Eastern Conference of Teamsters, then retired from the Eastern Conference to work for the International Brotherhood of Teamsters. At the time he retired from the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 11
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

Eastern Conference and began working for the International, Cotter was in fact eligible for retirement ***608** benefits under the Eastern Conference's pension plan. However, he did not file a claim for benefits until eight years after attaining eligibility because he believed he would not be eligible for benefits until he also retired from the International. When Cotter subsequently learned that under the pension plan, he could have received retirement benefits from the Eastern Conference during his tenure at the International, he applied for benefits retroactive to the date he attained eligibility. Because Cotter had failed to file a claim for benefits at the time he became eligible for them, however, the plan administrator refused to pay him retroactive benefits, insisting that the plan's terms required an application as a prerequisite to the receipt of benefits. Like the Retirees in this case, Cotter sued his pension plan under 29 U.S.C. § 1132(a)(1)(B), claiming that the terms of the plan entitled him to retroactive benefits and that the plan administrator had violated his fiduciary duty by denying the claim.

The Fourth Circuit in *Cotter* concluded that the plan administrator abused his discretion in denying Cotter retirement benefits retroactive to the time he became eligible for them. A key part of the court's reasoning was that the plan administrator's interpretation of the plan was unreasonable because it contravened the terms of the plan. It concluded that the plan's requirement that a participant file a claim to receive benefits was merely administrative and did not prevent the award of retroactive benefits for which the participant had attained eligibility. *Cotter,* 898 F.2d at 428.

The Trustees insist *Cotter* is distinguishable because it involved different plan language. We disagree. Although the wording of the two plans is different, the *Cotter* court relied chiefly on the structure of the plan, which resembles the structure of the CLPT plan. Like the application requirement in *Cotter,* the application requirement in the CLPT plan is contained in a portion of the plan governing the mere administration of benefits, rather than the requirements of eligibility. *Id.* To the extent that the structure of the two plans is similar, *Cotter* is instructive and reinforces our conclusion that the application requirement is merely administrative.

**B. The disfavoring of implied additional terms**

[7] A second interpretive principle guiding our analysis is that pension plan trustees or administrators may not construe a plan so as to impose an additional requirement for eligibility that clashes with the terms of the plan. Lower federal courts have held that where plan trustees "impose a standard [of eligibility for pension plan benefits] not required by the pension plan itself," that action " 'result[s] in an unwarranted and arbitrary construction of the [p]lan.' " *Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir.1981) (quoting *Maness v. Williams,* 513 F.2d 1264, 1267 (8th Cir.1975)).

We have applied this principle in the context of severance benefits and disability benefits. In *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), an employer denied severance benefits to several employees. The terms of the severance plan provided for severance pay when "jobs [were] 'eliminated' and 'alternative employment opportunities [were] unavailable within the [employer corporation].' " *Blau,* 748 F.2d at 1354. The employer denied severance benefits, however, because it insisted that the employees additionally needed to show that several other conditions were met, including that there were no positions available outside the corporation, *Id.* at 1354-55, and that the employees subsequently remained

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 12
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

unemployed. *Id.* at 1355. We concluded that the employer in *Blau* was attempting to impose additional conditions of eligibility above and beyond those required by the terms of the plan, and we refused "to imply other conditions into the plan[.]" As we explained in *Blau:* "Imposition of conditions outside the plan amounts to arbitrary and capricious conduct[.]" *Id.* at 1356.

Recently, in *Saffle,* we extended this principle to disability benefits. In *Saffle,* a plan administrator denied an employee long-term benefits for "total disability." The administrator concluded that the employee did not satisfy the definition of "total disability" because medical reports concluded the employee could return to work if her job was modified to allow her to perform exclusively ***609** sedentary work. On appeal, we rejected the administrator's interpretation of the disability plan in part because the administrator construed the plan to prohibit benefits if the employee was able to continue working with "accommodations." Such an interpretation, we concluded, would operate to "impose[ ] a new requirement for coverage": it would require the claimant to show that accommodations were futile. We rejected this implied additional term, explaining that a "[plan] administrator lacks discretion to rewrite the [p]lan." Saffle, 85 F.3d at 459-60 (citations omitted).

Applying this principle here, we conclude that the Trustees worked a similar abuse of discretion in interpreting the CLPT plan's application requirement as a prohibition on the payment of retroactive retirement benefits. By retroactively denying benefits to a class of workers who have indisputably earned them, the Trustees have, in effect, imposed on those workers an additional requirement of eligibility: the submission of an application for benefits. We reject such an additional requirement as inconsistent with the terms of the CLPT plan, since nothing in the CLPT plan makes an application a prerequisite for eligibility.

Based on the plain language of the CLPT plan, we conclude that the submission of an application is *not* a condition of eligibility but is merely an administrative procedure that triggers the commencement of benefit payments. As such, the application requirement cannot override the CLPT plan's mandate that an employee who "satisfies all of the requirements" of eligibility "shall be entitled to retire on a Regular Pension under this Plan[.]" Section 2.02. Although an application is required for payments to begin, this administrative requirement does not operate to strip eligible retirees of the benefits they earned upon satisfying the three requirements of Plan Two. In construing the CLPT plan to prohibit the retroactive payment of benefits for which the Retirees are indisputably eligible, the Trustees offered an interpretation of the CLPT plan that clearly conflicted with its plain language.

[8][9] Remand to the plan administrator is appropriate where that administrator has "construe[d] a plan provision erroneously" and therefore has "not yet had the opportunity of applying the [p]lan, properly construed, to [a claimant's] application for benefits." *Id.* at 461. On the facts of this case, however, we conclude that remand is inappropriate. Although the Trustees misconstrued the terms of the CLPT plan, remand is not necessary because "reevaluation of the merits of [the Retirees'] claim" is not required here. *Cf. Id.* Unlike cases wherein we have remanded to the plan administrator, no factual determinations remain to be made in this case. *Cf. Id.* (remanding to the plan administrator for application of correct standard for determining whether claimant had "total disability" for purposes of disability benefits); *Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 951 (9th Cir.1993) (remanding to plan administrator for factual determination as to cause of claimant's disability); and *Mongeluzo v. Baxter Travenol Long Term*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 600 Page 13
93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X
**(Cite as: 93 F.3d 600)**

*Disability Benefit Plan,* 46 F.3d 938, 944 (9th Cir.1995) (remanding for reevaluation of evidence in light of new medical standard).

**II. Attorneys' Fees**

[10] The Retirees seek attorneys' fees under 29 U.S.C. § 1132(g)(1) for their attorneys' work on this appeal. 29 U.S.C. § 1132(g)(1) authorizes an award of "reasonable attorney[s'] fee[s] and costs" in an ERISA action under 29 U.S.C. § 1132(a)(1)(B). We have construed this provision to include attorneys' fees and costs on appeal. *Smith v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California,* 857 F.2d 587, 592 (9th Cir.1988).

[11][12] The award of attorneys' fees is discretionary based on consideration of the following factors, among others: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Smith,* 857 F.2d at 592. Ordinarily, if a plan participant or beneficiary prevails in an action to enforce his rights under the plan, recovery of attorneys' fees is ***610** appropriate, absent special circumstances making an award unjust. *Id.* Because the Retirees have prevailed in their appeal, and no special circumstances would make the award of fees unjust, we grant the Retirees' request for attorneys' fees.

**CONCLUSION**

We conclude that the CLPT plan entitles the Retirees to retirement benefits retroactive to the date they became eligible for those retirement benefits. We therefore reverse the district court's summary judgment order and remand with instructions to enter judgment in favor of the Retirees.

We grant the Retirees' request for attorneys' fees and costs on appeal and refer the setting of the amount to the appellate commissioner.

93 F.3d 600, 20 Employee Benefits Cas. 1710, 96 Cal. Daily Op. Serv. 6181, 96 Daily Journal D.A.R. 10,112, Pens. Plan Guide (CCH) P 23924X

**Briefs and Other Related Documents** **(Back to top)**

- 1995 WL 17065242 (Appellate Brief) Appellants' Reply Brief (Jul. 19, 1995)Original Image of this Document (PDF)

- 1995 WL 17065244 (Appellate Brief) Answering Brief of Appellees (Jun. 19, 1995)Original Image of this Document (PDF)

- 1995 WL 17065243 (Appellate Brief) Appellants' Opening Brief (May. 03, 1995)Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Wes DUDEK, Plaintiff,
v.
MIDWEST OPERATING ENGINEERS PENSION TRUST FUND, Defendant.
**No. 02 C 1079.**

Nov. 20, 2003.

Richard Hirschtritt, Abramson & Fox, Chicago, IL, for plaintiff.

Alan H. Auerbach, Laura M. Finnegan, Beverly Pazon Alfon, Baum, Sigman, Auerbach, Pierson, Neuman & Katsaros, Ltd., Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

***1** Plaintiff, Wes Dudek ("Dudek"), filed suit against Defendant, Midwest Operating Engineers Pension Trust Fund ("Midwest"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et seq.* Presently before the Court are Dudek's Motion for Partial Summary Judgment and Midwest's Motion for Summary Judgment. At issue is the date from which Dudek is entitled to benefits under the Plan. Dudek contends he is entitled to benefits beginning September 6, 1985, when he became disabled. Midwest contends that Dudek is entitled to benefits beginning November 1, 1991, the first day of the month following Dudek's filing of an application for benefits.

BACKGROUND

Midwest is an employee benefit plan (the "Plan") within the definition of Section 3(2) of ERISA. (Plaint.'s 56.1(a)(3) Statement ¶ 3). Dudek was a participant in the employee benefit plan within the definition of Section 3(7) of ERISA. (Id., ¶ 4).

In October 1991, Dudek applied for disability benefits with the Department of Health and Human Services Social Security Administration Office. (Def.'s 56.1(a)(3) Statement ¶ 16). By opinion of an administrative law judge, the Department of Health and Human Services Social Security Office of Hearings and Appeals found that Dudek became **disabled** on September 6, 1985. (Plaint.' 56.1(a)(3) Statement ¶ 5).

In October 1991, Dudek inquired of Midwest as to whether he was entitled to receive Total and Permanent **Disability** Benefits under the Plan. (Def.'s 56.1(a)(3) Statement ¶ 12). On March 7, 1992, Dudek **filed** his **application** for Total and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)
**(Cite as: 2003 WL 22757746 (N.D.Ill.))**

Permanent **Disability** Benefits with Midwest. (Id., ¶ 13). The Administrative Manager denied Dudek's **application**. (Id., at ¶ 14). On August 4, 1992, the **Pension** Fund Review Panel ("Review Panel") issued its decision affirming the Administrative Manager. The Review Panel denied Dudek's request for Total and Permanent **Disability** Benefits under the Plan on the grounds that he was not permanently **disabled** and that he did not have the required five years of service as required by the Plan. (Id., ¶ 15).

Dudek sought reconsideration of the denial of his benefits. On March 3, 1995, the Fund agreed that Dudek was entitled to receive a total and permanent disability benefit as of April 1, 1992. The March 3, 1995 letter from the Fund stated that Dudek's file would be reviewed to determine if he was entitled to monthly benefits prior to April 1, 1992. (Def.'s 56.1(a)(3) Statement ¶ 17). Based on its reconsideration of the denial of benefits, the Review Panel issued an opinion on July 14, 1995, in which the Plan found that Dudek was entitled to Total and Permanent Disability Benefits and that the effective date of the benefit would be November 1, 1999, consistent with Part II, Article XI, Section 4 of the Plan. (Id., ¶ 18). By letter dated April 18, 2001, the Plan's Pension Department Manager stated that the Decision on Reconsideration issued on July 14, 1995, by the Review Panel was "final, conclusive and binding on Wes Dudek and other persons." (Id., ¶ 19). Each of the letters Dudek received from Midwest stated, in part, "The amount of your Annual **Pension** Supplement is based on your retirement date." (Id., ¶ 11).

***2** Midwest paid Dudek monthly **pension** benefits totaling $19,186.17 ($138.03 per month from November 1, 1991 through May 31, 2003). (Plaint.'s Supp. 56.1(a)(3) Statement ¶ 11). Midwest paid Dudek an annual **pension** supplement of $600 for each of the years 1997 and 1998 based on a retirement date which corresponds with the first day of the month following the date Dudek **filed** his **application** for benefits (November 1, 1991). (Plaint.'s 56.1(a)(3) Statement ¶ 17). Midwest paid Dudek an annual **pension** supplement of $1,000 for each of the years 1999, 2000, and 2001 based on a retirement date which corresponds with the first day of the month following the date he **filed** his **application** of benefits. (Id., ¶ 18).

Part II, Article II, Section 1 of the Plan defines total and permanent **disability** as: "A physical or mental condition of an Employee which the Trustees find on the basis of medical evidence totally and permanently prevent such Employee from engaging in employment, within or without the geographical area covered by this **Pension** Plan, in work described in the 'Scope of Work' provisions contained in the Collective Bargaining Agreement entered into between the Union and the Employees." (Def.'s 56.1(a)(3) Statement ¶ 4).

Part II, Article VI, of the Plan states, in pertinent part:

Section 1. An Employee who, while in "Covered Employment", shall suffer "Total and Permanent Disability" within the meaning of such term, as the same is defined in Article II of this Part II, shall be eligible to receive "Total and Permanent Disability Benefits", in accordance with the following:

* * *

Section 1A. An Employee who on and after January 24, 1985, shall suffer "Total and Permanent Disability" within the meaning of such term as the same defined in Article II of this Part II, who in the three twelve (12) month periods beginning April 1st and ending March 31st next succeeding, immediately preceding his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)
**(Cite as: 2003 WL 22757746 (N.D.Ill.))**

disability has 900 hours of Employer Contributions" made on his behalf to the Trust Fund and who is actively seeking employment as an Operating Engineer with a Contributing Employer, shall be eligible to receive "Total and Permanent Disability Benefits", provided: (i) That such disability occurs prior to the time such Employee shall be eligible to receive other Retirement Benefits hereunder, and (ii) Such Employee shall have five (5) "Years of Service."
(Def.'s 56.1(a)(3) Statement ¶ 6).

Part II, Article XI, Section 4(a) of the Plan, provides, in part, that:
**Pension** Benefits shall be **payable** commencing with the month following the month in which the Employee has fulfilled all the conditions for entitlement to benefits. Prior to 'Normal Retirement Age', the **filing** of an **application** with the Trustees is required for entitlement to benefits. The first day of such month is what is meant by the Effective Date of the **Pension**.
(Def.'s 56.1(a)(3) Statement ¶ 7).

Midwest actuaries determined the level of funding needed to provide **disability** and **pension** benefits under the Plan. (Def.'s Supp. 56.1(a)(3) Statement ¶ 2). Midwest's actuaries have determined the level of funding needed for **disability pension** based upon when the applicant **files** an **application**. If Part II, Article XI, Section 4(a), set out above, were interpreted to allow a participant to receive benefits retroactive before the date of the **application**, the calculated funding levels would not be sufficient to pay those benefits. Furthermore, without the proper funding of the **disability** benefits, the financial fund might be put in jeopardy. (Id., ¶ 4).

***3** Part II, Article XI, Section 5 of the Plan provides, in part, "To be considered retired, an Employee must have separated from 'Covered Employment' and not be engaged in any 'Disqualifying Employment' as defined in Section 6." (Def.'s 56.1(a)(3) Statement ¶ 8).

Part IV, Article III, Section 5 of the Plan, states in part:
All questions or controversies of whatever character arising in any manner or between any parties or persons in connection with the Plan or Trust Agreement or its operation, whether as to any claim for benefits, as to the construction of the language of the Plan or Trust Agreement or any rules and regulations adopted by the Trustees, or as to any writing, decision, instrument, or account in connection with the operating of the Plan or otherwise, shall be submitted to the Board of Trustees for Decision. In the event a claim for benefits has been denied, no lawsuit or other action against the Fund or its Trustees may be filed until the matter has been submitted for review under the ERISA-mandated review procedure set forth in Part IV, Article IV. The Decision on review shall be binding upon all persons dealing with the Plan or claiming any benefit hereunder, except to the extent that such Decision may be determined to be arbitrary and capricious by a Court or arbitrator having jurisdiction over such matter.
(Def.'s 56.1(a)(3) Statement ¶ 3).

Part II, Article VI, Section 3 of the Plan provides, in part, that "If the disability occurs on or after April 1, 1979, the 'Monthly Retirement Benefit' to which such Employee shall be entitled shall be the sum of $100 or an amount equal to seventy percent (70%) of his 'Accrued Benefit' as of the date he is eligible to receive 'Total and Permanent Disability Benefits', which amount shall be the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 4
Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)
**(Cite as: 2003 WL 22757746 (N.D.Ill.))**

greater sum, payable during the period of his disability." (Def.'s 56.1(a)(3) Statement ¶ 5).

ANALYSIS

The denial of benefits challenged under Section 1132(a)(1)(B) is reviewed *de novo* unless the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 103, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (*Bruch* ). If the plan confers power on the administrator to exercise discretion, the Court's review is the deferential "arbitrary and capricious" one. *Bruch,* 489 U.S. at 111; *Reich v. Ladish Co.,* 306 F.3d 519, 524 (7th Cir.2002).

The parties do not dispute that the Plan of the instant case expressly grants the Trustees discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Plan. Accordingly, the Trustees' decision will be reversed only if the decision was arbitrary and capricious.

Under this standard, the Court does not decide whether it would reach the same conclusion or rely on the same authority. *See Mers v. Marriott Inter'n Group Accidental Death & Dismemberment,* 144 F.3d 1014, 1021 (7th Cir.1997) (*Mers* ). The Court will not set aside the denial of benefits if the denial was based on a reasonable interpretation of the plan documents. The court's "role is to determine whether the decision was completely unreasonable." *Mers,* 144 F.3d at 1021. As long as the plan administrator makes an "informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.*, one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached," the decision of the administrator will be upheld. *See Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund,* 900 F.2d 1138, 1143 (7th Cir.1990).

***4** The parties do not dispute that Dudek began receiving benefits under the Plan based on a finding that he was entitled to receive such benefits under the Total and Permanent Disability Benefits provisions of the Plan. The primary dispute between the parties is whether the Plan's decision that Dudek became eligible for benefits on November 1, 1991, was arbitrary and capricious. Dudek contends that the date of his disability is the date he became eligible for benefits--the date he became disabled. Midwest contends that the Plan's interpretation was correct.

Dudek's eligibility for total and permanent disability benefits was based on Section II, Article VI, Sections 1 and 1A of the Plan. By finding Dudek eligible to receive such benefits, the Plan found that Dudek met the requirements set forth in Section II, Article VI, Section 1A as quoted above. Originally the Plan agreed to start paying Dudek these benefits as of April 1, 1992, "based on the information provided" to the Plan. How the date of April 1, 1992, was determined is not included in the materials before the Court and is not addressed by the parties. The Plan also stated that it would review the **file** to determine if Dudek was entitled to monthly benefits prior to April 1, 1992. Subsequently, the **Pension** Review Panel found that Dudek was entitled to **disability** benefits payments "commencing November 1, 1991. The members of the Review Panel have selected November 1, 1991, because it is consistent with the **Pension** Plan provision that payments are to begin on the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 5
Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)
**(Cite as: 2003 WL 22757746 (N.D.Ill.))**

month following the initial **application** or inquiry." Based on the date of November 1, 1991, as the date of eligibility, the Plan paid Dudek certain amounts of benefits as set forth above.

The Plan based its decision that Dudek became eligible for benefits as of November 1, 1991, on Part II, Article XI, Section 4 of the Plan. Part II, Article XI is entitled "**Applications**, Benefit Payments, Retirement And Benefit Suspensions." Section 4 states, "**Pension** Benefits shall be **payable** commencing the month following the month in which the Employee has fulfilled all of the conditions for entitlement to benefits. Prior to 'Normal Retirement Age', the **filing** of an **application** with the Trustees is required for entitlement to benefits. The first day of such month is what is meant by the Effective Date of the **Pension**."

The Plan considered the **application** requirement in Part II, Article XI, Section 4 of the Plan as an eligibility requirement to receive **disability** benefits under the Plan, which was November 1, 1991, the month following Dudek's **application**. Dudek contends this interpretation is incorrect because the **application** is necessary only to start payment of the benefits and that the eligibility for benefits must be measured from the time the grounds for eligibility, *i.e.*, retirement occurred..

Under similar facts, the Ninth Circuit found that, while an **application** was required to initiate payment of benefits, such procedural requirement did not prevent the loss of benefits retroactively. *See Canseco v. Construction Laborers **Pension** Trust for Southern Cal.*, 93 F.3d 600 (9th Cir.1996) (*Canseco* ). The benefits plan in that case provided that an employee was entitled to a **pension** if he satisfied certain enumerated requirements for eligibility. In a separate section entitled "Payment of Benefits", the *Conseco* plan required that, upon approval of an **application**, the individual would "become entitled to **Pension** Benefits under the Plan." *Conseco,* 93 F.3d at 604. The *Conseco* court found that the **application** was not a condition of eligibility under the plan because the **application** was not included in the criteria to be eligible for the benefits; the plan did not provide that the failure to submit an **application** would result in the retroactive loss of benefits for which the employee was entitled; and the **application** requirement was in a separate section of the plan which pertained to the payment of benefits, not the eligibility of benefits. *See Conseco,* 93 F.3d at 606-07; *see also Music v. Western Conference of Teamsters **Pension** Trust Fund,* 712 F.2d 413, 419 (9th Cir.1983) (holding that, once a plan participant has satisfied all of the eligibility requirements for a **disability pension**, the participant has the right to receive a **disability pension** retroactive to the date at which it becomes vested--when the participant becomes **disabled**).

***5** In the instant case, as in *Conseco,* the **application** requirement is not found in the eligibility section of the Plan. The **application** requirement is found in Part II, Article XI, Section 4 of the Plan, entitled "**Applications**, Benefit Payments, Retirement And Benefit Suspensions". The eligibility requirements for the receipt of benefits for Total and Permanent **Disability** Benefits are found in Part II, Article VI of the Plan, entitled "Total and Permanent **Disability** Benefits". It is undisputed that Dudek met these eligibility requirements. It is a separate and distinct Article and Section of the Plan, Part II, Article XI, Section 4, that discusses payment of benefits and a requirement to apply for such benefits. Furthermore, as in *Conseco,* the Plan does not provide that the failure to submit an application will result in the retroactive loss of benefits for which the employee

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 6
Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)
**(Cite as: 2003 WL 22757746 (N.D.Ill.))**

was entitled.

In support of his Motion for Summary Judgment, Dudek argues that the retroactive application of the Plan would further the intent of the Plan by conferring a benefit when grounds to receive the benefit have occurred. Conversely, if retroactive application did not occur, the Plan would be unjustly enriched. [FN1] Dudek fails to present any factual support for these arguments. In support of its Motion for Summary Judgment, Midwest argues that any retroactive application of the Plan benefits would fail to preserve the financial integrity of the Plan and fail to protect the benefits of all participants, not just Dudek. Midwest has provided the affidavit of an actuary to the Plan who states that if Part II, Article XI, Section 4(a) of the Plan was interpreted to allow all participants to obtain disability benefits retroactive to a time before the date their application was filed, the calculated levels would not be sufficient to pay those benefits. Other than this conclusory statement, Midwest does not provide any factual information to support its conclusion.

FN1. In July 2003, the parties were given the opportunity to file additional facts in support of these arguments.

Based on the above, material questions of fact remain as to whether the denial of benefits was based on a reasonable interpretation of the Plan documents. Accordingly, summary judgment for both parties is denied.

Midwest argues that summary judgment should be entered on Dudek's claims for additional monthly benefits based on a retirement date prior to November 1, 1991, because Dudek failed to exhaust his administrative remedies for these claims prior to filing the instant lawsuit.

The court has discretion to require the exhaustion of administrative remedies to redress violations of ERISA. *See* Gallegos v. Mount Sinai Medical Center, 210 F.3d 803, 808 (7th Cir.2000) (*Gallegos* ). A plaintiff is excused from failing to pursue his administrative remedies where the administrative remedies are not available or pursuing those remedies would be futile. *See* Gallegos, 210 F.3d at 808.

The parties do not dispute that Dudek exhausted his administrative remedies as to his claim that the Plan incorrectly determined his eligibility date for Total and Permanent Disability Benefits. Based on this incorrect determination, Dudek seeks additional monies. Accordingly, the additional benefits that Dudek seeks is directly intertwined with the issue previously presented to the administrative bodies. Furthermore, the Review Panel's Decision on Reconsideration states, in pertinent part, that the issue before it was whether Dudek was entitled to Total and Permanent Disability Benefits and, if so, the effective date of the payments and the amounts payable. The amount of additional benefits properly payable based on the eligibility date was intertwined with the issue of the amounts payable to Dudek. Accordingly, Dudek has effectively exhausted his administrative remedies as to his claims for additional benefits based on a corrected eligibility date. Accordingly, Midwest's Motion for Summary Judgment based on failure to exhaust administrative remedies is denied.

***6** Dudek's Motion for Partial Summary Judgment must also be denied because a question of material fact exists as to when Dudek met the eligibility requirements

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 7
Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)
**(Cite as: 2003 WL 22757746 (N.D.Ill.))**

of Part II, Article VI. Dudek asks the Court to infer that the Plan accepted the Department of Health and Human Services Social Security Office of Hearings and Appeals date of disability of September 6, 1985. However, this inference is not supported by the materials Dudek has submitted. Accordingly, Dudek's Motion for Partial Summary Judgment is also denied.

Lastly, both parties also seek summary judgment on the two other issues regarding additional monies sought by Dudek. In light of the above findings, both parties' Motions for Summary Judgment on these two issues is denied.

CONCLUSION

For the foregoing reasons, Midwest's Motion for Summary Judgment is denied. Dudek's Motion for Partial Summary Judgment is also denied.

Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)

**Motions, Pleadings and Filings** **(Back to top)**

- 2004 WL 2258538 (Trial Pleading) Third Amended Complaint (Mar. 24, 2004)
- 2003 WL 23823249 (Trial Motion, Memorandum and Affidavit) Reply to Defendant's Response to Plaintiff's Supplemental Statement of Material Facts (Oct. 21, 2003)
- 2003 WL 23823246 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiff's Response to Defendant's Supplemental Statement of Facts (Oct. 08, 2003)
- 2003 WL 23823244 (Trial Motion, Memorandum and Affidavit) Response to Plaintiff's Supplemental Statement of Material Facts (Oct. 01, 2003)
- 2003 WL 23823242 (Trial Motion, Memorandum and Affidavit) Plaintiffs Response to Defendant's Supplemental Statement of Facts (Sep. 26, 2003)
- 2003 WL 23823240 (Trial Motion, Memorandum and Affidavit) Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgement (Jun. 12, 2003)
- 2003 WL 23823236 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Rule 56.1 Statement of Uncontested Material Facts (May. 28, 2003)
- 2003 WL 23823237 (Trial Pleading) Plaintiff's Answer to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment (May. 28, 2003)
- 2003 WL 23823238 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (May. 28, 2003)
- 2003 WL 23823239 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Statement of Material Facts (May. 28, 2003)
- 2003 WL 23823230 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Plaintiff's Motion for Partial Summary Judgment (May. 05, 2003)
- 2003 WL 23823232 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 8
Not Reported in F.Supp.2d, 2003 WL 22757746 (N.D.Ill.)
**(Cite as: 2003 WL 22757746 (N.D.Ill.))**

of Law in Support of Its Motion for Summary Judgment (May. 05, 2003)

- 2003 WL 23823234 (Trial Pleading) Amended Answer to Second Amended Complaint (May. 05, 2003)

- 2003 WL 23823228 (Trial Pleading) Amended Answer to Second Amended Complaint (Apr. 25, 2003)

- 2003 WL 23823226 (Trial Pleading) Answer to Second Amended Complaint (Feb. 18, 2003)

- 2003 WL 23823225 (Trial Pleading) Second Amended Complaint (Jan. 30, 2003)

- 2002 WL 32684712 (Trial Pleading) Answer to Amended Complaint (Nov. 01, 2002)

- 2002 WL 32684711 (Trial Pleading) Amended Complaint (Oct. 04, 2002)

- 2002 WL 32684710 (Trial Pleading) 1st Amendment to Complaint (Aug. 20, 2002)

- 2002 WL 32684709 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Motion to Compel Answers to Interrogatories (Aug. 09, 2002)

- 2002 WL 32684708 (Trial Pleading) Answer (Apr. 16, 2002)

- 2002 WL 32684707 (Trial Pleading) Complaint (Feb. 14, 2002)

- 1:02CV01079 (Docket) (Feb. 14, 2002)

- 2002 WL 32684713 (Trial Motion, Memorandum and Affidavit) Defendant's Reply Memorandum in Support of its Motion for Summary Judgment (2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**C**

**Motions, Pleadings and Filings**

United States District Court,
W.D. Pennsylvania.
ESTATE OF Robert BAIRD, by its Administratrix Mary BAIRD, Plaintiff,
v.
TEAMSTERS AFFILIATES PENSION PLAN, Board of Trustees of the Teamsters Affiliates Pension Plan, C. Thomas Keegel, John F. Murphy, Lester A. Singer, in their capacity as members of the Board of Trustees, Defendants.
**No. CIV.A. 02-1322.**

March 31, 2004.

**Background:** Estate of deceased pension plan participant sued plan and its board of trustees, alleging violations of several Employee Retirement Income Security Act (ERISA) provisions. Parties cross-moved for summary judgment.

**Holdings:** The District Court, Conti, J., held that:
(1) language of plan gave board of trustees discretionary authority to make eligibility determinations even though Summary Plan Description (SPD) did not include the word "discretion" therein;
(2) denial of claim for normal retirement benefits was arbitrary and capricious in that demand application be filed as condition for benefits eligibility, rather than payment, violated plain language of plan and ERISA nonforfeitability requirements; and
(3) letter notifying participant's widow that none of unpaid benefits due participant prior to his death would be paid to her did not provide adequate notice of adverse benefit determination or qualify as final trustee decision, for purposes of determining timeliness of her request for review.
Plaintiff's motion granted; defendants' motion denied.

West Headnotes

[1] **Labor and Employment** 686
231Hk686 Most Cited Cases

[1] **Labor and Employment** 688
231Hk688 Most Cited Cases
Courts must review denial of ERISA benefits under de novo standard of review unless benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of plan, in which case courts are to apply arbitrary and capricious standard of review. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[2] **Labor and Employment** 687
231Hk687 Most Cited Cases
Language of employee pension benefit plan gave board of trustees discretionary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

authority to make eligibility determinations even though Summary Plan Description (SPD) did not include the word "discretion," and arbitrary and capricious standard of review of board's denial of pension claim was appropriate. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[3] **Labor and Employment** 687
231Hk687 Most Cited Cases
Board's interpretation of its pension plan is entitled to deference under arbitrary and capricious standard, unless it is contrary to plain language of plan. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[4] **Labor and Employment** 687
231Hk687 Most Cited Cases
In determining whether board's discretionary interpretation of its own ERISA plan was arbitrary and capricious, first step in analysis is whether terms of plan documents in dispute are ambiguous. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[5] **Labor and Employment** 438
231Hk438 Most Cited Cases
Determination of whether ERISA plan provision is ambiguous is question of law. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[6] **Labor and Employment** 438
231Hk438 Most Cited Cases
If court determines that specific language at issue in ERISA plan is unambiguous, then any actions taken by plan administrator inconsistent with terms of document are arbitrary, actions are not arbitrary if they are reasonably consistent with unambiguous language of plan. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[7] **Labor and Employment** 438
231Hk438 Most Cited Cases
If court determines that specific ERISA plan language at issue is ambiguous, then it must take additional step and analyze whether plan administrator's interpretation of document is reasonable. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[8] **Labor and Employment** 687
231Hk687 Most Cited Cases
In determining whether denial of ERISA benefits was arbitrary and capricious, court must consider whether board read implied additional terms or standards into plan. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

[9] **Labor and Employment** 614
231Hk614 Most Cited Cases
Denial of claim by pension plan participant's widow for normal retirement benefits due participant, who had never applied for them despite receiving several letters and application materials from plan, was arbitrary and capricious; requirement that application for benefits be submitted as condition of eligibility therefor, rather than payment thereof, violated plain language of plan and ERISA nonforfeitability

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requirements. Employee Retirement Income Security Act of 1974, § 203(a), 29 U.S.C.A. § 1053(a).

**[10] Labor and Employment 618**
231Hk618 Most Cited Cases
Letter notifying pension participant's widow that none of unpaid benefits due participant prior to his death would be paid to her did not provide adequate notice of adverse benefit determination or qualify as final trustee decision, for purposes of determining timeliness of her request for review; sentence expressing regret that her husband was not able to enjoy retirement benefits provided by program provided no reason why widow could not receive participant's benefits, nor did it reference in any way specific reason why benefits would be denied. Employee Retirement Income Security Act of 1974, § 503(1), 29 U.S.C.A. § 1133(1); 29 C.F.R. § 2560.503-1(g)(1).

***590** James T. Carney, Pittsburgh, PA, for Plaintiff.

Joseph J. Pass, Jubelirer, Pass & Intrieri, Pittsburgh, PA, for Defendant.

*MEMORANDUM ORDER*

CONTI, District Judge.

Pending before the court are the parties' cross-motions for summary judgment concerning the denial by defendants Teamsters Affiliates Pension Plan (the "plan") and Board of Trustees of the Teamsters Affiliates Pension Plan (the "board" and together with the plan, collectively referred to as "defendants") of a pension claim asserted by the Estate of Robert Baird, by its Administratrix Mary Baird ("plaintiff" or the "estate"). Plaintiff moves for summary judgment (Doc. No. 19) on the issue of liability, advancing the following four reasons why this court should grant summary judgment: (1) the board's action in denying plaintiff's pension claim was arbitrary and capricious and violated the plain language of the pension plan; (2) the plan itself violates the Employment Retirement Income Security Act's ("ERISA") minimum vesting standards, 29 U.S.C. § 1053; (3) the plan violates ERISA's commencement of benefit provision, 29 U.S.C. § 1059, by failing to ensure that pension benefits were paid within sixty days after the close of the plan year in which Baird terminated employment; and (4) the board's failure to advise Baird of the requirement to file an application prior to receiving pension benefits and its failure to issue a revised summary plan description ("SPD") constituted breaches of fiduciary duty and violations of several ERISA provisions. Defendants dispute plaintiff's arguments and filed a cross-motion for summary judgment (Doc. No. 21) asserting that the board's decision should be upheld. The material facts are set forth in a joint stipulation of material facts not in dispute filed by the parties. (*See* Doc. No. 18). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment with respect to counts 1-4 and will deny defendant's motion. The court need not address counts 5-8 as those matters are rendered moot by the disposition of counts 1-4.

***Background***

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters") established a pension plan on January 1, 1962 in order to help its union members (termed "participants" under the plan) build long-term financial security in contemplation of retirement. Joint Statement of Material Facts Not in Dispute ("J.S."), Ex. 1 at 7. [FN1] ***591** Although the principal offices of the plan and board are located in Washington, D.C., the plan covers a number of participants in Western Pennsylvania. J.S. ¶ ¶ 5-6. The plan is an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"employee pension benefit plan" as defined by Section 3(2) of ERISA, 29 U.S.C. § 1002(2), and it is covered by the provisions of Title I of ERISA. *Id.* ¶ 2. The Teamsters established the plan as a defined benefit pension plan funded primarily by contributions from participating employer-affiliates. J.S., Ex. 1 at 10, 53. *Id.* [FN2] As a defined benefit pension plan, the plan uses a formula to determine retirement benefits based upon the amount of credited service worked by a participant and the participant's earnings. *Id.,* Ex. 1 at 22. The board is the "administrator" of the plan, as that term is defined by 29 U.S.C. § 1002(16)(A)(I) and is entrusted with general administration of the plan. J.S. ¶ 3. The plan is governed by the provisions of a plan document and summary plan description ("SPD"). *Id.* ¶ 7.

FN1. In accordance with the Joint Statement of Material Facts Not in Dispute, all page numbers relating to exhibits refer to the stamped page number in the lower right hand corner of the text.

FN2. The United States Department of Labor defines a "defined benefit pension plan" as a "retirement plan that uses a specific predetermined formula to calculate the amount of an employee's future benefit. In the private sector, defined benefit plans are typically funded exclusively by employer contributions. In the public sector, defined benefit plans often require employee contributions." UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS GLOSSARY (April 1, 2003), *available at* http://www.bls.gov/bls/glossary.htm.

Robert Baird was a participant in the plan because he was an elected official (Secretary-Treasurer) of Teamsters Local No. 636. *Id.* ¶ 11. After suffering a heart attack in 1984 and missing work for a period of time, Baird lost his bid for re-election in January 1985. *Id.* ¶ 13. Baird's final date of employment was January 31, 1985. Prior to that date, Baird was categorized as an "Active Member," defined in Section 1.3 of the plan as "a Member who is employed by an Affiliate at the date in question." *Id.;* Ex. 1 at 44.

The parties agree that, as of Baird's retirement date in January 1985, he had reached his "Normal Retirement Date," a term defined under the plan as:

(*o*) "Normal Retirement Date" of a Member means the earliest of i. or ii.:

i. the date the Member attains at least age 57, completes at least 15 years of Credited Service and completes at least 5 years of Vesting Service.

ii. the date the Member attains at least age 62 and completes at least either 10 years of membership in the Plan or 10 years of Credited Service and 5 years of Vesting Service.

*Id.* ¶ 14; Ex. 1 at 48. Baird met his Normal Retirement Date under subsection (i) because he had attained the age of 57, he completed over 15 years of credited service, and he had finished more than 5 years of vesting service under the plan. *Id.* ¶ 14. Thus, Baird was entitled to receive a normal retirement benefit under the plan. Section 4.1 of the plan, entitled "Normal Retirement," governs the award of benefits. That section states:

4.1-Normal Retirement. An Active Member who retires on his Normal Retirement Date shall receive on the first day of the month coincident with or next following his retirement a normal retirement benefit as provided in Section 5.1. An Active Member's right to his normal retirement benefit is nonforfeitable on the attainment of his Normal Retirement Date, except on reemployment as provided in Section 4.7.

*Id.;* Ex. 1 at 48.

On July 29, 1985, the plan sent Baird a letter advising him that he was eligible

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for ***592** pension benefits; attached to the letter were benefit application forms. *Id* ¶ 16; Ex. 2. When Baird failed to send the application forms to the plan, the plan contacted the offices of Teamsters Local No. 636 in order to confirm that it had Baird's correct address. After receiving confirmation that it did have the correct address, the plan the sent a second letter and application materials to Baird on August 19, 1986. *Id.* ¶ 17; Ex. 3. Six years later, on October 6, 1992, the plan sent a third letter to Baird along with benefit application forms. *Id.* ¶ 18; Ex. 4. The following year, after calling telephone directory to confirm Baird's residential address, the plan sent Baird a fourth and final letter accompanied by benefit application forms. *Id.* ¶ 19; Ex. 5. None of the four correspondences were returned by the United States Postal Service to the plan. *Id.* ¶ 20. Baird never responded to any of the four letters, nor did he fill out an application for pension benefits under the plan prior to his death on March 11, 1998. *Id.* ¶ 21-22.

On March 25, 1998, the plan sent Mary Baird, Robert Baird's wife, a letter informing her that she was entitled to a spousal benefit. The correspondence also contained a checklist and an application packet. *Id.* ¶ 25. Mrs. Baird submitted the benefit application in early June 1998, and the plan approved payment of the benefits on September 15, 1998. *Id.* ¶ 26. In October 1998, Mrs. Baird began receiving a monthly survivor benefit of $442.00 from the plan, and she continues to receive this monthly benefit at the present. *Id.* ¶ 27. Mrs. Baird, however, was puzzled by a sentence in the September 1998 letter sent by the plan that stated: "We regret that your husband was not able to enjoy the retirement benefits provided by this program." *Id.* ¶ 28; Ex. 8. In February 2001, Mrs. Baird's attorney contacted the plan inquiring why Robert Baird never received any pension benefits. *Id.* ¶ 28; Ex. 9. He also requested a copy of the text of the pension plan and the SPD. The plan responded in a March 27, 2001 letter that Baird had not received benefits because he failed to submit the required paperwork. *Id.* ¶ 29; Ex. 10. The plan also forwarded a booklet to Mrs. Baird's attorney containing a copy of the plan that had been in use since 1984. *Id.* ¶ 41.

On April 23, 2001, Mrs. Baird's attorney responded to the plan's letter with a formal request for the plan to pay Robert Baird's benefits to Mrs. Baird. Attached to that request was a three-page letter written by Mrs. Baird summarizing her husband's health and mental problems following his 1984 heart attack. *Id.* On May 17, 2001, the plan, through its administrative manager, rejected the formal request, advising Mrs. Baird that she was able to appeal that determination to the board. *Id.* ¶ 31; Ex. 12. The plan relied upon section 8.5 of the plan, which stated:

> 8.5-Applications and Misrepresentations. Benefits under this Plan are payable only upon the filing of an application in writing with the Trustees at the Plan's administrative office in the form and manner prescribed by the Trustees. Any material misrepresentations by the applicant upon which the Trustees relied in approving a benefit or portion of a benefit which the applicant was not entitled to receive under the Plan shall constitute grounds for the denial of such benefit or the portion of such benefit for the applicant and for the cancellation or recovery of such benefit or portion thereof.

*Id.;* Ex. 1 at 55.

Mrs. Baird appealed the decision to the board on July 13, 2001, enclosing all previous correspondences from the plan to her and her husband, along with three new pieces of correspondence for the board's consideration. *Id.* ¶ 31; Ex. 13. At a September 11, 2001 hearing, the board ***593** denied Mrs. Baird's appeal. *Id.* ¶ 33. Both parties stipulate that, pursuant to section 4.1, the plan makes **retroactive** benefit **payments** to living participants who apply for benefits after their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

retirement date. *Id.* ¶ 35. The parties further stipulate that the survivor benefits being received by Mrs. Baird are half of the pension benefits she would be receiving with a 50% joint and survivor annuity in effect had the board granted her appeal. *Id.* ¶ 44. The SPD has not been amended since a "Summary of Material Modifications to the Teamster Affiliates Pension Plan" was added on July 27, 1985, and 10 similar summaries have been created (the latest on July 31, 1996) during the relevant period at issue without an amendment to the SPD. Ex. 1 at 61.

***Standard of Review***

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249, 106 S.Ct. 2505.

***Discussion***

**A. The language of the plan grants the board discretionary authority to determine eligibility for benefits and, thus, an "arbitrary and capricious" standard of review is appropriate. (Counts 1-4).**

[1] The first step in determining the merits of the parties' cross-motions for summary judgment is determining what standard of review governs the plan's denial of benefits. In *Firestone Tire and Rubber Co. v. **Bruch**,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court held that courts must review a denial of ERISA benefits under a *de novo* standard of review unless the "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case courts are to apply an arbitrary and capricious standard of review. *See also Romero v. SmithKline Beecham,* 309 F.3d 113, 118 (3d Cir.2002). A preliminary issue in this case is whether the language of the plan gives the board discretionary authority.

[2] Plaintiff argues that language in the SPD that states "The Trustees... have the authority to make all final decisions with respect to questions, interpretations, the proper application of any plan provisions and applications for benefits" does not grant the board "discretionary" authority to interpret and apply the rules of the plan because the language in the SPD does not specifically include the word "discretion." [FN3] The court disagrees with this narrow reading of what constitutes "discretion" under ***Bruch.*** In that case, the Supreme Court determined that the plan in question did not provide the plan administrator with discretion because "there is ***594** no evidence that under Firestone's termination pay plan the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." ***Bruch,*** 489 U.S. at 111, 109 S.Ct. 948. In contrast, the language in the SPD in this case, which grants the board the final authority to determine the proper interpretation and application of the plan, constitutes the essence of "discretionary authority." This authority is also found in Section 8.1(b) of the plan, which declares that the board has final authority to promulgate rules and regulations and to make decisions and interpretations

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

regarding benefits. [FN4] Furthermore, the United States Court of Appeals for the Third Circuit interpreted similar language that did not specifically contain the word "discretion" as giving the plan administrator discretion in making eligibility determinations. *Stoetzner v. U.S. Steel Corporation,* 897 F.2d 115, 119 (3d Cir.1990). [FN5] Therefore, the court determines that the board had discretionary authority under the plan to make eligibility determinations and that an "arbitrary and capricious" standard of review is appropriate.

FN3. The term "discretion" is defined as "[f]reedom to act or judge on one's own." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 532 (3d ed.1992).

FN4. Section 8.1(b) of the plan states: "All rules, regulations, decisions and interpretations adopted by the Trustees shall be binding upon all parties dealing with the Trust Fund and all persons claiming benefits hereunder." J.S. Ex. 1 at 54.

FN5. The language that the United States Court of Appeals for the Third Circuit found discretionary in that case was:
*Administration*
7.1 (a) The Pennsylvania Corporation shall administer these Pension Rules and shall decide all questions arising out of and relating to the administration of these Pension Rules.

* * * * * *

*Construction*
7.7 The Rules shall be construed and enforced according to the laws of the Commonwealth of Pennsylvania, and all provisions hereof shall be administered according to the laws of said Commonwealth. The decisions of the Pennsylvania Corporation shall be final and conclusive as to all questions of interpretation and application of these Pension Rules and as to all other matters arising in the administration thereof.
*Stoetzner,* 897 F.2d at 119 n. 4.

[3] Under the "arbitrary and capricious" standard, the United States Court of Appeals for the Third Circuit held that:

An administrator's decision will only be overturned if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law ... the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."

*Pinto v. Reliance Standard Life Insurance Co.,* 214 F.3d 377, 387 (3d Cir.2000). Stated in other words, a board's interpretation of its pension plan "is entitled to deference under the arbitrary and capricious standard, unless it is contrary to the plain language of the plan." *Skretvedt v. E.I. DuPont de Nemours and Co.,* 268 F.3d 167 (3d Cir.2001).

[4][5][6][7] Particularly with respect to reviewing a board's discretionary interpretation of its own ERISA plan, an analytical framework developed to guide courts in determining whether the board's decision was arbitrary and capricious. The first step in the analysis is to determine whether the terms of the plan documents in dispute are ambiguous. *Bill Gray Enterprises, Incorporated Employee Health and Welfare Plan v. Gourley,* 248 F.3d 206, 218 (3d Cir.2001). The determination whether an ERISA plan provision is ambiguous is a ***595** question of law. *See International Union v. Mack Trucks, Inc.,* 917 F.2d 107, 111 (3d Cir.1990). If the court determines that the specific language at issue is unambiguous, "then any actions taken by the plan administrator inconsistent with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the terms of the document are arbitrary." *Id.* Actions are not arbitrary if they are "reasonably consistent" with the unambiguous language of the plan. *Id.* If the court determines that the specific plan language at issue is ambiguous, however, "it must take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable." *Id.*

[8] An additional consideration to explore in determining whether a denial of benefits was arbitrary and capricious is whether the board read implied additional terms or standards into the plan. In *Epright v. Environmental Resources Management, Inc. Health and Welfare Plan,* 81 F.3d 335, 343 (3d Cir.1996), the United States Court of Appeals for the Third Circuit held that trustees of a pension plan acted arbitrarily when the trustees imposed standards into the plan not required by language of the plan itself. In that case, the defendant imposed into the plan's language a standard that was essentially an amendment to the plan not yet incorporated into the plan document. *Id.* The court determined that by "imposing a requirement which is extrinsic to the Plan, [the defendant] has acted arbitrarily and capriciously." *Id.* The court refuted the defendant's contention that the plan had a reasonable basis for imposing the unwritten standard, determining that the trustees' arbitrary decision "controverted the plain language of the plan." *Id.* at 345. *See also* *Canseco v. Construction Laborers Pension Trust for Southern California,* 93 F.3d 600, 608 (9th Cir.1996).

**B. The board's denial of plaintiff's claim for normal retirement benefits was arbitrary and capricious in that the demand violated the plain language of the plan and 29 U.S.C. § 1053(a).**

[9] Under the "arbitrary and capricious" standard which governs this court's resolution of the case, the court is required to examine the plain language of the plan in order to determine whether the board's interpretation was "arbitrary and capricious." Both parties agree that the resolution of this case depends primarily upon the board's interpretation of two plan provisions: sections 4.1 and 8.5. As noted above, section 4.1, which governs the award of normal retirement benefits, states:

> 4.1-Normal Retirement. An Active Member who retires on his Normal Retirement Date *shall* receive on the first day of the month coincident with or next following his retirement a normal retirement benefit as provided in Section 5.1. An Active Member's right to his normal retirement benefit is *nonforfeitable on the attainment of his Normal Retirement Date,* except on reemployment as provided in Section 4.7.

J.S., Ex. 1 at 48 (emphasis added). Section 8.5, covering the application procedure, provides the following:

> Section 8.5-Applications and Misrepresentations. Benefits under this Plan are payable only upon the filing of an application in writing with the Trustees at the Plan's administrative office in the form and manner prescribed by the Trustees. Any material misrepresentations by the applicant upon which the Trustees relied in approving a benefit or portion of a benefit which the applicant was not entitled to receive under the Plan shall constitute grounds for the denial of such benefit or the portion of ***596** such benefit for the applicant and for the cancellation or recovery of such benefit or portion thereof.

*Id.* p. 55.

The board argues that it reasonably interpreted these provisions in conjunction with each other to mean that a participant will not be paid any benefits until his application for those benefits is filed. According to the board's interpretation, a participant must apply for benefits in order to receive his normal retirement benefit. The board acknowledges that section 4.1 appears to suggest normal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

retirement benefits must be paid automatically commensurate with the participant's retirement and that the plan makes **retroactive** benefit **payments** to living participants who apply for benefits after their retirement date; however, the board interprets the plan to have the additional substantive requirement that an application must be filed while a participant is living in order to receive those benefits. [FN6]

FN6. Specifically, defendants argue: "[A]lthough Section 4.1 establishes a participant's eligibility and entitlement to receive normal retirement benefits, the Plan nevertheless requires that an application for those benefits first be filed to satisfy Section 8.5 before making any benefit payment." Brief in Support of Defendant's Motion for Summary Judgment, p. 10 (Doc. No. 22).

In advancing this argument, defendants contend that another provision, section 6.1, must be considered as well. Section 6.1, which addresses when payments are to be made under the plan, states:

6.1-Payment Period. *Except as otherwise specifically provided in Articles 4 and 5 and Section 8.5,* all benefits shall be payable monthly, commencing as of the first day of the month coincident or next following...

*Id.* p. 53. That section conditions the payment of benefits on (1) a participant becoming eligible for benefits (Article 4); (2) the benefits being correctly computed (Article 5); and (3) the participant filing an application with the trustees (section 8.5). The board essentially argues that because benefits cannot be paid out under section 6.1 unless eligibility requirements under article 4 are met *and* an application is filed pursuant to section 8.5, the three sections must be read and interpreted together in order to actually commence benefit payments. The net effect under the board's interpretation, thus, is that the phrase "Except as otherwise specifically provided in Articles 4 and 5 and Section 8.5" is necessarily read into section 4.1. Finding that this interpretation flies in the face of the unambiguous plain language of the plan, this court cannot accept this interpretation as reasonable; instead, the court finds that the board arbitrarily interpreted the language of the plan by imposing standards into the plan not contained in the language of the plan itself.

The language of section 4.1 is unambiguous, and it mandates, by using the word "shall," that normal retirement benefits are to be paid "on the first day of the month coincident with or next following his retirement a normal retirement benefit." The second sentence of the definition states that this right is "nonforfeitable on the attainment of his Normal Retirement Date." [FN7] Section 4.1 determines eligibility for benefits. Nowhere in this definition controlling eligibility under the plan is there the substantive requirement that *eligibility,* as opposed to the *payment of benefits* under section 6.1, is conditioned upon an application. In fact, the mandatory language of section 4.1 provides that the *only* condition of eligibility under the plan is reaching the "Normal Retirement Date."

FN7. As stated above, both parties agree that Mr. Baird had attained his Normal Retirement Date.

***597** This reading of section 4.1 is strengthened by the plain meaning of sections 6.1 and 8.5. Section 6.1 conditions the payment of benefits upon eligibility and the filing of an application under section 8.5. The plain meaning of section 8.5 is that benefits can only be paid when an application is filed with the trustees. Section 8.5 makes no mention of the requirement than an application must be filed in order for a participant to become *eligible* to receive benefits under the plan; the plain language only suggests that section 8.5 contains a procedural requirement

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that an application be filed prior to *receiving benefits* in connection with the mandate of section 6.1. *See* *Canseco v. Construction Laborers Pension Trust for Southern California,* 93 F.3d 600 (9th Cir.1996); *Cotter v. Eastern Conference of Teamsters Retirement Plan,* 898 F.2d 424 (4th Cir.1990); *Dobson v. Hartford Financial Services,* 196 F.Supp.2d 152, 160 (D.Conn.2002).

Defendants' interpretation of the plan is further troubling because it conflicts with ERISA's statutorily-prescribed policy against forfeiture of vested retirement benefits. Pursuant to 29 U.S.C. § 1053(a), employee pension plans "shall provide that an employee's right to his normal retirement benefit is *nonforfeitable* upon the attainment of normal retirement age." Although defendants correctly note that there are some exceptions to this rule, *see* *Geib v. New York State Teamsters Conference Pension,* 758 F.2d 973, 975 (3d Cir.1985), and that a plan's refusal to pay accrued benefits to a participant because the participant died does not constitute a forfeiture pursuant to 29 U.S.C. § 1053(a)(3)(A), [FN8] defendants fail to point out any language within the plan that provides for this exception. As stated above, the mandatory language of section 4.1 does not place any conditions upon determining eligibility under the plan. Furthermore, the requirement that participants who fail to apply for benefits prior to death forfeit those benefits is found nowhere in the plain language of the sections at issue. In essence, defendants have engaged in an impermissible attempt to write an extrinsic, arbitrary standard into the plan. The board's actions are unreasonable and arbitrary, and are in clear violation of section 29 U.S.C. § 1053(a). *Epright,* 81 F.3d at 343.

FN8. 29 U.S.C. § 1053(a)(3)(A) provides:
A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely *because the plan provides* that it is not payable if the participant dies (except in the case of a survivor annuity which is payable as provided in Section 205).
(emphasis added). In this case, there is nothing in the plan that provides that Mr. Baird's right to his pension benefit would be treated as forfeitable if he died prior to applying for benefits.

Defendants attempt to save their interpretation of the plan provisions by arguing that they have never made an exception to their interpretation that section 8.5 requires an application be filed in order for a participant to become eligible for benefits. *See* J.S., Exs. 12, 14. Because the court determined that sections 4.1, 6.1, and 8.5 are unambiguous, extrinsic evidence as to how defendants consistently interpreted these sections will not be considered. *See* *Epright,* 81 F.3d at 340. Furthermore, defendants' consistent misinterpretation of its policy provisions "does not mean that such misinterpretation should be deemed part of the Plan and sanctioned as lawful." *Id.*

Defendants additionally argue that section 5.3 of the plan establishes that Mr. Baird was only entitled to primary benefits during his life. Section 5.3 provides:

5.3-Joint and Survivor Benefits. The Joint and Survivor Benefit shall be 88% ***598** of the benefit otherwise payable to a Member, payable monthly *during the life of a Member* and 1/2 of 88% of the benefit, payable monthly during the life of his spouse if she survives him. This 88% shall be decreased by 1/2 % for each full year by which the spouse is younger than the Member, or increased by 1/2 % for each full year (up to 10 years) by which the spouse is older than the Member....

(Emphasis added). Nothing in that section, however, precludes plaintiff from filing an application in order to receive benefits under the 50% joint and survivor annuity provided for under section 5.3. That section merely defines the computation of the joint and survivor benefit, drawing a distinction between the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

amount of the benefit a participant will receive during his life, and the amount that his spouse will receive following his death. There is absolutely no language in the section that precludes the spouse of a participant from filing an application for benefits after the participant's death in order to receive the "1/2 of 88% of the benefit" provided for under this section. As stated above, section 6.1 requires articles 4 and 5 and section 8.5 to be complied with before benefits are paid out; however, section 5.3, standing alone, imposes no requirement that primary benefits can only be paid if the participant files an application while he is alive.

After considering the unambiguous plain language of the plan provisions at issue, the court determines that defendants' denial of plaintiff's claim for normal retirement benefits was arbitrary and capricious, violating both the plain language of the plan and ERISA's nonforfeiture of benefits requirements pursuant to 29 U.S.C. § 1053(a).

**C. Plaintiff's action is not untimely pursuant to section 8.6(d) of the plan.**

[10] Defendants argue that plaintiff's action is untimely pursuant to section 8.6(d) of the plan, which states in relevant part:

> In the event the claimant chooses to seek a review of the original Trustee decision, said claimant must *within 60 days* of the receipt of the notification submit to the Trustees by certified or registered mail a request for a review together with all relevant information in support of said claimant's position.

J.S., Ex. 1 at 56 (emphasis added). Defendants contend that Mrs. Baird was notified in a letter dated September 15, 1998 that none of the unpaid benefits due Mr. Baird prior to his death would be paid to her. The court fails to see how the September 15, 1998 letter qualifies as a final Trustee decision, since no application was made to the plan at that time. That letter cannot qualify as a final decision because it did not comply with 29 U.S.C. § 1133(1), which requires employee benefit plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan is being denied, *setting forth the specific reasons for such denial.*" (Emphasis added). Department of Labor regulations implementing 29 U.S.C. § 1133(1) provide that written notice of an adverse benefit determination shall contain, in part, "in a manner calculated to be understood by the claimant (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based." 29 CFR 2560.503-1(g)(1). The sentence "We regret that your husband was not able to enjoy the retirement benefits provided by this program" provides no reason why Mrs. Baird could not receive her husband's benefits, ***599** nor does it reference in any way the specific reason why benefits would be denied. The plan treated Mrs. Baird's April 23, 2001 letter as a claim, which it denied in letter form on May 17, 2001. Mrs. Baird submitted an appeal to the board on July 13, 2001 within the 60-day period proscribed by section 8.6(d). The court concludes that this appeal was timely and plaintiff complied with the procedures under the plan.

***Conclusion***

**AND NOW,** this 31st day of March 2004, upon consideration of the cross-motions for summary judgment by plaintiff Estate of Robert Baird (Doc. No. 19) and by defendants Teamsters Affiliates Pension Plan and Teamsters Affiliates Pension Plan (Doc. No. 21), **IT IS ORDERED** that plaintiffs's motion is **GRANTED** and defendants' motion is **DENIED** with respect to counts 1-4. With respect to the remaining counts, the court need not address those matters in light of the grant of summary judgment as to counts 1-4 in favor of plaintiff.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

317 F.Supp.2d 588 Page 12
317 F.Supp.2d 588, 32 Employee Benefits Cas. 2339
**(Cite as: 317 F.Supp.2d 588)**

In accordance with this ruling, **JUDGMENT** is hereby **ENTERED** against defendants and in favor of plaintiff. Defendant is ordered to **pay** plaintiff's estate the full amount of **retroactive** normal plan benefits due under the plan along with prejudgment interest at the applicable T-bill rate, costs, and attorneys' fees.

The clerk shall mark this case closed.

317 F.Supp.2d 588, 32 Employee Benefits Cas. 2339

**Motions, Pleadings and Filings** **(Back to top)**

- 2:02CV01322 (Docket)
(Jul. 29, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.