Westlaw.

67 Fed.Appx. 722                                                    Page 1
67 Fed.Appx. 722, 30 Employee Benefits Cas. 1954
**(Cite as: 67 Fed.Appx. 722)**


**C**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
Thomas J. FONTANA, Appellant,
v.
DIVERSIFIED GROUP ADMINISTRATORS, INC.;  Pittsburgh Logistics Systems, Inc. Employee Health and Welfare Plan;  Pittsburgh Logistics Systems, Inc.;  P.G.T. Trucking Inc.
**No. 02-2337.**

Submitted Under Third Circuit LAR 34.1(a) May 13, 2003.
Decided May 28, 2003.

  Participant in employee health and welfare plan filed action against plan, plan **administrator**, and his employer, seeking **review** of the denial of medical **benefits** under Employee Retirement Income Security Act (**ERISA**). The United States District Court for the Western District of Pennsylvania, Donald E. Ziegler, J., granted summary judgment in favor of defendants, and participant appealed. The Court of Appeals, Rendell, Circuit Judge, held that participant's action was barred by statute of limitations.

  Affirmed.

                              West Headnotes

**[1]** Labor and Employment ⟲623
231Hk623 Most Cited Cases
        (Formerly 296k136)

**[1]** Labor and Employment ⟲679
231Hk679 Most Cited Cases
        (Formerly 296k139)
Employee health plan participant's action to recover medical **benefits** accrued when plan **administrator** notified participant that it was denying his **claim** for **benefits due** to uncovered pre-existing condition, and was not **tolled** by participant's allegedly ongoing engagement in appeal procedure **due** to **administrator's** failure to respond to his request for **review**; under applicable regulation, participant's **claim** was deemed denied when **administrator** failed to respond to his request for **review** within applicable time period.  Employee Retirement Income Security Act of 1974, §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

67 Fed.Appx. 722                                                    Page 2
67 Fed.Appx. 722, 30 Employee Benefits Cas. 1954
**(Cite as: 67 Fed.Appx. 722)**


2 et seq., 29 U.S.C.A. § 1001 et seq.; 29 C.F.R. § 2560.503-1(h)(4).

**[2] Labor and Employment** ☜679
231Hk679 Most Cited Cases
        (Formerly 296k139)
Three-year **statute** of **limitations** contractually agreed to by parties in employee
health and welfare plan, rather than four-year **statute** of **limitations** applicable to
contract actions under Pennsylvania law, applied to participant's action seeking
**review** of denial of medical **benefits** under **ERISA**.  Employee Retirement Income
Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.; 42 Pa.C.S.A. §
5525(a)(8).

**[3] Labor and Employment** ☜679
231Hk679 Most Cited Cases
        (Formerly 296k139)
Employee health plan participant's action to recover **benefits** was untimely filed
under three-year **statute** of **limitations**; under applicable regulation, participant's
appeal was deemed denied after expiration of 120 days from which he filed appeal,
and he did not file action until over three years after date his appeal was denied.
Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001
et seq.; 29 C.F.R. § 2560.503-1(h)(4).
 **\*723** Appeal from the United States District Court for the Western District of
Pennsylvania.  (D.C. Civil No. 01-cv-00967).  District Court Judge: Honorable
Donald E. Ziegler.

 Before: RENDELL, SMITH and ALDISERT, Circuit Judges.

                        OPINION OF THE COURT

 RENDELL, Circuit Judge.

  Thomas Fontana sued Diversified Group Administrators, Inc. (DGA), Pittsburgh
Logistics Systems, Inc. Employee Health and Welfare Plan (the "Plan"), Pittsburgh
Logistics, Inc., and P.G.T. Trucking, Inc.(PGT) under the Employee Retirement
Income Security Act (ERISA) seeking review of a denial of medical benefits.  The
matter was referred to a Magistrate Judge in accordance with 28 U.S.C. §
636(b)(1)(A) and (B).  Defendants then filed a Motion to Dismiss/Motion for Summary
Judgment asserting that the suit was barred by the three year statute of
limitations present in the health plan.  The Magistrate Judge recommended that the
Motion for Summary Judgment be granted in favor of defendants.  On April 11, 2002
the District Court adopted the Magistrate Judge's report.  Thomas Fontana appeals.
We will affirm.

  Thomas Fontana sued the defendants under 29 U.S.C. § 1001 et seq.  The District
Court exercised federal question jurisdiction pursuant to 28 U.S.C. § 1331 (2001),
and we exercise jurisdiction over the Court's final order pursuant to 28 U.S.C. §
1291 (2002).  We review *de novo* the District Court's grant of summary judgment.  We
will affirm the District Court's order if there is no genuine issue of material
fact and the moving party is entitled to judgment as a matter of law.  *Mushalla v.
Teamsters Local No. 863 Pension Fund,* 300 F.3d 391, 395 (3d Cir.2002).  We review
the facts in a light most favorable to the non-moving party.  *Id.* We also exercise
plenary review over the District Court's choice of the applicable statute of
limitations.  *Syed v. Hercules,* 214 F.3d 155, 159 n. 2 (3d Cir.2000).

  [1] The facts are undisputed.  During 1997, Fontana was employed by PGT and was a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

67 Fed.Appx. 722                                                        Page 3
67 Fed.Appx. 722, 30 Employee Benefits Cas. 1954
(Cite as: 67 Fed.Appx. 722)

participant in their Health and Welfare Plan, which was administered by DGA. The
Plan included a statute of limitations provision barring actions brought more than
three years from the date that written proof of loss was required to be submitted.
On May 29, 1997, Fontana experienced a myocardial infarction that resulted in
various hospital and medical expenses.  Fontana submitted a notice of claim to DGA
attempting to recover his expenses.  On October 6, 1997, DGA notified Fontana that
it was denying his request for benefits because his injuries were the result of a
pre-existing condition that was not covered by the Plan. DGA also notified Fontana
that if he disagreed with the determination that he should file a written appeal
within 60 days.

  Fontana's counsel filed an appeal with DGA on December 5, 1997.  On March 10,
1998, Fontana's counsel supplemented his previous request for **review** of the denial
with additional proofs.  The Plan **administrators** never responded to Fontana's
appeal.  Over three years later, on May 29, 2001, Fontana filed suit against
Appellees seeking to recover for the denial of **benefits**.

  [2] The Magistrate Judge found that Fontana's **claim** was barred by the three year
**statute** of **limitations** set forth in the *724 Health Plan. Fontana does not
challenge the reasonableness of the three year **statute** of **limitations**.  [FN1]
Instead, Fontana asserts that the **limitations** period should have been **tolled** in
this case because he was continuously engaged in an appeal procedure because the
Health Plan **administrators** failed to respond to his appeal.

      FN1. Appellant does direct this Court's attention to the four year **statute** of
      **limitations** applicable to contract actions in Pennsylvania. *See* 42 Pa.
      Cons.Stat. Ann. § 5525(a)(8).  We find that the Magistrate Judge properly
      concluded that the correct **statute** of **limitations** was the three year period
      contractually agreed to by the parties in the health plan.  We further agree
      that the three year **statute** of **limitations** is reasonable.  *See Doe v. Blue
      Cross & Blue Shield United of Wis.,* 112 F.3d 869, 873-75 (7th Cir.1997)
      (finding a thirty nine month contractual **statute** of **limitations** period
      reasonable).

  An action to recover for denial of **benefits** under **ERISA** accrues "when an
application for **benefits** is formally denied." *Salcedo v. John Hancock Mutual Life
Ins. Col.,* 38 F.Supp.2d 37, 42 (D.Mass.1998).  At all times relevant to this
appeal, the regulations governing **ERISA** stated that if a decision on **review** is not
furnished within the applicable time period the **claim** "shall be deemed denied on
**review**." 29 C.F.R. § 2560.503- 1(h)(4) (2000).  Typically, the "applicable time
period" is 60 days, but if an extension is needed, a fiduciary may have up to 120
days.

  [3] Given that the regulations clearly state that a **claim** is deemed denied when no
decision has been rendered within the applicable time period, we reject Fontana's
argument that the **statute** of **limitations** was **tolled due** to the plan **administrators'**
failure to respond to his appeal.  We agree with the Magistrate Judge that
Fontana's appeal was deemed denied at the very latest on April 5, 1998, 120 days
after it was filed.  Because Fontana did not file his claim until May 29, 2001,
over three years from the date his claim was denied, it is time-barred.

  Fontana's argument that section 2560.503-1(h)(4) is permissive rather than
mandatory, and that the power to deem the claim denied lies with the *claimant,* is
unavailing.  Fontana relies on *Massachusetts Mutual Life Ins. Co. v. Russell,* 473
U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), in which the Supreme Court held
that "the regulations merely state that a claim *may* be treated as having been

67 Fed.Appx. 722                                                        Page 4
67 Fed.Appx. 722, 30 Employee Benefits Cas. 1954
**(Cite as: 67 Fed.Appx. 722)**

denied after the 60- or 120-day period has elapsed." *Id.* at 144, 105 S.Ct. 3085
(emphasis added).  We do not read the Court's usage of the word "may" in *Russell* to
indicate that <u>section 2560.503- 1(h)(4)</u> is permissive.  The regulation is very
clear:  it states that a claim "shall" be denied after the applicable time period
has expired.  In using the word "may," the *Russell* Court meant that, after the
applicable time period, a claimant *is authorized* to bring an action to have the
merits of his application determined in the same manner as if there had been an
outright denial of benefits.  *See* <u>*Southern Farm Bureau Life Ins. Co. v. Moore,*</u> 993
<u>F.2d 98, 101 (5th Cir.1993)</u>.

 We also reject Fontana's argument that <u>*Mason v. Aetna Life Ins. Co.,*</u> 901 F.2d 662
<u>(8th Cir.1990)</u>, compels a different result.  In *Mason* the claimant received actual
notice of denial after the expiration of the 120 day period and the Court of
Appeals for the Eighth Circuit held that the statute of limitations accrued from
the date of actual notice.  The court observed that the fact that Aetna gave actual
notice of denial after the expiration of the 120 day period indicated that they did
not deem the appeal denied.  *Id.* at 664 n. 3. The court did not address when the
statute of limitations might have accrued absent actual notice.

 **\*725** Because we agree with the Magistrate Judge and the District Court that
Fontana's claim was barred by the three year statute of limitations, we will affirm
the Court's grant of summary judgment.

 67 Fed.Appx. 722, 30 Employee Benefits Cas. 1954

**Briefs and Other Related Documents** **(Back to top)**

• <u>02-2337</u> (Docket)
(May. 16, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



11 F.Supp.2d 480                                              Page 1
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**


# H

**Motions, Pleadings and Filings**


United States District Court,
D. Delaware.
Daniel R. LOVING, Plaintiff,
v.
PIRELLI CABLE CORPORATION, a Delaware corporation;  Pension Plan for Salaried
Employees of Pirelli Cable Corporation;  and Pirelli Cable Corporation, Plan
Administrator of Pension Plan, Defendants.
**Civil Action No. 97-449-RRM.**

June 30, 1998.

 A retiree sued his former employer in state court, seeking additional benefits
under the employer's pension plan. The employer removed the case and moved to
dismiss, and for sanctions. The District Court, McKelvie, J., held that: (1)
dismissal of an earlier complaint raising substantially the same issues barred the
present action, on res judicata grounds; (2) the statute allowing retention of
state claims after dismissal of federal claims did not allow for relitigation of a
settled statute of limitations point in state court; (3) the attorney for the
retiree violated Rule 11 of the Rules of Civil Procedure by filing a meritless
complaint; (4) the sanction would be imposition of attorney fees in accordance with
the attorney fees provision of ERISA; and (5) fees of $10,000 would be sufficient
to satisfy the deterrent purpose of Rule 11 and ERISA, even thought the amount
claimed was $37,000.

 Summary Judgment for employer.


West Headnotes


**[1] Judgment** ☜⟳570(4)
228k570(4) Most Cited Cases
The dismissal of a federal action brought by a retired employee claiming he did not
receive all retirement benefits, on the grounds that the statute of limitations had
run, was res judicata as to a second action brought in state court and removed,
seeking retirement benefits; the issues in both cases were the same, except for the
dropping of one claim and the raising of a point that could have been raised in the
first case, the parties were the same, and a dismissal on statute of limitations
grounds was a final decision on the merits.


**[2] Federal Courts** ☜⟳18
170Bk18 Most Cited Cases
The statute allowing a federal court to retain supplemental jurisdiction over state
law claims, following dismissal of all federal claims, did not allow filing of a
complaint in state court, following a federal court dismissal of essentially the
same complaint on statute of limitations grounds, in order to obtain a state court
ruling on the limitations point. 28 U.S.C.A. § 1367(d).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                                    Page 2
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

**[3] Federal Civil Procedure** ☞2753
170Ak2753 Most Cited Cases

**[3] Federal Civil Procedure** ☞2769
170Ak2769 Most Cited Cases
The Rule of Civil Procedure allowing for sanctions for the filing of court papers
not satisfying its requirements, seeks to discourage pleadings without factual
foundation, even though the pleading was not filed in subjective bad faith.
Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[4] Federal Civil Procedure** ☞2778
170Ak2778 Most Cited Cases
An attorney could be sanctioned for filing a complaint not conforming to the
requirements of the Rule of Civil Procedure sanctioning meritless complaints, even
though the complaint was filed in state court; the attorney pursued the claims
contained in the complaint in federal court and sought to amend it following
federal court procedures.  Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[5] Federal Civil Procedure** ☞2783(1)
170Ak2783(1) Most Cited Cases
An attorney will be deemed to have conducted an "inquiry reasonable under the
circumstances," as required by the Rules of Civil Procedure prior to filing a court
paper, if the inquiry provides the party with an objective knowledge or belief at
the time of the filing of the paper that the claim was well-grounded in law and
fact.  Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[6] Federal Civil Procedure** ☞2771(9)
170Ak2771(9) Most Cited Cases
An attorney did not act in an objectively reasonable manner in filing a second
complaint seeking recovery of amounts allegedly due his client under a retirement
plan; minimal research would have disclosed that dismissal of a virtually identical
earlier complaint on statute of limitations grounds was res judicata, his argument
that the statute allowing for supplemental jurisdiction somehow authorized the
second complaint to be filed in state court was "incomprehensible," and the
attorney had been warned in the past not to file frivolous claims.  Fed.Rules
Civ.Proc.Rule 11, 28 U.S.C.A.

**[7] Federal Civil Procedure** ☞2828
170Ak2828 Most Cited Cases
An attorney was given notice and an opportunity to be heard prior to the court's
decision to sanction him for filing a frivolous complaint; opposing counsel warned
the attorney that sanctions would be requested if the complaint was not withdrawn,
and a hearing was held on the sanctions motion during which the attorney was
allowed to present his rationale for filing the complaint. Fed.Rules Civ.Proc.Rule
11, 28 U.S.C.A.

**[8] Labor and Employment** ☞708
231Hk708 Most Cited Cases
     (Formerly 296k142, 296k107, 296k88)
An award of attorney's fees and costs under the Employee Retirement Income Security
Act (ERISA) can be assessed against either a party or an attorney. Employee
Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

**[9] Labor and Employment** ☞711

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 3
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

231Hk711 Most Cited Cases
        (Formerly 296k142, 296k107, 296k88)
In determining whether to award attorney fees, under the Employee Retirement Income
Security Act (ERISA), the district court is required to consider and set forth its
reasoning and conclusions as to (1) the offending parties' culpability or bad
faith, (2) the ability of the offending parties to satisfy an award of attorney's
fees, (3) the deterrent effect of an award of attorneys' fees against the offending
parties, (4) the benefit conferred on members of the pension plan as a whole. and
(5) the relative merits of the parties' position. Employee Retirement Income
Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

**[10] Labor and Employment** ☜717
231Hk717 Most Cited Cases
        (Formerly 296k142, 296k107, 296k88)
Attorney fees would not be assessed for filing a meritless complaint, under the
Employee Retirement Income Security Act (ERISA), against a retiree suing his
employer for additional benefits under the employer's retirement plan; the retiree
did not act in bad faith, as he relied on the advice of his attorney that the claim
had merit, there was no showing that the retiree could satisfy an attorney fees
award, and the award was not needed for its deterrent effect. Employee Retirement
Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1).

**[11] Labor and Employment** ☜717
231Hk717 Most Cited Cases
        (Formerly 296k142)
Attorney fees would be awarded, under the Employee Retirement Income Security Act
(ERISA), against an attorney filing a meritless complaint seeking additional
retirement benefits under an employer's retirement plan; the attorney's filing of a
complaint he should have known was barred by res judicata, in reliance upon a
statute that was clearly inapplicable to the case, was "blameworthy" and
"reprehensible," and an award might have a deterrent effect on similar future
actions by the attorney.  Employee Retirement Income Security Act of 1974, §
502(g)(1), 29 U.S.C.A. § 1132(g)(1).

**[12] Federal Civil Procedure** ☜2753
170Ak2753 Most Cited Cases
The clearly stated purpose of the Rule of Civil Procedure sanctioning the filing of
nonmeritorious complaints is to deter future conduct of the type that resulted in
the imposition of sanctions.  Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[13] Labor and Employment** ☜403
231Hk403 Most Cited Cases
        (Formerly 296k23)
The purpose of the Employee Retirement Income Security Act (ERISA) provision
awarding attorney fees is to deter conduct that does not fulfill the purpose of
ERISA.  Employee Retirement Income Security Act of 1974, § 502(g)(1), 29 U.S.C.A.
§ 1132(g)(1).

**[14] Federal Civil Procedure** ☜2812
170Ak2812 Most Cited Cases
Sanctions under the Rules of Civil Procedure governing the filing of meritless
complaints, in a case involving a claim for pension benefits under a regiment plan
covered by the Employee Retirement Income Security Act (ERISA), would consist of a
requirement that the attorney pay the employer's attorney fees, in accordance with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                        Page 4
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

the ERISA provision governing payment of those fees.  Employee Retirement Income
Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1); Fed.Rules
Civ.Proc.Rule 11, 28 U.S.C.A.

[15] **Federal Civil Procedure** ☞2812
170Ak2812 Most Cited Cases
An attorney filing a meritless complaint against an employee benefits plan covered
by the Employee Retirement Income Security Act (ERISA) would be required to pay
$10,000 of the employer's legal fees incurred in opposing the complaint, rather
than the full $37,000 of fees allegedly incurred; the smaller sum would adequately
serve the deterrent purpose of the Rule of Civil Procedure sanctioning meritless
complaints and the attorney fees provision of ERISA. Employee Retirement Income
Security Act of 1974, § 502(g)(1), 29 U.S.C.A. § 1132(g)(1); Fed.Rules
Civ.Proc.Rule 11, 28 U.S.C.A.
 **\*482** John M. Stull, Wilmington, DE, for Plaintiff.

 Barry M. Willoughby, Sheldon N. Sandler, Teresa C. Fariss & Scott A. Holt, Young,
Conaway, Stargatt & Taylor, Wilmington, DE, Christopher J. Collins, Bettina B.
Plevan & Aliza Herzberg, Proskauer, Rose, Goetz & Mendelsohn, L.L.P., New York
City, for Defendants.

 Thomas S. Neuberger, Wilmington, DE, for John M. Stull.

                                   OPINION

 McKELVIE, District Judge.

 This is an employee benefits case.  Plaintiff Daniel R. Loving is a former
employee of defendant Pirelli Cable Corporation ("Pirelli"), a Delaware
corporation.  Loving is a participant in defendant Pension Plan for Salaried
Employees of Pirelli Cable Corporation ("the Plan"), an "employee pension **benefit**
plan" as defined by § 3(2)(A) of the Employee Retirement Income Security Act
(**"ERISA"**), 29 U.S.C. § 1002(2)(A).  Pirelli is also named as a defendant in its
capacity as **administrator** of the Plan ("the Plan **Administrator**").

 On June 26, 1997, Loving filed a complaint in the New Castle County Superior Court
of the State of Delaware alleging that defendants wrongfully denied him accrued
**benefits** under certain provisions of **ERISA**.  On July 31, 1997, pursuant to 28
U.S.C. § 1441, defendants removed the case to this court. Loving filed a motion to
amend the complaint to add a **claim** for equitable relief.  Defendants subsequently
filed motions to dismiss, for sanctions, and for attorney's fees.  Defendants
argue that Loving's complaint is frivolous because this court previously granted
summary judgment in their favor on an almost identical complaint because it was
time-barred by the applicable statute of limitations.

 The following is the court's decision on these motions.

 I. *FACTUAL AND PROCEDURAL BACKGROUND*

 The court draws the following facts from the complaints filed in both this case
and in the previous action, the parties' briefs and accompanying evidence,
including the transcript of a hearing held in the previous action, a letter from
defendants to Loving's attorney regarding the current case, and affidavits from
defendants' attorneys documenting the work done, time spent, and fees charged for
work on this matter.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                          Page 5
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**


A. *The 1994 Complaint*

 On April 20, 1994, John M. Stull, an attorney representing Loving in both this
action and in the previous action, filed a complaint ("the 1994 complaint") in this
court alleging that the same defendants named in the present matter, Pirelli, the
Plan, and the Plan Administrator (collectively "the 1994 defendants" in the context
of the 1994 complaint), wrongfully denied Loving benefits accrued under the Plan.
*See Daniel R. Loving v. Pirelli Cable Corporation, a Delaware corporation, *483
Pension Plan for Salaried Employees of Pirelli Cable Corporation, and Pirelli Cable
Corporation, Plan Administrator of Pension Plan,* 94-205-RRM.   The complaint arose
out of Loving's twenty-six years of employment with Pirelli, and Loving's request
for pension benefits.

 Loving had worked for Pirelli from November 6, 1961, until November 9, 1987, at
which time Pirelli involuntarily terminated Loving when it closed the plant in
which Loving worked.   Pirelli offered enhanced early retirement benefits to
eligible employees terminated between October 20, 1987, and December 20, 1987.
Loving's termination fell within this time period, and he inquired whether he
qualified for the early retirement benefits.   The Plan Administrator informed
Loving that he was not eligible because the combination of his age and years of
service did not equal sixty-five or more.   It appears that in order to qualify for
early retirement benefits, an employee's age and years of service had to add up to
at least sixty-five.

 In January 1988, the Plan Administrator informed Loving of the amount of his
monthly retirement benefits under the terms of the Plan. Loving believed that the
Plan Administrator incorrectly calculated this amount.

 On October 31, 1990, nearly three years after the Plan Administrator first denied
Loving's request for early retirement benefits and notified Loving of the amount of
benefits he would receive under the Plan, Loving filed a claim for benefits with
the Plan Administrator.   Loving claimed that he was entitled to certain benefits
under both the early retirement program and the Plan. On January 3, 1991, the Plan
Administrator denied Loving's claim.   The Plan Administrator denied Loving's
subsequent appeal on April 22, 1991.

 On April 20, 1994, three years after the denial of Loving's appeal, Stull filed
the 1994 complaint in this court.   The 1994 complaint asserts that Loving "was
arbitrarily and capriciously denied accrued benefits under the Plan and VERP [the
Voluntary Early Retirement Program] by not having his accrued benefit calculated by
reference to credited service under the terms of the Plan to be 23.833 years."
Count I claims that Loving "is entitled to benefits from the Plan and VERP and
makes a claim for benefits under ERISA Sec. 502(a)(1)(B), 29 U.S.C. Section
1132(a)(1)(B), as to both plans, which benefits were arbitrarily and capriciously
denied to plaintiff."   Section 502(a)(1)(B) states that a participant or
beneficiary in a plan may bring a civil action "to recover benefits due to him
under the terms of the plan, to enforce his rights under the terms of the plan, or
to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §
1132(a)(1)(B).

 The 1994 complaint also asserts that "[d]uring October, 1987, plaintiff sought
information on VERP in order to determine whether he would qualify for benefits
under the terms of VERP, in that he had a service and age total of over 65," and
that "[d]uring October, 1987, plaintiff was denied information on VERP by being
advised by [Pirelli] that he would not qualify."   Thus, Count II claims that "[a]s

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                        Page 6
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

a result of [Pirelli's] failure to disclose and provide information to plaintiff on
VERP, plaintiff was improperly denied access to information on VERP, in violation
of ERISA Section 502(c)."    Section 502(c) provides that any plan administrator
 who fails or refuses to comply with a request for any information which such
 administrator is required by this subchapter to furnish to a participant or
 beneficiary (unless such failure or refusal results from matters reasonably beyond
 the control of the administrator) by mailing the material requested to the last
 known address of the requesting participant or beneficiary within 30 days after
 such request may in the court's discretion be personally liable to such
 participant or beneficiary in the amount of up to $100 a day from the date of such
 failure or refusal, and the court may in its discretion order such other relief as
 it deems proper.
 29 U.S.C. § 1132(c).

 The 1994 defendants filed a motion for summary judgment on the ground that the
**claims** were barred by the applicable **statute** of **limitations**.    On March 28, 1995,
the court *484 heard oral argument on the question of whether the **claims** were time-
barred.

 Stull argued that Delaware's three-year **statute** of **limitations** governing contracts
applied to the case.    *See* Del.Code Ann. tit. 10, § 8106.    Stull argued that the
cause of action did not arise, and therefore, the three-year time period did not
begin to run, until Loving **exhausted** his **administrative** remedies on April 22, 1991.
Stull filed his complaint on April 20, 1994.    The 1994 defendants argued that
Loving's cause of action accrued and the **statute** of **limitations** began to run at the
earliest in January 1988, when Loving was apprised of the amount of **benefits** he
would receive, and at the latest on January 3, 1991, when the Plan **Administrator**
initially denied Loving's **claim**.

 At the oral argument the court stated that because the **claims** arise under **ERISA**, a
federal **statute** without a built-in **statute** of **limitations**, it would look to state
law for the proper **limitations** period.    The court agreed that a three-year **statute**
of **limitations** period applied.    However, the court rejected the notion that the
filing of an **administrative** action **tolls** the **statute** of **limitations**.    The court
concluded that the **limitations** period began at the earliest in January 1988, and no
later than January 1991.    Thus, the court concluded that Loving's **claims** were
time-barred.

 The court further stated that, within ten days of the entry of an order granting
the 1994 defendants' motion for summary judgment, Stull could file a motion for
reargument identifying case law speaking directly to the issue of whether a cause
of action under **ERISA** does not arise until after the final **exhaustion** of the
internal appeals process.

 On March 29, 1995, the court entered an order granting summary judgment in favor
of the 1994 defendants on the ground that the 1994 complaint was time-barred by the
applicable three year **statute** of **limitations**.

 Stull timely filed a motion for reargument.    In the opening brief Stull requested
that the "Court make clear that the only basis for accepting the **statute** of
**limitations** as a bar to Plaintiff's **claims** is the application of the three-year
period beginning January 3, 1991."    On October 18, 1995, the court denied Stull's
motion for reargument.    In the order denying the motion, the court stated that
Stull's brief did not direct the court to any case law addressing whether an **ERISA**
**benefits claim** does not accrue until the internal appeals process is finally
**exhausted**.    Rather, Stull's argument was a "mere repetition" of the argument he

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                          Page 7
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

had previously asserted--that the **statute** of **limitations** does not begin to run
until the complainant has finally **exhausted** the internal appeals process.

 Stull appealed this court's order to the Court of Appeals for the Third Circuit.
On August 21, 1996, the Third Circuit entered an order affirming this court's
October 18, 1995 order.   Stull subsequently moved for rehearing en banc.   On
October 21, 1996, the Third Circuit denied Stull's motion for rehearing.   Stull
then filed a petition for a writ of certiorari with the United States Supreme
Court.   On May 27, 1997, the Supreme Court entered an order denying Stull's
petition for a writ of certiorari.

 B. *The 1997 Complaint*

 On June 26, 1997, Stull, again representing Loving, filed the complaint  ("the
1997 complaint") in this action in the New Castle County Superior Court. The 1997
complaint asserts that Loving "was arbitrarily and capriciously denied accrued
benefits under the Plan and VERP by not having his accrued benefit calculated by
reference to credited service under the terms of the Plan to be 23.833 years."
Count I claims that Loving "is entitled to benefits from the Plan and VERP and
makes a claim for benefits under ERISA Sec. 502(a)(1)(B), 29 U.S.C. Section
1132(a)(1)(B), as to both plans, which benefits were arbitrarily and capriciously
denied to plaintiff." Count I of the 1997 complaint repeats, verbatim, Count I of
the 1994 complaint.

 The only differences between the 1997 complaint and the complaint filed in 1994
are that the 1997 complaint includes a paragraph detailing the procedural history
of the 1994 action, and that the 1997 complaint does not include the ERISA claim
for denial of information.

 **\*485** On July 15, 1997, Bettina B. Plevan, defendants' attorney at the New York law
firm of Proskauer, Rose, Goetz & Mendelsohn ("Proskauer, Rose"), sent Stull a
letter regarding the complaint filed in Superior Court.   Plevan wrote that the
complaint
 is in all material respects identical to Loving's prior lawsuit against these
 defendants.   That lawsuit was dismissed on defendants' motion for summary
 judgment, which was affirmed by the Third Circuit. Accordingly, the present
 lawsuit is barred by the doctrine of res judicata.   We demand that the new
 complaint be immediately withdrawn or we will seek appropriate remedies for your
 prosecution of a frivolous action, including an award of attorneys' fees and
 costs.
 Please advise us no later than Friday, July 18 whether you will voluntarily
 withdraw the complaint.   If you do not agree to do so we will remove this case to
 federal court, file a motion to dismiss, and seek other available relief for your
 frivolous conduct.
 Stull apparently did not respond to Plevan's letter.

 On July 31, 1997, pursuant to 28 U.S.C. § 1441, defendants removed the case from
Superior Court to this court.   Defendants filed an answer denying the allegations
in the complaint, and asserting several affirmative defenses, including that the
claims in the complaint are barred by the doctrines of res judicata and collateral
estoppel, and that the complaint is time-barred by the applicable statute of
limitations.

 On August 12, 1997, Christopher J. Collins, another attorney at Proskauer, Rose,
spoke with Stull and reiterated defendants' request that Stull voluntarily withdraw
the complaint because it was barred by res judicata. Collins also told Stull that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                              Page 8
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

if he refused to withdraw the complaint defendants would file motions to dismiss,
for attorney's fees and costs, and for sanctions pursuant to Federal Rules of Civil
Procedure Rule 11.    Collins encouraged Stull to research the law on res judicata.
Stull apparently told Collins that he would not withdraw the complaint as he did
not believe that it was baseless or frivolous.

   1. *Defendants' motion to dismiss and for attorney's fees and costs and Loving's
                        motion to amend the complaint*
   On September 18, 1997, defendants moved to dismiss the complaint, apparently under
Rule 12(b)(6) for failure to state a claim upon which relief can be granted.    In
their opening brief defendants argue that because the 1997 complaint is identical
"in all material respects" to the 1994 action, the court should dismiss the
complaint as barred by the doctrine of res judicata. Because they rely on matters
outside the pleadings the court will treat this motion as a motion for summary
judgment.    *See* Fed.R.Civ.P. 12(b)(6).    *See also* *Rycoline Prods., Inc. v. C & W
Unlimited,* 109 F.3d 883, 886 (3d Cir.1997) (noting that res judicata is an
affirmative defense that can be the basis for either a motion to dismiss or a
motion for summary judgment).

   Defendants also seek an award of attorney's fees and costs pursuant to ERISA §
502(g)(1).    Section 502(g)(1) provides that in an ERISA action "the court in its
discretion may allow a reasonable attorney's fee and costs of action to either
party."    29 U.S.C. § 1132(g)(1) (1998).

   On October 2, 1997, Stull filed an answering brief.    Stull argues that he filed
the 1997 complaint in state court "in order to have the forum state review the
applicable statute of limitations."    Stull also argues that he filed the complaint
"pursuant to 28 U.S.C. Section 1367(d) that allows for tolling the statute of
limitations and the refiling of a claim that has been dismissed from federal
court."    Stull further argues that res judicata does not apply because "there was
no judgment on the merits by virtue of an analysis as to the legal effect of
federal regulations and other case authority," and because the court's denial of
his motion for reargument does not "delve into the factual basis other [than] that
certain dates were beyond the time determin[e]d to be applicable."

   Stull also moved to amend the 1997 complaint to add a **claim** for "other appropriate
equitable relief" pursuant to **ERISA** § 502(a)(3). *See* 29 U.S.C. § 1132(a)(3).
Stull argues that Loving "is entitled to individualized equitable relief that would
require the **\*486** plan **administrator** to correctly calculate his future pension
**benefit** entitlement" because the Plan **Administrator** breached his fiduciary duties
by incorrectly calculating Stull's **benefits**.    Defendants argue that the court
should not grant the motion to amend because the **claims** Stull seeks to add are
based on the same set of facts as the **claims** on which the court previously granted
summary judgment in favor of defendants. Therefore, defendants argue that they are
barred by the doctrine of res judicata.

            2. *Defendants' motion for sanctions pursuant to Rule 11*
   On October 17, 1997, defendants filed a motion for sanctions against Stull
pursuant to Federal Rules of Civil Procedure Rule 11 on the ground that filing the
1997 complaint constitutes a frivolous action.    Defendants request that Stull be
ordered to pay defendants' attorney's fees and costs incurred in defending against
the 1997 complaint.

   Rule 11 provides that a court may issue sanctions if a case is presented for an
"improper purpose, such as to harass or to cause unnecessary delay or needless
increase in the cost of litigation," if the claims presented are not "warranted by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                                    Page 9
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

existing law," or if the allegations lack evidentiary support.    *See* Fed.R.Civ.P.
11(b).    The sanctions issued must be "sufficient to deter repetition of such
conduct or comparable conduct by others similarly situated."    Fed.R.Civ.P.
11(c)(2).

 Defendants argue that because the 1997 complaint is "identical in all material
respects" to the 1994 complaint, Stull should have known that these claims are
barred by the doctrine of res judicata and never should have filed the 1997
complaint.    Furthermore, defendants argue that because Stull represented Loving in
the 1994 action, Stull is intimately familiar with the previous action, and a
reasonable inquiry into the law would have apprised Stull of the fact that the 1997
complaint is barred by res judicata.    Additionally, defendants notified Stull that
res judicata applied, and gave Stull the opportunity to withdraw the 1997 complaint
without any potentially negative repercussions.

 On November 7, 1997, Stull filed an answering brief.    First, Stull argues that
sanctions are not appropriate because he filed the 1997 complaint in Superior Court
in good faith and for the proper purpose of having the Superior Court determine the
appropriate statute of limitations.    Second, Stull appears to argue that sanctions
are not appropriate because Rule 11 does not apply to a nonfrivolous action
properly filed in state court and later removed to federal court.

            3. *Oral argument on all outstanding motions*
 On March 17, 1998, the court issued an order scheduling oral argument on all
outstanding motions for March 25, 1998.    The court further ordered that Loving
attend the oral argument.

 In response to the court's invitation, a representative from the Office of
Disciplinary Counsel attended the oral argument.    The Office of Disciplinary
Counsel is established by Delaware Supreme Court Rule 64, and it is responsible for
investigating "when necessary or appropriate all information coming to [its]
attention which might be grounds for discipline or other action regarding the
practice of law" in Delaware.    *See* DEL.SUP.CT.R. 64.

            a. *Affidavits showing attorney's fees and costs*
 On the day of the oral argument, defendants submitted an affidavit of Barry M.
Willoughby, an attorney at Young, Conaway, Stargatt & Taylor, LLP ("Young,
Conaway"), a Wilmington, Delaware law firm acting as local counsel for defendants.
In the affidavit Willoughby states that Young, Conaway's books and records show
that the total amount of attorney's fees and costs incurred defending the 1997
complaint equals $3,241.88.    Willoughby also states that four attorneys have
worked on the matter--Sheldon N. Sandler, at a billing rate of $260 per hour,
Teresa C. Fariss, at a billing rate of $200 per hour, Willoughby, at a billing rate
of $240 per hour through December 31, 1997, and $250 per hour after January 1,
1998, and Scott A. Holt, at a billing rate of $140 per hour.    Attached to the
affidavit is a billing record documenting the work done by each attorney, the date
of and amount of time spent on the work, and the total amount of **\*487** fees between
July 11, 1997, and September 19, 1997.

 The billing record reports that from July 11, 1997, to September 19, 1997,
Willoughby worked a total of 3.4 hours, and Holt worked a total of 5.2 hours on
this matter, totaling $1,544 in fees.    Their work included reviewing the case,
discussing the case with Collins, researching § 1441 removal requirements and
preparing the motion to remove, preparing an answer to the 1997 complaint, and
researching and preparing the motions for summary judgment and for attorney's fees
and costs.    Additionally, the billing record reflects that during this time period

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                          Page 10
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

Young, Conaway spent $348.62 in expenses, which includes a $145.20 copying charge,
a $150 filing fee charge, and $53.42 in postage, long distance telephone call, fax,
and delivery charges.    Thus, during this time frame, Young, Conaway billed
defendants $1,892.62.

 Willoughby also states in the affidavit that from October 1, 1997, to the date of
the oral argument, the total amount of unbilled attorney's fees equals $1,053, and
the total amount of unbilled expenses equals $171.26.    He does not state how much
time each attorney has spent working on the case, or the nature of that work.
Additionally, Willoughby estimated that the oral argument would last half of an
hour, and that his presence at the oral argument would cost defendants $125.
Thus, the total amount of unbilled charges equals $1349.26.

 Collins submitted an affidavit stating that Proskauer, Rose's books and records
show that the total amount of attorney's fees and costs incurred defending the 1997
complaint equals $34,167.25.    In the affidavit Collins states that three attorneys
have worked on the matter--Bettina B. Plevan, at a billing rate of $400 per hour,
Collins, at a billing rate of $290 per hour through October 31, 1997, and $300 per
hour after November 1, 1997, and Aliza Herzberg, at a billing rate of $235 per hour
through October 31, 1997, and $245 per hour after November 1, 1997.    Additionally,
legal assistants working on the case between July and November 1997, billed at a
rate of $85 to $100 per hour.    Attached to the affidavit is a billing record
documenting the work done by each attorney, the date of and amount of time spent on
the work, and the total amount of fees between July 11, 1997, and November 25,
1997.

 The billing record reports that Collins worked a total of 33.5 hours, Herzberg
worked a total of 89.82 hours, Plevan worked a total of a quarter of an hour, and
legal assistants worked over sixteen hours on this matter, totaling $32,168.75 in
fees.    Their work included writing a letter to Stull requesting withdrawal of the
complaint, revising the <u>§ 1441</u> motion to remove, preparing an answer to the 1997
complaint, researching the doctrine of res judicata and related issues and
preparing the motions for summary judgment and for attorney's fees and costs, and
researching <u>Rule 11</u> and preparing the motion for sanctions.    Additionally, the
billing record reflects that Proskauer, Rose spent $1,613.50 in expenses, including
$1,236.99 for computerized legal research.

                          b.  *The oral argument*
 At the oral argument, the court asked Stull why the claims in the 1997 complaint
are not the same as the claims in the 1994 complaint, and therefore, why the 1997
complaint is not also barred by the statute of limitations.    Stull stated that he
filed the 1997 complaint in Superior Court because he wanted to "seek analysis of
the statute of limitations as it would apply to Mr. Loving's benefits claim only."
Stull further stated that he "was testing the Delaware [c]ourt's interpretation of
its own statute of limitations."    Stull referred to <u>28 U.S.C. § 1367(d)</u> as the
relevant law stating that once an issue has been litigated, the state court can
revisit that issue.

 <u>Section 1367</u> provides the basis for a federal court to exercise supplemental
jurisdiction over state law claims.    <u>Section 1367(a)</u> states that
  in any civil action of which the district courts have original jurisdiction, the
  district courts shall have supplemental jurisdiction over all other claims that
  are so related to claims in the action within such original jurisdiction that they
  form part of the same case or controversy under Article III of the United States
  Constitution.
  <u>28 U.S.C. § 1367(a)</u>.  <u>Section 1367(d)</u> states that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 11
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

**\*488** period of limitations for any claim asserted under subsection (a), and for
any other claim in the same action that is voluntarily dismissed at the same time
as or after the dismissal of the claim under subsection (a), shall be tolled while
the claim is pending and for a period of 30 days after it is dismissed unless
State law provides for a longer tolling period.
  *Id.* § 1367(d).

The court then addressed Loving personally.  The court asked Loving whether it
was his decision to file the 1997 complaint.  Loving stated that after consulting
with Stull he understood that it was appropriate to continue to pursue his claim
for benefits by filing the 1997 complaint in state court.  The court also asked
Loving what was his economic relationship with Stull, and specifically whether he
was paying Stull hourly, by contingency fee, or by retainer.  Loving responded
that he did not know, that he did not have a written agreement with Stull about
payment, and that he had not paid Stull any money.

The court stated that it did not see any basis for the 1997 complaint, and that it
did not understand Stull's asserted justifications for filing it.  The court
explained that while it was prepared to impose sanctions, it did not want to impose
sanctions against Loving personally.  The court also explained that although it
did not see a basis for finding bad faith, it felt that Rule 11 sanctions against
Stull should be granted.  The court noted that it had other cases where Stull had
represented a party, defendants had filed motions for sanctions and for attorney's
fees and costs, and the court did not understand the theories and legal principles
advanced by Stull.

The court specifically referred to an opinion it issued the day before in another
ERISA case in which Stull represented the plaintiffs.  *See George L. Bader, Walter
Dulin, John Zimath, Thomas Russell, John Lennon, Sr., and Benjamin Panella, Jr. v.
United Brotherhood of Carpenters & Joiners of America Local Union # 626 Pension
Fund, Robert A. McCullough, Sr., Joseph P. Durham, Michael A. Stipo, James V.
Healy, Blaine Streeper, and E. Andrew DiSabatino, Jr., Individually and as Trustees
of Pension Fund, and as Plan Administrator of Pension Plan,* 95-463-RRM, Memorandum
Opinion, March 24, 1998.  In the *Bader* case, Stull submitted briefs on renewed
motions for summary judgment which included numerous arguments that the court had
previously addressed and conclusively ruled on.  Defendants subsequently moved for
Rule 11 sanctions and for attorney's fees and costs, arguing that Stull had pursued
baseless ERISA claims.

In *Bader,* the court found that the "inattention to the court's decision imposed on
defendants the burden of responding to arguments already made and decided, and is a
waste of judicial time and resources."  The court concluded
  that Stull did not act in an objectively reasonable manner, and the imposition of
  Rule 11 sanctions would be appropriate under the circumstances.  However, the
  court will not impose sanctions on Stull, as the court does not find sanctions a
  necessary measure in order to "discourage [Stull] from bringing baseless actions
  or making frivolous motions." *Bensalem Township v. International Surplus Lines
  Ins. Co.,* 38 F.3d 1303, 1314 (3d Cir.1994).  Rather, the court cautions Stull to
  act more prudently in choosing which battles to continue to pursue in the future,
  and warns Stull that any future "misuse of the court's process" will result in
  appropriate sanctions.

At the conclusion of the oral argument, the court reiterated that it did not want
to impose sanctions on Stull in a way that would be detrimental to Stull's ability
to practice law.  Therefore, the court strongly encouraged Stull to do four things
before the court resorted to imposing sanctions.  First, the court suggested that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                          Page 12
11 F.Supp.2d 480
(Cite as: 11 F.Supp.2d 480)

Stull have another attorney review the case, look at the principles cited by Stull,
and if that attorney found a reasoned basis for filing the 1997 complaint, explain
it to the court.    Second, the court encouraged Stull to attempt to reach an
agreement with defendants on how to settle the matter.    Third, the court suggested
that Stull consult with Disciplinary Counsel about this matter and about *Bader,* to
see if Disciplinary **489 Counsel could find a way to resolve the issue other than
by imposing sanctions.    Fourth, the court asked Stull to review defendants'
affidavit for attorney's fees and costs and determine whether to request an
evidentiary hearing on the issue.

 Additionally, the court requested that defendants write a letter indicating what
sanctions they believe would be appropriate.    The court stated that it would be
granting defendants' motion for attorney's fees and costs and would be imposing the
fees and costs on Stull individually.    The court also requested that defendants
inform the court what is the source of funds for the approximately $37,000 in
attorney's fees and costs incurred by defendants.    In particular, the court
inquired whether the Plan would be the source of the unpaid funds, thereby taking
the money from otherwise entitled beneficiaries. Defendants' counsel said that
although he previously had matters where the pension beneficiaries paid, he did not
know who would pay in this particular matter.

### 4. *After the oral argument*
 After the oral argument, the court received letters from both parties addressing
what had occurred, and whether sanctions would be appropriate.

### a. *Letter on behalf of Stull*
 On April 22, 1998, Thomas S. Neuberger, an attorney in Wilmington, Delaware,
submitted a letter to the court on Stull's behalf.

 Neuberger stated that he consulted with Stull about what happened and that it
appeared that Stull made a mistake in interpreting § 1367(d).    As a consequence,
Stull confused the difference between an independent state law legal theory over
which the court could exercise supplemental jurisdiction pursuant to § 1367 and a
legal argument for "the accrual of an action under the law concerning statutes of
limitations."    Neuberger further explained that Stull misread § 1367(d) due to an
apparent misunderstanding of the purpose of supplemental jurisdiction.    Neuberger
attributed this misunderstanding to either "inadvertence or a lack of experience
with supplemental jurisdiction."

 Neuberger then addressed whether sanctions would be appropriate under the
circumstances.    Neuberger emphasized that Stull merely made a mistake, and that he
did not file the 1997 complaint for an improper purpose or in bad faith.
Neuberger also emphasized that Stull believed that his arguments were not frivolous
and were warranted by existing law.

 Neuberger concluded the letter by praising Stull, the nature of Stull's ERISA
practice, and Stull's devotion to serving the needs of a specific group of clients.
Neuberger urged the court not to impose monetary sanctions under Rule 11.    Rather,
Neuberger suggested that an appropriate sanction would be "to refresh his skills in
the area of federal practice and procedure." Neuberger discussed Rule 11 and Third
Circuit law interpreting Rule 11 to support the use of non-monetary sanctions.    In
particular, Neuberger cited to a recent Third Circuit opinion in which the court
stated
  "This court has instructed the district courts that '[f]ee-shifting is but one of
  several methods of achieving the various goals of Rule 11,' that they should
  'consider a wide range of alternative possible sanctions for violations of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                          Page 13
11 F.Supp.2d 480
(Cite as: 11 F.Supp.2d 480)

rule,' and that the 'district court's choice of deterrent is appropriate when it is the minimum that will serve to adequately deter the undesirable behavior.' " *Zuk v. Eastern Pennsylvania Psychiatric Inst. of Medical College of Pennsylvania,* 103 F.3d 294, 300-01 (3d Cir.1996) (quoting *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988)).

### b. *Letter on behalf of defendants*

On April 28, 1998, Collins submitted a letter to the court responding to Neuberger's letter.  First, Collins notes that Neuberger focused entirely on the propriety of imposing Rule 11 sanctions, and did not address defendants' motion for attorney's fees and sanctions pursuant to ERISA § 502(b)(1). Second, Collins notes that although Neuberger wrote the letter on Stull's behalf, the letter nevertheless "demonstrates that the prerequisites for an award of [Rule 11] sanctions against Mr. Stull have been satisfied" by acknowledging that the 1997 complaint was barred by res judicata and that there was no **490 legal basis under § 1367(d) for filing the 1997 complaint. Third, Collins notes that Neuberger does not address the fact that on several occasions defendants informed Stull that the 1997 complaint was barred by res judicata, and requested that he voluntarily withdraw it.  Finally, Collins suggests that the most appropriate form of sanctions would be an award of attorney's fees and costs.

### c. *Other suggestions by the court*

At the March 25, 1998 oral argument, the court made additional suggestions to Stull and to defendant.  Neither Stull nor defendants appear to have followed up on these suggestions.  First, Stull has not made a request for an evidentiary hearing on the issue of attorney's fees and costs.  Second, the court does not know whether Stull has had any contact with Disciplinary Counsel since the oral argument.  Third, neither of the letters submitted by the parties indicate that they attempted to settle the matter.  Fourth, defendants did not provide the court with further information regarding the source of the funds that would cover the attorney's fees and costs if Stull did not provide sufficient funds.

## II. *DISCUSSION*

### A. *Should The Court Grant Defendants' Motion For Summary Judgment?*

Defendants argue that the court should grant their motion for summary judgment because the claims asserted in the 1997 complaint are barred by the doctrine of res judicata.   Stull asserts that he filed the 1997 complaint pursuant to § 1367(d) in order to have the Superior Court review the applicable statute of limitations. Stull also argues that res judicata does not apply because the court did not rule on the merits of the 1994 complaint.

The United States Supreme Court has explained that the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case. "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."  The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever."  *Nevada v. United States,* 463 U.S. 110, 129-30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (citations omitted).   Accordingly, "[u]nder res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."  *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 14
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

   In *Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir.1991)*, the Third
Circuit stated that in order to ascertain whether res judicata applies, the court
must answer three questions.   First, the court must determine whether the cause of
action asserted in the 1997 complaint is the same cause of action asserted in the
1994 complaint.   *See id.*   Second, the court must determine whether the parties in
the 1997 action are identical to or in privity with the parties in the 1994 action.
*See id.*   Third, the court must determine whether the prior decision constituted a
"final judgment on the merits."   *Id.*

     1. *Is the cause of action in the 1997 complaint the same cause of action
                     asserted in the 1994 complaint?*
   [1][2] The first question the court must resolve in determining whether the 1997
complaint is barred by res judicata is whether the cause of action asserted in that
complaint is the same as the cause of action asserted in the 1994 complaint.   *See
id.*

   In *Lubrizol,* the Third Circuit, recognizing that " 'cause of action' cannot be
precisely defined," stated that the court should look "toward the 'essential
similarity of the underlying events giving rise to the various legal claims' " to
determine whether the causes of action are the same.  *Id.* (citation omitted).   The
Third Circuit further stated that "[i]n conducting this inquiry, we focus upon
'whether the acts complained of were the same, whether the material facts alleged
in each suit were the same, and whether the witnesses and documentation required to
prove all allegations were the same.' " *Id.* *491 (quoting *United States v. Athlone
Indus., Inc., 746 F.2d 977, 983 (3d Cir.1984)*).   It is additionally important "
'whether the wrong for which redress is sought is the same in both actions.' " *Id.*
(quoting *Athlone, 746 F.2d at 984).*

   Stull appears to argue that the 1997 cause of action is different from the 1994
cause of action for three reasons.   First, Stull appears to argue that it is
different because he omitted a claim for denial of information that was in the 1994
complaint.   Second, Stull appears to argue that the 1997 complaint is different
because he seeks to amend that complaint to include a claim for a breach of
fiduciary duty.   Third, Stull appears to argue that the 1997 action is different
from the 1994 action because in the current matter Stull sought to have the
Superior Court review the statute of limitations determination pursuant to §
1367(d).

   The only difference that exists between the 1994 complaint and the 1997 complaint
is that three years elapsed and during that time this court, the Third Circuit, and
the Supreme Court issued decisions relating to the 1994 action.   One paragraph
detailing this history is included in the 1997 complaint.   Absent this procedural
history and the deletion of a claim for denial of information, the 1994 and 1997
complaints are identical.   *See Angel v. Bullington, 330 U.S. 183, 186, 67 S.Ct.
657, 91 L.Ed. 832 (1947)* (stating that "[f]or all practical purposes, the complaint
in the present action was a carbon copy of the complaint in the State court action"
and finding the second complaint barred by the doctrine of res judicata).

   The causes of action asserted in the 1994 and the 1997 complaints both arise out
of Loving's employment with Pirelli, his membership and participation in the Plan,
his termination on November 9, 1987, and his subsequent efforts to obtain the
benefits he believed he was entitled to under the terms of the Plan. Thus, the
facts, witnesses, and evidence underlying the causes of action in the 1994
complaint and in the 1997 complaint are identical.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 15
11 F.Supp.2d 480
(Cite as: 11 F.Supp.2d 480)

Furthermore, Stull seeks to amend the 1997 complaint to add a claim for breach of
fiduciary duty.  However, the breach of fiduciary duty claim arises out of these
same facts and circumstances, and it is a claim that could have been asserted in
the 1994 complaint.  Thus, because of the 'essential similarity of the underlying
events giving rise to the various legal claims,' " _Lubrizol, 929 F.2d at 963,_ the
court concludes that even if it granted Stull's motion to amend, the 1997 complaint
would assert the same cause of action as the 1994 complaint.

Additionally, Stull's argument that § 1367(d) provides a legal basis for
reviewing this court's statute of limitations determination is entirely misplaced.
As noted above, § 1367 provides the basis for the federal court to exercise
supplemental jurisdiction over state law claims under specific circumstances.
Loving's claim for benefits does not implicate the court's jurisdiction to keep
state law claims under § 1367.

Thus, for the reasons stated above, the court concludes that the 1997 complaint
asserts the same cause of action as the 1994 complaint.

            *2. Are the parties in the 1997 action the same as, or in privity with, the
                               parties in the 1994 action?*
The second question the court must decide is whether the parties in the 1997
action are the same as, or in privity with, the parties in the 1994 action. *See id.*
The 1994 complaint names as defendants the same three parties named in the 1997
complaint.  Accordingly, the parties in the current action are identical to the
parties in the earlier action.

            *3. Was the prior adjudication a final judgment on the merits?*
The third question the court must decide is whether the prior adjudication
constituted a final judgment on the merits.  *See id.*

This court has held a determination that a cause of action is time-barred
constitutes a decision on the merits.  In particular, this court has stated that
"[f]or the purpose of considering the applicability of the principle of res
judicata, the dismissal of the action by reason of its being barred by the statute
of limitations is an adjudication upon the merits." _Williamson v. Columbia Gas &_
_Elec. Corp.,_ 91 F.Supp. 874, 880 (D.Del.), *aff'd,* *492186  F.2d 464 (3d Cir.1950),*
*cert. denied,* 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951).  Furthermore, this
court stated that "[t]he general rule is that where judgment is given for a
defendant upon the ground that the action is barred by the statute of limitations,
the plaintiff is precluded from thereafter maintaining an action upon the same
claim in that jurisdiction." *Id. See also* Fed.R.Civ.P. 41(b) (providing that "any
dismissal not provided for in this rule, other than a dismissal for lack of
jurisdiction, for improper venue, or for failure to join a party under Rule 19,
operates as an adjudication upon the merits"); _PRC Harris, Inc. v. Boeing Co.,_ 700
F.2d 894, 896 (2d Cir.) (stating that "dismissal for failure to comply with the
statute of limitations will operate as an adjudication on the merits"), *cert.*
*denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983).

This court granted summary judgment in favor of defendants on all claims in the
1994 complaint on the ground that they were barred by the applicable three-year
statute of limitations.  Stull timely filed a motion for reargument which the
court denied.  The Third Circuit subsequently affirmed this court's decision and
denied a request for a rehearing en banc.  Stull then filed petition for a writ of
certiorari which the Supreme Court denied.  Thus, it is clear that the prior
adjudication constituted a final judgment on the merits.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 16
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

        4. *Is the 1997 complaint barred by res judicata?*
The court has concluded that the 1997 cause of action is the same as the 1994
cause of action, the parties in both cases are the same, and the prior adjudication
constituted a final judgment on the merits.   Accordingly, the 1997 complaint is
barred by the doctrine of res judicata, and the court will grant defendants' motion
for summary judgment.   *See* Fed.R.Civ.P. 56(c) (stating that summary judgment is
appropriate when the "pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law").   Additionally, as noted above, even if the court
were to grant the motion to amend the complaint, the addition of a breach of
fiduciary duty claim would not overcome the bar posed by the doctrine of res
judicata.   Thus, the court will deny the motion to amend the complaint.

B. *Should The Court Grant Defendants' Motion For Sanctions?*

 Defendants argue that the court should sanction Stull pursuant to Rule 11 for
filing the 1997 complaint after the court previously granted summary judgment in
defendants' favor on a nearly identical complaint, and after defendants urged Stull
to voluntarily withdraw the case because it was barred by res judicata.

Rule 11 states:
 By presenting to the court (whether by signing, filing, submitting, or later
 advocating) a pleading, written motion, or other paper, an attorney or
 unrepresented party is certifying to the best of the person's knowledge,
 information, and belief, formed after an inquiry reasonable under the
 circumstances,--
 (1) it is not being presented for any improper purpose, such as to harass or to
 cause unnecessary delay or needless increase in the cost of litigation;
 (2) the claims, defenses, and other legal contentions therein are warranted by
 existing law or by a nonfrivolous argument for the extension, modification, or
 reversal of existing law or the establishment of new law;
 (3) the allegations and other factual contentions have evidentiary support or, if
 specifically so identified, are likely to have evidentiary support after a
 reasonable opportunity for further investigation or discovery;   and
 (4) the denials of factual contentions are warranted on the evidence or, if
 specifically so identified, are reasonably based on a lack of information or
 belief.
 Fed.R.Civ.P. 11(b).

 [3] The Third Circuit has stated that the "Rule 11 test 'is now an objective one
of reasonableness' and seeks to discourage pleadings 'without factual foundation,
even though the paper was not filed in subjective **493 bad faith.'   Rule 11 also
seeks to ensure a pleading is not used for 'an improper purpose, such as to cause
harassment, undue delay, or needless increase in litigation expense.' " *Lony v.
E.I. DuPont de Nemours & Co., 935 F.2d 604, 616 (3d Cir.1991)* (citations omitted).
The Third Circuit has also cautioned that Rule 11 sanctions should be "awarded in
exceptional circumstances in order to 'discourage plaintiffs from bringing baseless
actions or making frivolous motions.' " *Bensalem Township v. International Surplus
Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir.1994)* (quoting *Doering v. Union County
Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir.1988)*).   *See also Morristown
Daily Record, Inc. v. Graphic Communications Union, Local 8N, 832 F.2d 31, 32 n. 1
(3d Cir.1987)* (noting that "Rule 11 is not to be used routinely when the parties
disagree about the correct resolution of a matter in litigation").

                    1. *Does Rule 11 apply?*

        © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 17
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

Stull argues that <u>Rule 11</u> is inapplicable in the present matter for two reasons. First, Stull argues that <u>Rule 11</u> does not apply because he did not file the 1997 complaint in bad faith or for a frivolous reason. Second, Stull argues that <u>Rule 11</u> does not apply because he originally filed the 1997 complaint in state court, and <u>Rule 11</u> applies to proceedings in federal court.

The Third Circuit has specifically stated that a finding of bad faith is not a necessary prerequisite to imposing sanctions under <u>Rule 11</u>. *See Lony,* 935 F.2d at 616. Accordingly, whether Stull acted in bad faith or with a frivolous purpose is not determinative of whether <u>Rule 11</u> sanctions are appropriate.

[4] Furthermore, the 1993 Advisory Committee Notes specifically state that "if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court, [i]t would be viewed as 'presenting'--and hence certifying to the district court under <u>Rule 11</u>-- those allegations." Thus, the fact that Stull initially filed the 1997 complaint in state court does not render <u>Rule 11</u> inapplicable to the present matter.

Additionally, after defendants removed the case to this court, Stull filed a motion to amend. By signing the motion to amend and filing it with this court, Stull represented to the court that he complied with <u>Rule 11(b)</u>. Furthermore, the 1993 Advisory Committee Notes to <u>Rule 11</u> specifically state that "a litigant's obligations with respect to the contents of [papers filed with the court] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." At oral argument Stull continued to argue that the 1997 complaint had merit.

Accordingly, for the reasons stated above, the court concludes that <u>Rule 11</u> is applicable to this case. The court must now determine whether <u>Rule 11</u> sanctions are warranted.

        *2. Did Stull act in an objectively reasonable manner?*
Before imposing sanctions pursuant to <u>Rule 11</u> the court must decide whether Stull acted in an objectively reasonable manner when he filed and pursued the 1997 complaint. *See Lony,* 935 F.2d at 616 (stating that the "<u>Rule 11</u> test 'is now an objective one of reasonableness' ").

[5][6] <u>Rule 11</u> "imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing. An inquiry is considered reasonable under the circumstances if it provides the party with 'an "objective knowledge or belief at the time of the filing of a challenged paper" that the claim was well-grounded in law and fact.' " *Bensalem,* 38 F.3d at 1314 (citations omitted).

The parties named, and the cause of action asserted, in the 1997 complaint are indisputably the same as in the 1994 complaint. An hour or two of research would have led Stull to conclude that a decision dismissing a case on the ground of statute of limitations is a decision on the merits. Thus, a cursory review of the doctrine of res judicata would have informed Stull that the claims asserted **\*494** in the 1997 complaint could not be relitigated.

Additionally, the court has struggled to understand Stull's <u>§ 1367</u> argument. It is incomprehensible. Basic knowledge of civil procedure, the doctrine of supplemental jurisdiction, and the plain words of the statute should have informed Stull that <u>§ 1367</u> was inapplicable to this matter.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                                    Page 18
11 F.Supp.2d 480
(Cite as: 11 F.Supp.2d 480)

The court notes that this is not the first time that Stull has demonstrated that he fails to understand certain basic concepts fundamental to the legal system.    On March 24, 1998, this court issued an opinion in *Bader,* 95-463-RRM, in which it found that the circumstances warranted the imposition of Rule 11 sanctions on Stull.    Stull had submitted briefs on renewed motions for summary judgment including several previously asserted arguments which the court had conclusively ruled on.    Although the court chose not to impose sanctions, it cautioned Stull to "act more prudently in choosing which battles to continue to pursue in the future," and it warned Stull that "any future 'misuse of the judicial process' will result in appropriate sanctions."

If Stull had conducted "a reasonable inquiry into the applicable law and facts," he would have concluded that the 1997 complaint was not "well-grounded in law and fact."  *Id.* The claims asserted in that complaint clearly were not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). Accordingly, the court finds that Stull did not act in an objectively reasonable manner in choosing to pursue the 1997 complaint.

### 3. Has Stull had notice and an opportunity to be heard?

[7] Before imposing sanctions under Rule 11, the court must also determine whether Stull had notice and an opportunity to be heard.

The Third Circuit recently stated that " 'the fundamental requirements of due process--notice and an opportunity to respond--must be afforded before any sanction is imposed.' " *In re Tutu Wells Contamination Litig.,* 120 F.3d 368, 379 (3d Cir.1997) (quoting *Martin v. Brown,* 63 F.3d 1252, 1261 (3d Cir.1995)).    *See also Rogal v. American Broad. Cos.,* 74 F.3d 40, 44 (3d Cir.1996) (stating that "[t]he imposition of monetary sanctions by a court implicates fundamental notions of due process").    The Third Circuit also stated that the "party against whom sanctions are being considered is entitled to notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." *Tutu Wells,* 120 F.3d at 379.

### a. Has Stull had notice?

Defendants warned Stull on several occasions that they would seek Rule 11 sanctions if he did not voluntarily withdraw the 1997 complaint.    Defendants subsequently served Stull with the motion for sanctions and waited the requisite twenty-one days before filing it with the court.    *See* Fed.R.Civ.P. 11(c)(1)(A). In the motion defendants state the reasons why they believe sanctions are appropriate, and that they seek monetary sanctions.    At the March 25, 1998 oral argument defendants gave Stull copies of affidavits documenting the amount of sanctions sought.    After the hearing, defendants reiterated in a letter their belief that attorney's fees and costs would be an appropriate sanction against Stull.    Additionally, at the oral argument the court explained to Stull why it believed sanctions were appropriate, and that it was prepared to impose sanctions against him.

Accordingly, the court concludes that Stull had sufficient notice from defendants and from the court of "the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." *Tutu Wells,* 120 F.3d at 379.

### b. Has Stull had an opportunity to be heard?

Stull filed the 1997 complaint on June 26, 1997.    In a July 15, 1997 letter, and

11 F.Supp.2d 480                                                        Page 19
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

an August 12, 1997 telephone call defendants actively encouraged Stull to withdraw
the case.   Two months later, on October 17, 1997, defendants moved for Rule 11
sanctions against Stull.   Stull timely filed an answering brief.   On March 25,
1998, the court heard **495 oral argument on defendants' motion for sanctions.

 At the oral argument, the court asked Stull to clarify the reasons why he felt the
1997 complaint has merit.   The court listened to Stull's asserted theories and
specifically questioned Stull about his understanding of § 1367(d).   The court
informed Stull that it was prepared to impose Rule 11 sanctions as it did not see
any basis for filing the 1997 complaint, and it did not understand the theories
advanced by Stull.   However, before imposing sanctions the court gave Stull an
additional opportunity to explain his theories by having another attorney review
the matter.   On April 22, 1998, Neuberger submitted a letter to the court on
Stull's behalf.

 Accordingly, for the reasons stated above the court concludes that Stull had an
opportunity to be heard on the reasons why the court should not sanction him before
oral argument, at oral argument, and after oral argument.

 The court has concluded that it will impose Rule 11 sanctions against Stull.
However, before the court determines what sanctions it will impose under Rule 11,
the court will address defendants' motion for attorney's fees and costs pursuant to
§ 502(g).   See Fed.R.Civ.P. 11 advisory committee's note (1993) (stating that
"[i]n cases brought under statutes providing for fees to be awarded to prevailing
parties, the court should not employ cost-shifting under this rule in a manner that
would be inconsistent with the standards that govern the statutory award of fees").

 C. *Should The Court Award Attorney's Fees And Costs Pursuant to § 502(g)?*

 Defendants filed a motion for attorney's fees and costs pursuant to ERISA §
502(g).   ERISA § 502(g)(1) provides that "[i]n any action under this chapter ...
the court in its discretion may allow a reasonable attorney's fee and costs of
action to either party." 29 U.S.C. § 1132(g)(1).

 [8] An award of attorney's fees and costs under § 502(g) can be assessed against
either a party or an attorney.   See e.g., Monkelis v. Mobay Chem., 827 F.2d 935,
937 (3d Cir.1987) (affirming a district court's award of attorney's fees against
plaintiff).   One court assessed fees pursuant to § 502(g) against both the
attorney and the plaintiff.   See Baker v. Greater Kansas City Laborers Welfare
Fund, 716 F.Supp. 1229, 1231 (W.D.Mo.1989).   The court assessed the majority of
the fees against the attorney, and stated that
 [c]ounsel's responsibility is clear.   He had the responsibility to assess the
 facts in light of the law.   Counsel presumably has been trained to make this
 legal analysis and to reach an emotional, rational conclusion about the merits of
 plaintiff's claims.   After doing so, if there were no reasonable basis for
 believing that plaintiff was unlawfully denied employee welfare benefits, counsel
 should have used his best efforts to convince plaintiff to conclude the case.
 Id. See also Cowden v. Montgomery County Soc. for Cancer Control, 653 F.Supp.
1072, 1078 (S.D.Ohio 1986) (assessing attorney's fees against counsel pursuant to §
502(g)).   Accordingly, the court will evaluate whether to award attorney's fees
and costs against either Loving or Stull, or both.

 An award of attorney's fees and costs under § 502(g) can also be assessed against
either plaintiff or defendant.   The court recognizes that it is unusual to award
attorney's fees and costs to a prevailing defendant.   For example, the Fifth
Circuit has stated that it would not award attorney's fees and costs pursuant to §

11 F.Supp.2d 480                                                    Page 20
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

502(g) to a prevailing defendant because the claim was not "totally without merit"
and because plaintiff acted in good faith.    See _Hogan v. Kraft Foods, 969 F.2d_
_142, 146 (5th Cir.1992)_.    The Eleventh Circuit has made a similar statement,
denying a § 502(g) request for attorney's fees and costs to a prevailing defendant
because the case presented close questions of law and because plaintiff did not act
in bad faith.    See _First Nat'l Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc.,_
_960 F.2d 1546, 1554 (11th Cir.1992)_, _cert. denied_, 506 U.S. 1079, 113 S.Ct. 1045,
122 L.Ed.2d 354 (1993).    However, the Third Circuit has affirmed an award of
attorney's fees pursuant to § 502(g) to prevailing defendants in a case in which
the ERISA claim was "clearly frivolous on the merits."    _Monkelis,_ 827 F.2d at 937.

 **\*496** [9] The Third Circuit has set forth five factors a district court should
consider when deciding whether to award attorney's fees and costs pursuant to §
502(g).    The court must consider
  (1) the offending parties' culpability or bad faith;
  (2) the ability of the offending parties to satisfy an award of attorney's fees;
  (3) the deterrent effect of an award of attorneys' fees against the offending
 parties;
  (4) the benefit conferred on members of the pension plan as a whole;  and
  (5) the relative merits of the parties' position.
  _McPherson v. Employees' Pension Plan of American Re-Insurance Company, Inc.,_ 33
 F.3d 253, 254 (3d Cir.1994) (quoting _Ursic v. Bethlehem Mines,_ 719 F.2d 670, 673
 (3d Cir.1983)).    A district court is required to set forth with specificity its
reasoning and conclusion for each of the five factors.    See _id._

 [10][11] The first factor a court must consider is the "offending parties'
culpability or bad faith."    _Id._  This factor does not require an "ulterior motive or
sinister purpose" as a "losing party may be culpable [without] having acted with an
ulterior motive." _Id._ at 256.    Culpability "is commonly understood to mean conduct
that is 'blameable;  censurable;  ... at fault;  involving the breach of a legal
duty or the commission of a fault.... Such conduct normally involves something more
than simple negligence.... [On the other hand, it] implies that the act or conduct
spoken of is reprehensible or wrong.' "  _Id._ at 256-57 (quoting BLACK'S LAW
DICTIONARY (6th ed.1990)).

 At the March 25, 1998 oral argument, the court specifically addressed Loving and
inquired into the circumstances leading up to the filing of the 1997 complaint.
Loving indicated that he relied on Stull's advice when he chose to file the 1997
complaint.    The court has no reason to doubt this.    Accordingly, the court finds
no basis for believing that Loving acted in bad faith or culpably in pursuing the
1997 complaint.    This factor does not weigh in favor of an award of attorney's
fees and costs against Loving.

 At the March 25, 1998 oral argument the court specifically stated that it did not
believe Stull acted in bad faith.    However, with minimal research, Stull would
have concluded that the 1997 complaint was barred by the doctrine of res judicata
and that § 1367(d) was inapplicable to this matter.    Thus, the court concludes
that although Stull did not have an "ulterior motive or sinister purpose," his
conduct is " 'blameable,' " and " 'reprehensible.' " Accordingly, the first factor
weighs in favor of an award of attorney's fees against Stull.    See _Monkelis,_ 827
F.2d at 936 (concluding that where the "evidence demonstrates that [plaintiff's]
ERISA claim was time barred and substantively without merit," the first factor
weighs in favor of awarding attorney's fees and costs).

 The second factor a court must consider is "the ability of the offending parties
to satisfy an award of attorney's fees." _McPherson,_ 33 F.3d at 254.    The Third

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                      Page 21
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

Circuit has stated that it could not conclude that plaintiff "lacks the ability to satisfy the fee award since [plaintiff] has never argued that he is unable to satisfy" the claim for attorney's fees and costs. _Monkelis, 827 F.2d at 937._ Neither Loving nor Stull have argued that they are unable to satisfy an award of attorney's fees and costs.  However, defendants have not presented any evidence demonstrating that either Loving or Stull could satisfy such an award. Accordingly, the court concludes that this factor neither weighs in favor of, nor against, an award of attorney's fees and costs.

 The third factor a court must consider is "the deterrent effect of an award of attorneys' fees against the offending parties." _McPherson, 33 F.3d at 254._ The court has no reason to believe that Loving will bring additional lawsuits in connection with the administration of his retirement benefits. Consequently, it does not appear that an award of attorney's fees against Loving will "serve the objectives of ERISA" and deter future conduct of this kind by Loving. _Id._ at 258.

 However, the Third Circuit has explained that "the deterrent effect [of an award of attorney's fees and costs] will be beneficial upon those who contemplate speculative and **497** duplicative litigation on thinly based grounds." _Monkelis, 827 F.2d at 937._  The 1997 complaint clearly constitutes "duplicative litigation on thinly based grounds."  The court believes that an award of attorney's fees against Stull will sufficiently impress and impact Stull, and deter him from filing meritless complaints in the future.  Accordingly, the court concludes that this factor weighs in favor of an award of attorney's fees against Stull.

 The fourth factor a court must consider is "the benefit conferred on members of the pension plan as a whole." _McPherson, 33 F.3d at 254_.  This factor "requires consideration of the benefit, if any, that is conferred on others by the court's judgment." _Id._ This factor is irrelevant to this matter as it is directed to the benefit achieved in litigation.  Accordingly, it neither weighs in favor of, nor against, an award of attorney's fees and costs.

 The fifth factor a court must consider is "the relative merits of the parties' position." _Id._ The court has already concluded that the 1997 complaint is meritless.  As noted above, the court does not find that Loving acted in bad faith or culpably in pursuing meritless claims.  Additionally, as noted above, while the court does not find that Stull acted in bad faith, it does find Stull culpable. _See also Baker v. Greater Kansas City Laborers Welfare Fund, 716 F.Supp. 1229, 1231 (W.D.Mo.1989)_ (stating that "counsel, by training and experience, [is] in the best position to understand the problems presented by a frivolous case and to advise plaintiff to not pursue the case or to withdraw").  Therefore, the court concludes that this factor weighs in favor of granting defendants' motion for attorney's fees against Stull, and not against Loving.

 After considering the five factors governing whether the court should award attorney's fees to defendants, the court concludes that it will grant defendants' motion for attorney's fees and costs pursuant to § 502(g).  For the reasons stated above, the court will not impose the attorney's fees and costs against Loving, and it will impose them against Stull.

 D. _What Sanctions And Amount Of Attorney's Fees And Costs Should The Court Award?_

 The court has concluded that it will impose Rule 11 sanctions against Stull, and that it will award defendants attorney's fees and costs pursuant to § 502(g). The court must now determine what sanctions and amount of attorney's fees and costs that it will impose.  Defendants have asked the court to award them the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 22
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

approximately $37,000 they have spent defending the 1997 complaint.

[12] In considering the type of sanctions and amount of attorney's fees to award,
the court should look to the purposes and policies behind Rule 11 and § 502(g).

### 1. *What is the purpose of Rule 11?*
Rule 11(c) states the following:
(2) Nature of Sanction;  Limitations.   A sanction imposed for violation of this
rule shall be limited to what is sufficient to deter repetition of such conduct or
comparable conduct by others similarly situated.   Subject to the limitations in
subparagraphs (A) and (B), the sanction may consist of, or include, directives of
a nonmonetary nature, an order to pay a penalty into court, or, if imposed on
motion and warranted for effective deterrence, an order directing payment to the
movant of some or all of the reasonable attorneys' fees and other expenses
incurred as a direct result of the violation.
(A) Monetary sanctions may not be awarded against a represented party for a
violation of subdivision (b)(2).
(B) Monetary sanctions may not be awarded on the court's initiative unless the
court issues its order to show cause before a voluntary dismissal or settlement of
the claims made by or against the party which is, or show attorneys are, to be
sanctioned.
(3) Order. When imposing sanctions, the court shall describe the conduct
determined to constitute a violation of this rule and explain the basis for the
sanction imposed.
Fed.R.Civ.P. 11(c).    The 1993 Advisory Committee Notes to Rule 11 state that
"[t]he **\*498** court has significant discretion in determining what sanctions, if any,
should be imposed for a violation, subject to the principle that the sanctions
should not be more severe than reasonably necessary to deter repetition of the
conduct."   Accordingly, the clearly stated purpose of Rule 11 sanctions is to
deter future conduct of the type that resulted in the imposition of sanctions.

### 2. *What is the purpose of § 502(g)?*
[13] Section 502(g) is the provision under ERISA that provides for fee-shifting at
the court's discretion.    *See Bell v. United Princeton Properties, Inc.,* 884 F.2d
713, 719 n. 5 (3d Cir.1989) (referring to § 502(g) as a "fee-shifting provision").
The Third Circuit has stated that "the statutory purpose of ERISA [is] to protect
pension benefits." *Ellison v. Shenango Inc. Pension Bd.,* 956 F.2d 1268, 1277 (3d
Cir.1992).    *See also Henley v. Lokey Oldsmobile-Countryside, Inc.,* 817 F.Supp.
942, 944 (M.D.Fla.1993) (stating that "ERISA's essential remedial purpose is to
protect beneficiaries of private pension plans by securing their rights under the
employee benefit plans").   Accordingly, the policy behind awarding attorney's fees
and costs pursuant to § 502(g) is to uphold the general purpose of ERISA by
protecting pension benefits.   Additionally, the Third Circuit has stated that the
five factors a district court must consider when evaluating whether to award
attorney's fees and sanctions under § 502(g) "adequately address ERISA's policy
concerns of remediation and deterrence." *Ellison,* 956 F.2d at 1274.   Accordingly,
an award of attorney's fees pursuant to § 502(g) is also intended to deter conduct
that does not fulfill the purpose of ERISA.

### 3. *What sanction and amount of fees should the court impose that will fulfill the purposes of both Rule 11 and § 502(g)?*
[14][15] Rule 11 sanctions can be imposed in many different forms.   Rule 11
specifically states that a sanction can be either monetary or nonmonetary in
nature.   *See Fed.R.Civ.P. 11(c)(2).*   The 1993 Advisory Committee Notes list some
of the options a court can resort to when imposing sanctions.   These options
include "striking the offending paper;  issuing an admonition, reprimand, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                          Page 23
11 F.Supp.2d 480
(Cite as: 11 F.Supp.2d 480)

censure; requiring participation in seminars or other educational programs;
ordering a fine payable to the court; [and] referring the matter to disciplinary
authorities." Rule 11(c)(1)(A) also states that "[i]f warranted, the court may
award to the party prevailing on the motion the reasonable expenses and attorney's
fees incurred in presenting or opposing the motion." *See Tutu Wells,* 120 F.3d at
388 (noting that "[t]he time, effort, and resources expended in bringing
sanctionable conduct to light would have been unnecessary had the sanctionable
conduct never occurred," and stating that these "costs are as much a harm to a
party in the litigation as is the delay in the litigation or the substantive
prejudice caused by the conduct").

  The court does not believe that admonishing Stull or requiring him to attend
educational programs will sufficiently impress upon him the egregiousness of his
conduct.   Similarly, the court does not believe that requiring Stull to pay a fine
to the court will sufficiently impress upon him the extent of harm he caused
defendants.   Thus, the court believes that requiring Stull to reimburse defendants
for the harm caused is the only sanction that will deter him from comparable future
conduct.   Accordingly, the Rule 11 sanctions that the court will impose on Stull
will be reasonable attorneys' fees and costs.   The court will rely on § 502(g) to
determine the amount of attorney's fees and costs it will award defendants.

  When determining the amount of reasonable attorney's fees to award under §
502(g), the Third Circuit has stated that a "twin inquiry into reasonableness" is
required.   *Ursic v. Bethlehem Mines,* 719 F.2d 670, 676 (3d Cir.1983).   The court
must look into both a "reasonable hourly rate and a determination of whether it was
reasonable to expend the number of hours in a particular case." *Id.*

  The affidavits and billing records produced by defendants' counsel provide a
detailed account of the attorneys that worked on this case, their billing rates,
the nature of the work, and the amount of time spent on that work.   The attorneys
that worked on this *499 matter spent numerous hours attempting to persuade Stull
to voluntarily withdraw the complaint, responding to the complaint, researching res
judicata, Rule 11, and § 502(g), and preparing motions and briefs on those topics.
For example, attorneys at Proskauer, Rose spent nearly fifty hours, and incurred
approximately $10,000 in attorney's fees, researching res judicata and preparing
defendants' motion for summary judgment.   They also spent nearly twenty hours, and
incurred approximately $7,000 in attorney's fees, researching Rule 11 and preparing
defendants' motion for sanctions.

  Stull's conduct has imposed a significant financial burden on defendants by
forcing defendants to respond to a meritless lawsuit.   Stull should have
recognized that the 1997 complaint was meritless.   Stull's failure to recognize
this prompted defendants to spend time preparing an answer to the complaint, and
researching and preparing motions for summary judgment, for attorney's fees and
costs, and for sanctions.   Nonetheless, the court finds that $37,000 is an
extraordinarily large sum of money to fine Stull, and that a lesser fine will
equally serve the purposes of both Rule 11 and § 502(g).

  The 1993 Advisory Committee Notes state that "partial reimbursement of fees may
constitute a sufficient deterrent with respect to violations by persons having
modest financial resources."   Additionally, the Third Circuit has cautioned that
an award of attorney's fees and costs under § 502(g) should not "amount[ ] to an
excessively punitive sanction." *Ursic,* 719 F.2d at 677.   *See also id.* at 673 &
677 (stating that where "the award [of attorney's fees and costs] is statutory, the
assessment of a counsel fee is to some extent a penalty for violating the law," but
also cautioning that a fee award is not "the appropriate vehicle for punitive

                © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.Supp.2d 480                                                    Page 24
11 F.Supp.2d 480
**(Cite as: 11 F.Supp.2d 480)**

sanctions").

  However, in _Bell v. United Princeton Properties, Inc., 884 F.2d at 719,_ the Third
Circuit held that a district court "may not sua sponte reduce a § 502(g) request
for attorneys' fees."    The Third Circuit stated that "sua sponte reduction of a
fee request deprives the fee applicant of her entitlement [to] 'offer evidence in
support of the reasonableness of her request.' " _Id._ (quoting _Cunningham v. City of
McKeesport, 753 F.2d 262, 267 (3d Cir.1985)_).    Additionally, "because statutory
fee litigation is adversarial litigation, there is no need to allow the district
court to reduce a fee award of its own initiative." _Id._ Furthermore, the _Bell_
court stated that a "district court retains a great deal of discretion in deciding
what a reasonable fee award is, so long as any reduction is based on objections
actually raised by the adverse party." _Id._ at 721.

  The reasonableness of the amount of attorney's fees and costs requested by
defendants has not been an issue in this litigation.    Neither party has discussed
the Third Circuit opinion in _Bell._ Furthermore, despite the opportunity to discuss
the reasonableness of the fees requested, neither party raised it at the March 25,
1998 oral argument.    Additionally, following the oral argument, Stull did not
request an evidentiary hearing on the amount of fees requested.

  The court concludes that assessing a $10,000 sanction and award of attorney's fees
and costs against Stull will serve the purposes of Rule 11 and § 502(g).    The
court recognizes that this sanction and award will not compensate defendants for
all of the harm caused by Stull's conduct.    However, $10,000 is a substantial sum
to be paid, in particular by a sole practitioner like Stull.    Furthermore, the
court expects that this sanction and award are sufficiently severe to uphold the
purposes of Rule 11 and § 502(g) by punishing Stull and deterring him from
pursuing future frivolous battles.    To the extent that either party seeks review
of the award of attorney's fees and costs pursuant to § 502(g), either party can
file a motion for reargument within ten days of the entry of an order granting
defendants' motion for attorney's fees and costs.

  III. _CONCLUSION_

  For the reasons stated above, the court will grant defendants' motion for summary
judgment and deny plaintiff's motion to amend.    The court will also grant
defendants' motion for sanctions pursuant to Rule 11 and defendants' motion for
attorney's fees and costs pursuant to § 502(g).    The court will assess a $10,000
sanction and award of *500 attorney's fees and costs against Stull, to be paid to
the party or parties designated by defendants.

  The court will enter an order in accordance with this opinion.

  11 F.Supp.2d 480

            **Motions, Pleadings and Filings  (Back to top)**

• 1:97CV00449  (Docket)
(Jul. 31, 1997)

END OF DOCUMENT

          © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

330 F.Supp.2d 548                                                    Page 1
330 F.Supp.2d 548
**(Cite as: 330 F.Supp.2d 548)**


**Motions, Pleadings and Filings**


United States District Court,
W.D. Pennsylvania.
Sandra PATERSON, Plaintiff,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant.
**No. CIV.A.03-95J.**

July 21, 2004.

**Background:** Employer brought action against her employer under Employee Retirement
Income Security Act (**ERISA**), seeking reinstatement of her disability **benefits**.
Employer moved for summary judgment.

  **Holding:**  The District Court, Gibson, J., held that **statute** of **limitations**
applicable to employee's **claim** commenced to run when **benefit** plan issued final
decision disallowing **benefits** after employee **exhausted** her **administrative** remedies.
 Motion denied.


West Headnotes


[1] **Federal Courts** ☞424
170Bk424 Most Cited Cases
When a federal cause of action does not contain a **statute** of **limitations**, the
district court may absorb the local time **limitation** most analogous to the case at
hand.

[2] **Limitation of Actions** ☞95(14)
241k95(14) Most Cited Cases
Pennsylvania's four-year **statute** of **limitations** applicable to employee's **claim**
against her employer under **ERISA** seeking reinstatement of her disability **benefits**
commenced to run when **benefit** plan issued final decision disallowing **benefits** after
employee **exhausted** her **administrative** remedies, not when employee received initial
notice that her **benefits** would be discontinued because of a lack of evidence of her
continued disability.  Employee Retirement Income Security Act of 1974, § 502, 29
U.S.C.A. § 1132; 42 Pa.C.S.A. § 5525.
*548 Gregory G. Paul, Peirce Law Offices, Pittsburgh, PA, for Plaintiff.

William James Rogers, Thomson, Rhodes & Cowie, Pittsburgh, PA, for Defendant.

*MEMORANDUM OPINION AND ORDER OF COURT*

GIBSON, District Judge.

OVERVIEW
 This case is before the Court on a Motion for Summary Judgment filed by the
Defendant, Metropolitan Life Insurance Company.  The original complaint arose from
a claim for reinstatement of benefits under the Employee Retirement Income Security
Act (ERISA).  For the purposes of this motion in accordance with Local Rule of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

330 F.Supp.2d 548                                                        Page 2
330 F.Supp.2d 548
**(Cite as: 330 F.Supp.2d 548)**

Court 56.1 E, the Court will accept as true all facts not in material dispute and
will make any necessary inferences in favor of the nonmoving party.  This Court has
jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a) and 29 U.S.C. §
1132(e)(1).  For the reasons set forth within, the Defendant's Motion for Summary
Judgment is denied.

### BACKGROUND

 Plaintiff, Sandra Paterson, was employed by Metropolitan Life Insurance Company
from 1989 through 1998 as a general clerk.  Statement of Material Fact not in
Dispute (hereinafter "Statement") # 1. As a benefit of her employment, **\*549**
Plaintiff became a participant in MetLife, an employee benefit that provided, *inter
alia,* monthly benefits in the event of disability.  Statement # 2. On or about
January 29, 1998, Plaintiff became disabled due to multiple medical conditions and
began to receive benefits under the plan.  Statement # 3. On August 7, 1998,
MetLife notified Plaintiff that it was discontinuing her disability benefits, on
the ground that there was no documentation to support the existence of a totally
disabling condition as defined in the plan. Statement # 4. Plaintiff appealed the
decision to deny benefits, which was upheld by letter dated May 4, 1999.  Statement
# 5. Plaintiff filed the present action on May 1, 2003.  Statement # 6. [FN1]

> FN1. These facts do not constitute the complete statement submitted by the
> movant but rather encompass what the respondent has essentially admitted to
> in part as the parties disagree as to whether the Complaint was timely filed.

### ANALYSIS

 Summary judgment may be granted if there is no genuine issue of material fact and
the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.  For
the purposes of this motion, there are no genuine issues of material fact.  The
only issue to be decided is a matter of law: Whether the **statute** of **limitations**
clock began to run at the time of the initial denial of **benefits** as the Defendant
posits or after the final determination?

 [1][2] **ERISA** does not contain an explicit **statute** of **limitations** for non-fiduciary
**claims** such as this one.  29 U.S.C. § 1132.  It has been accepted that when a
federal cause of action does not contain a **statute** of **limitations**, the Court may
'absorb' the local time **limitation** most analogous to the case at hand.  *Gluck v.
Unisys Corporation,* 960 F.2d 1168, 1179 (3rd Cir.1992)(quoting *Lampf, Pleva,
Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 355, 111 S.Ct. 2773, 2778,
115 L.Ed.2d 321 (1991)* (superceded by **statute** on other grounds)).  The Circuit
pointed out that, "[D]iffering factual situations require consideration of varying
periods, and the controlling **limitations** period ... should not be 'rotely'
applied." *Henglein v. Colt Industries Operating Corp.* 260 F.3d 201, 214 (3rd
Cir.2001)(quoting *Gluck v. Unisys Corporation,* 960 F.2d 1168, 1179-82 (3rd
Cir.1992)).  **ERISA claims** which seek to recover **benefits** that were bargained for
most closely resemble contract actions in Pennsylvania.  *Gluck v. Unisys
Corporation,* 960 F.2d 1168, 1181 (3rd Cir.1992).  Both parties agree that four
years is the proper length of the **limitations** period in this case.  *Id.See also,*
Defendant's Brief and Plaintiff's Brief; 42 Pa.C.S.A. § 5525.  There is however,
scant precedential evidence as to when the clock begins to run on this four year
**statute** of **limitations** period.

 The Third Circuit has established that the **statute** of **limitations** is,  "measured
from the time when a claimant first knows that the **benefit** has been infringed or
removed." *Gluck* at 1181.  *Gluck* concerned the loss of **benefits** under an employee
retirement plan that was amended and then later merged with another plan after the
merger of the two corporations who administered the respective plans.  *Gluck* at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

330 F.Supp.2d 548                                                    Page 3
330 F.Supp.2d 548
**(Cite as: 330 F.Supp.2d 548)**

1172-1175.  The *Gluck* court concluded that the Pennsylvania four year statute of
limitations applied to actions "to recover benefits that were bargained for but
have not yet become payable...." *Gluck* at 1181.

 In the case sub judice, the Defendant argues that the Plaintiff knew that her
benefit was infringed or removed in August of 1998, and that the notice sent to her
at that time amounted to an outright repudiation of her benefits.  The Court
disagrees.

 **\*550** On August 7, 1998, the Plaintiff received notice that her benefits would be
discontinued because of a lack of evidence of her continued disability.  In the
months that followed, the Plaintiff was given the opportunity to submit medical
evidence in support of her claim.  Statement of Material Facts, Exhibit A. Because
she submitted records and doctors' testimony, it can be inferred reasonably that
the Plaintiff did not know that her benefits would be removed permanently.

 The August 1998 notice was not an outright repudiation.  That term implies a final
decision without further review.  Instead, MetLife issued a determination on
December 10, 1998 to disallow benefits, instructed the Plaintiff to submit further
evidence in March, 1999 and issued a final determination in May of 1999.  *Id.* at p.
2. Therefore, the Court finds that the statute of limitations period did not begin
until May of 1999 when the Defendant issued its final decision which stated that it
"constitutes completion of the full and fair review required by your Plan." *Id.* at
p. 2.

 The District Court for the Eastern District of Pennsylvania has reached the same
conclusion.  In the <u>matter of *Thomas v. Kemper National Insurance Companies,* 984
F.Supp. 885 (E.D.Pa.1997)</u>, Judge Joyner concluded that the failure of the plaintiff
to exhaust administrative remedies prevented the plaintiff from prosecuting an
ERISA action.  *Thomas* at 891.  Judge Joyner wrote:
 ERISA does not, by its terms, mandate exhaustion of these required administrative
 remedies prior to instituting suits for denial of benefits. However, in an effort
 to promote the goals intended by Congress when the Act was drafted, the exhaustion
 doctrine is generally applied to such cases before plaintiffs are allowed to sue
 under ERISA.  <u>*Snow v. Borden, Inc.,* 802 F.Supp. 550, 557 (D.Me.1992)</u>.  *See Also:*
 <u>*Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3rd Cir.1990)</u>; <u>*Wolf v. National Shopmen
 Pension Fund,* 728 F.2d 182, 184 (3rd Cir.1984)</u>; <u>*Kimble v. International
 Brotherhood of Teamsters,* 826 F.Supp. 945, 947 (E.D.Pa.1993)</u>.  Thus, unless the
 claim alleges a statutory violation rather than a mere denial of benefits under an
 ERISA plan or it can be shown that exhaustion of administrative remedies would
 prove futile or the remedy inadequate, exhaustion of remedies is a pre-requisite
 to maintaining an action for denial of benefits under ERISA.  <u>*Unger v. U.S. West,
 Inc.,* 889 F.Supp. 419, 423 (D.Colo.1995)</u>, citing <u>*Bird v. Shearson Lehman/American
 Express, Inc.,* 926 F.2d 116 (2nd Cir.1991)</u>; <u>*Held v. Manufacturers Hanover Leasing
 Corporation,* 912 F.2d 1197 (10th Cir.1990)</u>, <u>*Amaro v. Continental Can Company,* 724
 F.2d 747 (9th Cir.1984)</u>, <u>*Kross v. Western Electric Company, Inc.,* 701 F.2d 1238
 (7th Cir.1983)</u>;  <u>*Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3rd Cir.1990)</u>;
 <u>*Bryn Mawr Hospital v. Coatesville Electric Supply Co.,* 776 F.Supp. 181, 187
 (E.D.Pa.1991)</u>.
 <u>*Thomas v. Kemper National Insurance Companies,* 984 F.Supp. 885, 890
 (E.D.Pa.1997)</u>.  [FN2]  The plaintiff was denied long term **\*551** disability benefits
 after having received them for approximately ten and one half months, while only
 being certified by her physicians as being totally disabled for three and one half
 months.  *Thomas* at 890.  After notification of the termination of benefits was sent
 to the plaintiff's attorney, the plaintiff took no action to appeal the decision or
 direct her attorney to file an appeal in writing.  *Thomas* at 890-891.  Judge Joyner

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

330 F.Supp.2d 548                                                              Page 4
330 F.Supp.2d 548
**(Cite as: 330 F.Supp.2d 548)**

concluded that the plaintiff's claim should be denied for failure to exhaust administrative remedies. *Thomas* at 891.

> FN2. In the case before this Court the Plaintiff originally filed a three count complaint against the Defendants, but Counts II and III were dismissed upon consent of Plaintiff's counsel. Count II alleged breach of fiduciary duty but appeared to be a re-statement of Count I's **claim** for **benefits;** Count II alleged failure to provide information under 29 U.S.C. § 1132 and for penalties thereunder. Since these counts are no longer part of the case, the Court is only addressing the need to pursue **administrative** remedies with regard to a **claim** for **benefits** under 29 U.S.C. § 1132. However, even if a **claim** existed in the case *sub judice* that was based upon a statutory violation instead of a **claim** for **benefits,** the Court would still conclude that the time **limitations** for the **claim** for **benefits** would not begin until **administrative** remedies had been **exhausted** and the separate **claims** would have separate **statutes** of **limitations.**

In the case *sub judice,* if the Plaintiff had filed this action based upon the August 1998 notice from Defendant, the Defendant could have properly raised the issue that Plaintiff had not **exhausted** her **administrative** remedies pursuant to the reasoning set forth in *Thomas* and therefore Plaintiff's **ERISA claim** should be dismissed.

The requirement that the **statute** of **limitations** period does not begin until a final determination is made by the employer also carries with it a measure of fairness to the parties. By **tolling** the **limitation** period until after the final determination, both parties are encouraged to move with reasonable diligence to reach a conclusion. The Plaintiff will have to act within a time period that can be instituted within the Plan's **administrative** process. Meanwhile, the Defendant does not gain an advantage by delaying the appeals process since that time would not count toward the **statute** of **limitations** period.

Therefore, the Plaintiff filed her complaint before the **statute** of **limitations** period had expired, and the Defendant's motion for summary judgment is denied.

**AND NOW,** this 21st day of July, 2004, upon consideration of Defendant's Motion for Summary Judgment, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment is DENIED.

330 F.Supp.2d 548

**Motions, Pleadings and Filings (Back to top)**

• 3:03CV00095 (Docket)
(May. 01, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.