**John Malandruccolo**

638 Howell School Road
Kirkwood, DE 19701 -

Phone: 302-836-5724
Fax:    302-836-9313

Mofaye313@aol.com

April 25, 2004

GEM Group
Brandywine Corporation Center
650 Naamans Road
Suite 303
Claymont, DE 19703

To The Members of the Committee for Carpenters Local 626,

On July 23, 2003 I sent a letter to you asking that you start my pension from the day I was disabled. My disability date was Dec 17, 2002. Later I was informed that the committee turned my request down. About the same time another member of Carpenters Local 626 had the same problem and made the same request. He was giving his back pension. I understand that he had to sign a paper saying that he would keep it confidential. It is also my understanding that Joe Durham may have signed some papers to that affect. I am at this time asking you to review my request again. I feel that I am being discriminated against. I'm only asking that you be fair. I have called Joe Durham five times to discuss this matter. I have never received a return call. At that time I did not receive any money from Workers Compensation. I am still dealing with Workers Compensation through my lawyer because I have a third operation coming up in May. My lawyer has suggested that before taking legal action, I write to the Committee and ask them to review my case one more time. Please advise me in writing of your decision.

Sincerely,

Cc: Kimmel, Carter, Roman, & Peltz

Ex 14
Mal-4

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 78

# PENSION AND ANNUITY PLAN

Fund Office: GEMGroup, Administrator, Brandywine Corporate Center, 650 Naamans Road, Suite 303, Claymont, DE 19703
Phone: (302) 798-6801 /- (800) 223-7405 / Fax: (302) 798-6929

July 20, 2004

Mr. John Malandruccolo, Jr.
638 Howell School Road
Bear, DE 19701

Dear Mr. Malandruccolo:

At the meeting held on July 13, 2004, the Board of Trustees of the Carpenters Local 626 Pension and Annuity Fund ("the Plan") reviewed your second appeal letter requesting a disability pension retroactive effective date. Following careful review, the Trustees have resolved not to reopen your appeal upholding the original denial of your appeal that was determined at the January 13, 2004 Trustee meeting.

Your existing monthly disability pension benefit from the Carpenters Local 626 Pension & Annuity Plan was approved by the Trustees effective July 1, 2003, the first of the month following receipt of your pension benefit application at the Fund Office. The Social Security Administration approved a Social Security Disability Award to you with a date of disability of December 17, 2002 and a disability benefit effective date of June 2003.

As you were previously informed, the pension benefit effective date cannot be earlier than the first day of the month following the Fund Office receipt of the participant's application for benefits. The Plan provides under ticle 5, Payment of Benefits, Section 5.01 General Conditions that, "Benefits will only be paid to Vested Participants and their Spouses and Beneficiaries. **Payment will not otherwise be made until a complete application is filed** or before Retirement, separation from service, death, Disability or termination of the Plan unless required by law . . ." Enclosed is a copy of page 14 from the Pension Plan providing this language for your review. Since your application for benefits was received at the Fund Office on June 18, 2003, your disability pension effective date under the Plan is July 1, 2003, regardless of the effective date of your Social Security Disability Award or the commencement date of your disability. Your original appeal was denied in accordance with Plan provisions.

In your second appeal letter dated April 25, 2004, you state that, "About the same time, another member of Carpenters Local 626 had the same problem and made the same request. He was given his back pension." Upon review of the other case to which you make reference, the Trustees have determined that there are significant differences between your circumstances and the other case. None of the information that you have presented to date supports altering the Trustees' decision on your original appeal. This reconfirms a final determination of the Plan on your original appeal that you are not entitled to an earlier disability pension effective date. All appeals available under the Plan have been exhausted.

Sincerely,

Scott A. Ernsberger
Fund Manager/GEMGroup

Enclosure
Cc: Jane't Garnett, Lorna Lang, Pam Ellis

Ex 14
Mal-5

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 79

# CARPENTERS LOCAL 626
# PENSION AND ANNUITY PLAN



### SUMMARY PLAN DESCRIPTION
### ACTIVE EMPLOYEES

**2001 Version**

**The Fund Office must be notified in writing if:**

- **You designate or change your beneficiary. You must use the Plan form from the Fund office and have you spouse's signed consent on the form to designate anyone other than your spouse as your beneficiary.**

- **You get married or divorced. You must submit a marriage certificate or license for a marriage and a divorce decree to document a divorce. The Fund Office must be notified of any Qualified Domestic Relations Order.**

- **Your spouse dies. You must submit a death certificate.**

- **You change your address.**

**GEMGroup, Inc.**
**650 Naamans Road - Suite 303**
**Claymont, DE 19703**
**(302) 798-6801**
**(800) 223-7405**



/5

**This booklet only applies to active working Local 626 Carpenters on or after May 1, 1993 and certain employees who return to Local 626 work for at least 800 hours in a Plan Year (May 1-April 30) beginning after April 30, 1993. The benefits for others are different and are summarized in a different booklet.**

*2001*

*54556-3*

## TABLE OF CONTENTS

ELIGIBILITY .................................................................................................... 1

    What is this plan? ......................................................................... 1
    Who is an "Active Participant" who is eligible for the benefits in this booklet? ........... 1
    How do I become eligible to participate in the plan? ......................................... 2
    What are the length of service (vesting) requirements to receive benefits? ............... 2
    How do I count hours for eligibility? ......................................................... 3
    What happens to my work credits if I stop working in the Local 626 jurisdiction? ........ 4
    Can I get my work credits back? ............................................................. 5

BENEFIT CALCULATIONS ............................................................................... 5

    What do I get in benefits? ................................................................... 5
    How much do I get for past service before 1965? .......................................... 6
    How much do I get for service from 1965 to 1974? ....................................... 6
    What about benefits for work from 1974 to 1996? ........................................ 6
    What about benefits after April 30, 1996? ................................................. 7
    How does the Severance (or "Annuity") Account work? .................................. 8
    Is there a minimum benefit under the prior formula? ...................................... 9

PAYMENT OF BENEFITS .............................................................................. 10

    When can I retire and get my normal retirement benefit? ................................. 10
    Can I get benefits before normal retirement age? ......................................... 10
    How do I calculate "Benefit Years" for early retirement eligibility? ...................... 10
    What is Special Early Retirement? ........................................................ 10
    What about regular early retirement? ..................................................... 11
    What if I am disabled? .................................................................... 12
    What happens with my severance (annuity) account? .................................... 12
    Can I get my annuity money in a lump sum? .............................................. 13
    What are the choices on payment of regular monthly pension benefits for an
    unmarried participant? .................................................................... 14
    What are the choices on payment of regular monthly pension benefits for a married
    participant? ................................................................................ 15
    Can my benefits be lost? .................................................................. 15
    What happens if I go back to work? ...................................................... 15

SPOUSE AND SURVIVOR BENEFITS ............................................................... 16

    What are my spouse's rights? ............................................................. 16
    How does a surviving spouse benefit affect my pension? ................................ 16
    Can my spouse waive her rights? ........................................................ 18
    What if I get divorced? .................................................................. 18
    Is there a surviving spouse benefit before retirement? ................................... 18
    Are there death benefits for anyone other than a surviving spouse? ..................... 20
    What if I make my spouse my beneficiary? .............................................. 21

BENEFIT EXAMPLES .................................................................................. 21

    How does this all work for an unmarried participant at normal retirement age? ......... 21
    How does this work for a married participant at normal retirement age? .................. 22

*2001*                                                                              *54556.3*

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A - 81

How does this work for special early retirement? ........................................... 23
How does regular early retirement work? ...................................................... 24
How does this work if I die before retirement? ............................................... 25

## CLAIMS AND ADMINISTRATION ....................................................... 26

What do I have to do to claim my benefits? .................................................... 26
Who pays for this Plan and how? .................................................................. 26
Who runs this Plan? ...................................................................................... 27
Can this Plan be changed or terminated? ...................................................... 27
How can I get more information on the Plan? ................................................. 28
What rights do I have under federal law? ...................................................... 29

## PLAN IDENTIFICATION INFORMATION ......................................... 31

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 82

## PAYMENT OF BENEFITS

### When can I retire and get my normal retirement benefit?

Your full unreduced earned monthly benefit can be paid after you vest and reach age 65. Your benefit will be paid after you stop carpentry work in Delaware and Maryland and surrounding metropolitan areas and file a benefit application. The Plan will begin payments to you after you reach age 70½ even if you do not apply and continue working.

### Can I get benefits before normal retirement age?

You can get your full earned monthly benefit before age 65 by qualifying for Special Early Retirement or if you become disabled. You may also receive reduced early retirement benefits. The availability of these options depends on the number of "Benefit Years" you earn and other conditions.

### How do I calculate "Benefit Years" for early retirement eligibility?

Your right to take early retirement (either as a reduced benefit, an unreduced benefit or in the special early form) and disability retirement depends on your years of benefit credit. The rules on this credit are different from the rules used on vesting credit so your "Vesting Years" and "Benefit Years" can be different.

A Benefit Year is credited at one (1) year for each Plan Year (May 1 - April 30) with 800 or more contributory hours, a half year for each Plan Year with 400 to 799 contributory hours and no credit below 400 contributory hours. You cannot get more than one Benefit Year in a Plan Year.

Your "Benefit Years" for retirement eligibility are based <u>solely</u> on the following.

- <u>Contributory Hours.</u> Hours of work with Local 626 employers for which contributions to the Local 626 Pension Plan are required, including Delinquent Hours credited for participation and vesting.

- <u>Reciprocal Hours.</u> Paid reciprocal hours

- <u>Military Hours.</u> Military service as provided by federal law.

These categories are described in greater detail in the section on Eligibility.

There is no credit toward a Benefit Year for non-contributory work or leave other than military service. A reciprocal or overtime contribution over or under the standard pension rate will give you a proportionate hours credit for work on or after May 1, 1999 as explained in the section on calculating benefits.

### What is Special Early Retirement?

*2001*                                                                                          *54556-3*

Special early retirement gives you your earned monthly benefit and a supplement until the month you turn 65. The supplement equals your past service benefit at $20 per year of service (for work before 1965) plus 4 cents per hour for hours after 1965 until the month you turn 62 and then half of that amount until the month you reach age 65. (The supplement is not included as part of a survivor annuity or death benefit.) **The special early retirement benefit stops if you return to construction work and cannot be reinstated.**

You can take special early retirement if you are an active participant when you retire from Local 626 Plan work after age 60 with 15 or more Benefit Years. You are an "active participant" at the time of retirement for this purpose if you:

- Worked 400 or more hours in contributory Local 626 work in the previous Plan Year (May 1-April 30).

- Worked 250 or more hours in contributory Local 626 work in the two prior Plan Years (May 1 - April 30), or

- Were disabled and unable to work in Local 626 work in the last two (2) Plan Years by reason of disability.

You can also take Special Early Retirement if you leave contributory Local 626 Pension Plan work after age 50 and at least 25 Benefit Years. You must wait until age 60 for payment but do not have to be an "active participant" when you retire under this rule.

### What about regular early retirement?

You can retire early after you turn 55 with credit for 10 Benefit Years even if you are not actively at work under the Local 626 Plan. If you take early retirement, your normal monthly benefit will be reduced unless you satisfy the following rules.

- You ceased to be an active participant after May 1, 1997 and after turning 50, and

- You have credit for at least 25 Benefit Years.

If you take early retirement, you cannot take Special Early Retirement benefits later. Unlike Special Early Retirement, this option can resume if go back to work and retire again.

The early retirement reduction is ½% for each month between the date your pension starts and your 62d birthday if you are an active participant at retirement. For other vested participants, the reduction applies to each month between the date your pension starts and your 65th birthday.

You are an active participant for this purpose if you satisfy any of the active participant tests for a Special Early Retirement benefit. You will also be treated as active for the early retirement reduction if you did not get enough hours due to a lack of work if you were available for and actively seeking Local 626 work before your retirement.

*2001*                                                                    54556-3

The percentage reductions at the more common retirement ages are as follows for inactive and active participants at retirement:

| Retirement Age | Inactive Percentage Reduction | Active Percentage Reduction |
|---|---|---|
| 62 | 18% | 0% |
| 60 | 30% | 12% |
| 55 | 60% | 42% |

**What if I am disabled?**

You can retire early after a disability. If you have more than ten (10) Benefit Years of credit (800 or more contributory hours for a Plan Year), the disability need only prevent you from performing the principal functions of a carpenter. If you have less than ten (10) years of benefit credit, you must be totally disabled from all work under the rules for Social Security disability benefits.

Disability pension payments cannot be paid while you are receiving sickness and accident benefits from the Local 626 Welfare Plan. The monthly benefit is equal to the greater of the participant's earned monthly pension or $100. A supplement of $75 is payable each month from the date the disability pension starts until Medicare begins.

There is a cap of sixty (60) monthly disability payments in the absence of a Social Security disability benefit award. If you take a disability pension, you cannot take Special Early Retirement later unless you recover and return to regular work.

The benefit for a participant with an award of Social Security disability benefits is payable while you are disabled. If you remain disabled until normal retirement age, you will be treated as taking normal retirement at that time. A disability pension offers the same payment forms as other pensions so that your spouse or beneficiary can be protected if you die while disabled. Your disability pension payments thus reduce the 66-month guarantee of payments.

**What happens with my severance (annuity) account?**

You can take your annuity account on retirement or after an absence from construction work for two consecutive Plan Years. Your severance (or "annuity") account balance can be paid as an additional monthly benefit or in a lump sum. It is separate and different from the Carpenters Local 626 Retirement Savings Plan.

You and your spouse, if any, have several options on the annuity account. The basic form for a single Participant is a "straight life annuity" which pays monthly benefits during your life. The basic form for a married Participant is the joint and 50% survivor annuity. The annuity account will be paid in the basic form unless both you and , if you are married, your spouse agree on a different form. You (and your spouse) may also choose a lump sum payment for the Annuity Account.

2001

54556-3

**What are the choices on payment of regular monthly pension benefits for a married participant?**

If you are married, the normal form of payment for your regular monthly benefits (including any added monthly benefit from your severance benefit or Annuity account) is a benefit for your life and a reduced benefit of half of the amount paid during your life for the life of your spouse. Benefits will be paid in this way unless you (and your spouse) tell the Plan to pay benefits in a different way. You can also choose either of the benefit options for an unmarried Participant - a life pension with a guarantee of 66 payments or monthly benefits during your life only -- with the consent of your spouse.

If you retire on or after May 1, 2000, you can select a higher surviving spouse benefit. The Plan allows you to continue 75% (3/4) or all (100%) of a reduced monthly benefit to your surviving spouse. There is an additional adjustment to benefits during your life for the higher surviving spouse benefit or in the event that your spouse is 15 or more years younger than you. (See page 17)

**Can my benefits be lost?**

You can lose your pension benefits if you do not vest. You must work at least 800 hours in a year and become a Plan participant to vest in your "Annuity Account." You must earn 5 years of Vesting Service (or before May 1, 1999, 10 years) to vest in regular benefits. The Plan is not a guarantee of employment and you may not vest if work is not available. Once you vest, benefits will be paid (at the level in effect at the time of your last Local 626 Pension Plan work) regardless of future work.

The tax law also restricts the amount of benefits which can be paid by the Plan each year. You generally cannot be paid more than the average of your W-2 earnings from Local 626 Pension Plan employers in the highest 3 of the 10 calendar years before you leave Local 626 work, by retirement or otherwise. (This limit increases with inflation after you leave the Plan. There is also a separate dollar maximum which is currently at $130,000 per year and is adjusted downward if you receive benefits before you are eligible for full Social Security benefits ). The Annuity Account and supplement paid on Special Early Retirement are converted to an equivalent lifetime benefit for this test.

**What happens if I go back to work?**

After retirement, your benefits can be suspended if you return to work in construction -- union or non-union. **If you take early retirement, your benefits can be suspended for any work in construction. A Special Early Retirement Benefit <u>cannot</u> be reinstated if you return to construction work.** After normal retirement age, benefits are only suspended if you work as a carpenter in Delaware and Maryland and surrounding metropolitan areas for forty-eight (48) or more hours in a month. You must notify the Plan when you return to work and again when you stop work.

The Plan can recover overpayments while you were working from future payments if you do not report your work. You can ask the Plan whether you will lose benefits by working before you begin work. Your benefit will not be lost or suspended by reason of

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 86

work before the Plan issues a ruling. If the Plan learns of unreported work, it can presume that you worked 48 hours and cut off or reduce benefits and recover prior overpayments with no grace period.

At times of labor shortage, the Trustees may temporarily allow retired carpenters to return to Local 626 Plan work without suffering a suspension of benefits. Usually, these temporary rules will not apply to retirees receiving a Special Early Retirement Benefit.

If you retire and return to contributory Local 626 work before your normal retirement age, your benefits will only be recalculated for additional service at normal retirement age (generally, age 65). The benefit based on additional service after retirement will be treated as a separate payment with a new starting date for the 66-month guarantee and election of form of payment.

If you retire and return to contributory Local 626 work after normal retirement age, the Trustees expect to allocate all contributions for work by retirees over normal retirement age to the Retirement Savings Plan. The Plan will distribute contributions for retirees out annually to working retirees. The value of these contributions and any amounts paid (which could have been suspended) will offset and reduce any additional benefits you earn. The "up-front" payment of benefits and contributions generally will mean that your monthly pension check will not increase if you work after normal retirement age. If you do work enough to increase your monthly pension check, it will be recalculated and be paid in the same form and on the same terms as the prior benefit beginning no later than April 1 of the year after work is performed.

## SPOUSE AND SURVIVOR BENEFITS

### What are my spouse's rights?

Payments in monthly installments can begin anytime after an employee reaches age 55, completes 10 Benefit Years (see page 11) and stops working in construction or upon disability or becomes disabled. The normal form of pension payments for married participants in the Plan is a monthly payment for your life and a surviving spouse benefit equal to half of the amount paid during the life of the participant. Your spouse must consent to any form of payment which provides a lower surviving spouse benefit. This consent is required for a lump sum payment of your "Annuity Account" or payment of regular pension benefits in the 66-month guarantee or straight life form. You do not need spousal consent for the higher 75% and 100% surviving spouse benefits.

### How does a surviving spouse benefit affect my pension?

Your benefit may be reduced to reflect part of the cost for a surviving spouse benefit based on the ages of you and your spouse. (This is separate from any early retirement reduction.) If your spouse dies before you, your benefit for subsequent months will "pop-up" by the amount of the reduction for the surviving spouse benefit.
The conversion factor varies with the date of retirement and the ages of the participant and spouse.

*2001*                                                                    *54556-3*

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

married) over the amounts paid to Buffy.

If Dion had not been married to Buffy at his death, Sonny would have received a death benefit on Dion's death of 66 times his earned monthly pension of $800.00, for a total of $52,800.00. Buffy received $10,000.00 plus 60 payments of $400.00 for a total of $34,000.00. The difference of $18,800.00 is payable to Sonny as a death benefit upon application within five years of Buffy's death.

**The death benefits are very different for employees with less than 10 years of service. They require separate actuarial calculations and are not included in the examples in this booklet.**

## CLAIMS AND ADMINISTRATION

### What do I have to do to claim my benefits?

You have to file a complete application with the Plan office to receive benefits. You can call or write the Plan office for the proper forms. Once you file an application, the Plan office will either advise you of your benefit payments options or send you a denial notice.

If you receive a denial notice or no response within ninety (90) days of your application, you can file an appeal to the trustees. The plan can take up to 180 days as long as it tells you that more time is needed within 90 days.

An appeal must be filed within sixty (60) days after you receive the denial notice. You must state all the facts and reasons about your disagreement with the denial notice. You have the right to review documents, submit comments and request a hearing.

The Board of Trustees normally will consider an appeal at their regular quarterly meeting scheduled at least 30 days after your appeal is received. Consideration can be delayed to the following quarterly meeting in special circumstances, such as a need for further information or a personal hearing. You should receive notice of any delay past 120 days. After a decision, the Plan will mail an explanation to you.

If the Plan denies your claim or fails to respond to your appeal on a timely basis, you can go to court. If you go to court before then, the court can dismiss your case for not coming to the Plan first.
Your court papers can be served on the Plan office or a trustee. The decision of the Plan is normally final in court. You normally must have more than a simple disagreement on interpretation of the plan and its rules. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

### Who pays for this Plan and how?

The employers make regular contributions to the Plan at the rates in its contract with

*2001*                                                                    *54556-3*

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 88

Local 626 or reciprocal agreements. No employee contributions are required or permitted.

You can get a copy of a complete list of contributing employers on written request or examine it at the Plan office The Plan office will also tell you whether a particular employer contributes to the Plan on written request.

There are special 40-hour minimum contribution rule for employees who are not considered part of the Local 626 bargaining unit. Failure to comply with these rules may result in ineligibility for benefits.

### Who runs this Plan?

The Pension Plan is administered as a separate plan within the Local No. 626, UBC&JA Pension Fund ("Pension Fund"). The Pension Fund also covers the Carpenters Local 626 Retirement Savings Plan ("Retirement Savings Plan"). The Trustees of the Pension Fund are the plan sponsor for both the Pension Plan and the Retirement Savings Plan.

The Trustees are a board of union and employer trustees. The Delaware State Regional Council of Carpenters chooses the Union representatives. The Delaware Contractors Association chooses the employer representatives. The day-to-day operation of the Plan is handled by the Plan office under the direction of GEMGroup, Inc.

Any Trustee who is a full-time employee of Local 626 or a contributing employer serves without pay except out-of-pocket expenses. The Plan has provisions which limit the personal liability of all Trustees to the legal minimum. The Plan also requires that the Plan pay any legal costs or damages they incur in defending their actions with respect to the Plan to the maximum extent permitted by law.

### Can this Plan be changed or terminated?

The Trustees have the power to amend or terminate the Plan at any time. This power includes amendments or terminations involving merger, consolidation or a transfer of Plan assets or liabilities in accordance with ERISA. Your existing accrued benefit (which excludes most death and disability benefits) normally may not be reduced as a result of an amendment, merger, consolidation or transfer of assets.

This Plan can terminate in a number of ways:

- The adoption of a Plan amendment which provides that employees will receive no credit for any purpose under the Plan for service with any employer after the date(s) specified by the amendment terminates the Plan.

- A mass or complete withdrawal of every employer from the Plan, through a permanent cessation of operations or termination of the obligation of all employers to contribute to the Plan, freezes benefits and terminates the Plan as a matter of law.

- The adoption of an amendment which causes the Plan to become a defined

*2001*                                                                    *54556-3*

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 89

contribution (individual account) Plan is also a legal termination.

- A court can terminate the Plan if the Plan fails to satisfy minimum funding requirements, is unable to pay benefits when due or shows the potential to create a long run loss to the Pension Benefit Guaranty Corporation (PBGC) which reasonably may be expected to increase unreasonably the insurance exposure of PBGC.

On termination, the rights of all affected employees will vest to the extent then funded. After termination, the Plan may only pay benefits which had become vested before termination and may or must by law reduce benefits in certain situations

Your pension benefits under this multiemployer plan are insured by the Pension Benefit Guaranty Corporation (PBGC), a federal insurance agency. A multiemployer plan is a collectively bargained pension arrangement involving two or more unrelated employers, usually in a common industry. Under the multiemployer plan program, the PBGC provides financial assistance through loans to plans that are insolvent. A multiemployer plan is considered insolvent if the plan is unable to pay benefits (at least equal to the PBGC's guaranteed benefit limit ) when due.

The maximum benefit that the PBGC guarantees is set by law. Under the multiemployer program, the PBGC guarantee equals a participant's years of service multiplied by (1) 100% of the first $11 of the monthly benefit accrual rate and (2) 75% of the next $33. The PBGC's maximum guarantee limit is $35.75 per month times a participant's years of service. For example, the maximum guaranteed for a retiree with 30 years of service would be $1,072.50 per month or $12,870 per year.

The PBGC guarantee generally covers: (1) Normal and early retirement benefits; (2) disability benefits if you become disabled before the plan becomes insolvent; and (3) certain benefits for your survivors. The PBGC guarantee generally does not cover: (1) Benefits greater than the maximum guaranteed amount set by law; (2) benefit increases and new benefits based on plan provisions that have been in place for fewer than 5 years at the earlier of: (i) The date the plan terminates or (ii) the time the plan becomes insolvent; (3) benefits that are not vested because you have not worked long enough; (4) benefits for which you have not met all of the requirements at the time the plan becomes insolvent; and (5) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay, and severance pay.

For more information about the PBGC and the benefits it guarantees, contact the PBGC's Technical Assistance Division, 1200 K Street, N.W., Suite 930, Washington, D.C. 20005-4026 or call 202-326-4000 (not a toll-free number). TTY/TDD users may call the federal relay service toll-free at 1-800-877-8339 and ask to be connected to 202-326-4000. Additional information about the PBGC's pension insurance program is available through the PBGC's website on the Internet at http://www.pbgc.gov.
**How can I get more information on the Plan?**

This plan is administered under a contract with GEMGroup, Inc. You can contact the trustees or write the Plan at the following address:

*2001*                                                                              54556-3

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                        PAGE A – 90

Carpenters Local 626 Pension & Annuity Plan
c/o GEMGroup, Inc.
650 Naamans Road, Suite 303
Claymont, DE 19703
302-798-6801

It is important that you know the formal name of the plan and put it on your letters as the administrative office handles plans for a number of unions and groups.

**What rights do I have under federal law?**

As a participant in the Carpenters Local 626 Pension and Annuity Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

- Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

- Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

- Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

- Obtain a statement telling you whether you have a right to receive a pension at normal retirement age (generally age 65) and if so, what your benefits would be at normal retirement age if you stop working under the plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The plan must provide the statement free of charge.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in

*2001*                                                                    *54556-3*

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 91

1              Malandruccolo

2     IN THE UNITED STATES DISTRICT COURT

3        FOR THE DISTRICT OF DELAWARE .

4

5                  ---

6

7

8     ALAN D. BARR and       : Civil Action
      JOHN MALANDRUCCOLO,     : No. 04-1468 KAJ
      JUNIOR                  :

9
          vs.                 :
10                            :
      CARPENTERS PENSION AND  :
11    ANNUITY PLAN OF         :
      PHILADELPHIA AND        :
12    VICINITY, successor by  :
      merger to CARPENTERS    :      ORIGINAL
13    LOCAL 626 PENSION AND   :
      ANNUITY PLAN            :

14

15                 ---
               May 16, 2005
16       Philadelphia, Pennsylvania

17                 ---

18

19        Oral deposition of JOHN MALANDRUCCOLO,
      JUNIOR, taken in the offices of Jennings &
20    Sigmond, 510 Walnut Street, 16th Floor, on the
      above date, commencing at 11:41 a.m., before
21    Janice M. Leaman, a Notary Public and Approved
      Reporter of the United States District Court for
22    the Eastern District of Pennsylvania.
                   ---
23
           KAPLAN, LEAMAN & WOLFE
24     Registered Professional Reporters
       The Bourse, 21 South Fifth Street
25         Philadelphia, Pennsylvania
              (215) 922-7112

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

                                    PAGE A – 92

1                              Malandruccolo

2


3       APPEARANCES:

4           JOSEPH M. BERNSTEIN, ESQUIRE
            800 North King Street, Suite 302
5           Wilmington, Delaware 19801
            Attorney for Plaintiffs
6
            JENNINGS, SIGMOND
7           BY:   KENT CPREK, ESQUIRE
            510 Walnut Street, 16th Floor
8           Philadelphia, Pennsylvania 19106
            Attorney for Defendants
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Malandruccolo

1

2          (It is hereby stipulated and agreed

3   by and between counsel that, sealing,

4   certification and filing of the within deposition

5   are hereby waived; that all objections except as

6   to the form of the question be reserved until the

7   time of trial.)

8               JOHN MALANDRUCCOLO, having been

9   first duly sworn, was examined and testified as

10  follows:

11  BY MR. CPREK:

12      Q.    Good morning, could you state your

13  name, for the record, please?

14      A.    John Malandruccolo.

15      Q.    And could you spell that, for the

16  reporter, please?

17      A.    M-A-L-A-N-D-R-U-C-C-O-L-O.

18      Q.    And where do you live?

19      A.    Kirkwood, Delaware, 638, Howe, H-O-W-E

20  School Road, Kirkwood, Delaware.

21      Q.    And how long have you lived there?

22      A.    Since 1956, as a kid, and just stayed

23  there.

24      Q.    If you excuse me, I'm going to call you

25  John, is that okay?

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 94

Malandruccolo

1

2 all the documents and stuff like that, and

3 anything I had to have.   That was all done mainly

4 through my wife.

5     Q.    Okay.

6     A.    I'm -- I don't know, I'm not smart

7 enough or whatever.   I'm a carpenter.   I'm not

8 -- so -- if you would help me out and explain it.

9 I can read it and it wouldn't mean nothing.

10     Q.    Do you remember filing a lawsuit?

11     A.    With Mr. Bernstein?

12     Q.    Yes.

13     A.    Yes.   Come to his office, yes, I did.

14 That part, yes.

15     Q.    Do you know what that lawsuit was

16 about?

17     A.    Me not getting my back pension.

18     Q.    Okay.   What do you mean by not getting

19 your back pension?

20     A.    Well, I retired on disability, and

21 December 18th, 17th or 18th was my first day off,

22 when I got operated on, and this is 2001, 2002.   I

23 would have to figure out the years.   I would have

24 to look at the paper and see.   Whatever the --

25 well, I retired, that's when I went for

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 95

Malandruccolo

1

2   after you stopped working as a carpenter?

3       A.      Yes, they -- one right after the other,

4   yes.   There was time in between, trying to see if

5   we could, you know --

6       Q.      You had surgery before you stopped

7   working as a carpenter, too?

8       A.      It's that on the neck, yes, one on the

9   neck.   That was when I was a carpenter.   I was

10  only off work for a short spell.

11      Q.      And then you came back to work?

12      A.      Yes, and then time in between, years in

13  between before the back.   But I had hurt the back

14  in `96 or somewhere in that area.   `96, I hurt the

15  back.   But they did therapeutic work, so I didn't

16  -- until it got to where I couldn't pick the foot

17  up or whatever.   It dragged, you know, through the

18  years it would get better and then whatever.

19      Q.      And what date is the last time you

20  worked as a carpenter?

21      A.      December 18th, is the last day, 17th or

22  18th was the last day I worked, yes.

23      Q.      And that was 2002, if you look at page

24  three of Exhibit 11?

25      A.      Page three?   If you wait for me to

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 96

Malandruccolo

1
2  read the whole thing, you will wait a long time.

3     Q.     It says, "On or about June -7, 2003,

4  Social Security Administration made a

5  determination that you were disabled as of

6  December 17, 2002"?

7     A.     Yes.

8     Q.     Do you recall that?

9     A.     Yes, December 17th was the last day I

10  worked, yes.

11     Q.     Okay.

12     A.     That was the last day.  But then you

13  got -- through social security, you go through a

14  lot for that.   My wife and I had to go up there

15  once.   I didn't go up nowhere.

16     Q.     She went to social security?

17     A.     She went one time.   That might have

18  been to get some SSI, too, along with it.  She

19  went up to New Castle to get some help for me.

20  That might have been the one time.

21     Q.     And when was that?

22     A.     The date, I don't know.   She did go

23  during that period that I filed.

24     Q.     Right.   Did you file right after you

25  stopped working? ·

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 97

Malandruccolo

1

2    A.    Not the first -- no, I don't know exact

3    date.   I didn't -- you know, I didn't know.   Al

4    stopped over, and Al told me what to do, and I

5    went from there.    I didn't know what to do.    I

6    had no idea what to do whatsoever from anybody

7    down -- I had heard from Al and a couple other

8    people, and that's what I did.

9    Q.    Okay.    Let's step back a little bit.

10   When you -- December 17, 2002, is that before or

11   after the surgery you were talking about?

12   A.    December 18th, I got operated on.

13   Q.    Okay.

14   A.    I thought I was going to be able to go

15   back to work, but in the meantime I was still

16   having problems right after the operation.    I

17   talked to Mr. Barr and other people, and they told

18   me what to do.   So, I did.   Everything they told

19   me to do.

20   Q.    What did they tell you to do?

21   A.    To contact social security, and I

22   contacted social security.   And then I called the

23   Gem Group.   And the Gem Group told me is what

24   they -- is when you get your -- you get a paper

25   from social security, about two weeks before you

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 98

Malandruccolo

1

2    get it, you know you are going to get it.  I know

3    I was going to get mine, but I don't know

4    definite.  About two weeks before you get that,

5    and then you call the Gem Group.  The Gem Group

6    sends you a piece of paper, an application -- not

7    an application, what's your name, how -- all of

8    that, how you want your taxes and all of that.

9             Once you get that, they tell you to

10    extend the thing from social security, the thing

11    that has where they tell you you are disabled?

12    You send that paper along with your paper, and

13    it's taken care of.  That's all the paperwork

14    that is done.

15    Q.    And you have got that advice from Mr.

16    Barr?

17    A.    The first advice, but I had called the

18    Gem Group, and the Gem Group told me what to do.

19    Q.    Okay.

20    A.    Then when I called the Gem Group, two

21    weeks before I filed, and that was Jane't was

22    there.  I know Jane't because she helped me out a

23    little on stuff.  She told me as soon as the

24    paper comes, to send it, you know, that she sent

25    me that application, or whatever you call it.

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 99

Malandruccolo

1

2  It's a file paper, not application, file.    Send

3  it and my paperback with it.

4       Q.     Social security?

5       A.     Yes, send that back with it, and I did

6  that.

7       Q.     Okay.  When was the first time you

8  talked to Gem Group?

9       A.     I don't know.    Whenever --

10       Q.     Any recollection of whether it was

11  about the time you left work, sometime later?

12       A.     No, it wasn't exact time I left work.

13  I thought, you know -- I thought I was going back

14  to work, you know, right then.    You know, I

15  didn't think I was going to be off.    I didn't,

16  you know, never planned on this.    I mean, nobody

17  plans on it.    And I don't know, a couple weeks, I

18  guess.    Because Al come over to see what I was

19  doing, a couple weeks, maybe more.    I don't know

20  exactly.    But Al told me, and then that's when I

21  filed for social security and all, because I have,

22  you know, a lot of other things wrong with me,

23  too, so --

24       Q.     Okay.  So, the sequence was you went

25  -- you stopped work on December 17th?

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 100

Malandruccolo

1

2      A.      Right.

3      Q.      You had the operation on December 18th?

4      A.      Yes.

5      Q.      You initially thought you were going

6   back to work?

7      A.      Yes.

8      Q.      And then in a couple of weeks later, or

9   whatever time, you talked to Alan Barr?

10     A.      Right.

11     Q.      And he told you what you should do to

12  apply for disability benefit?

13     A.      Right.   Right.

14     Q.      And he was talking about both social

15  security?

16     A.      Yes.   The whole works.

17     Q.      And Gem Group?

18     A.      And Gem Group, yes.   Because he had

19  already went through all of this.

20     Q.      Okay.   Did you call Gem Group

21  immediately or did you just wait until you got

22  your award?

23     A.      No, I called them in the meantime, no.

24  I didn't wait until I got my award.   I knew

25  within probably a month of talking to social

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A - 101

```
                         Malandruccolo
1
2    security the lady pretty much told me, it goes
3    through her, and then it goes through other
4    people.   And she said she pretty much makes the
5    decision.   What all I had with all my back history
6    on everything that was wrong with me, the neck,
7    the back, arthritis, carpal tunnel, all that kind
8    of stuff, I have, that I was pretty much going to
9    get it.   Because there's a new thing in social
10   security for like, I don't know if you know it,
11   like benefits -- but it's for construction workers
12   because they get hurt more so.   It used to be
13   harder for them to get social security or get
14   anything, is what it is, you know, but there is
15   something in there now.   I didn't have any
16   problem getting it.   I got it on the first try,
17   no problem whatsoever.
18        Q.    Did you also file for worker's
19   compensation?
20        A.    Yes, I did.
21        Q.    And when did you file for that?
22        A.    The day I filed for that?   I went out
23   on workmen's comp, but I -- no, I didn't go out.
24   I had to go get a lawyer because my five years was
25   up.
```

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX            PAGE A – 102

<pre>
 1                   Malandruccolo
 2    time they are doing it that you are a company man,
 3    I was there twelve years, you are a company man.
 4    The whole time you are doing it, they are trying
 5    to get you through the five years, they are trying
 6    to get you, you know, whether you are a company
 7    man or not, they don't care.
 8         Q.    But you came back to work after that
 9    injury quick?
10         A.    I didn't -- oh, the injury on the
11    back?  I never even took off work.
12         Q.    Okay.
13         A.    They put me on light duty and put me
14    through therapy.  You don't miss no time down
15    there, they will take care of you.  They had
16    broken legs in other buildings propped up, no work
17    -- nobody miss time down there from Raytheon
18    Corporation.
19         Q.    Did you settle that worker's
20    compensation case?
21         A.    Not yet.
22         Q.    It's still outstanding?
23         A.    It's -- I signed some papers last week,
24    now it has to go before the Delaware Labor Board.
25    They make a decision whether I will settle or not.
</pre>

                              Malandruccolo

1
2    They make that decision.

3        Q.     Okay.    And what is the settlement?

4        A.     The settlement, what it would be?    It

5    would be 185.

6        Q.     185 what, a month?

7        A.     No.    No.

8        Q.     Single --

9        A.     It would be over.    It would be over,

10   but what they do then, they keep all operations to

11   -- the insurance company keeps all the operations

12   open, if it goes again, that they will pay for

13   surgery.

14       Q.     They are going to pay for all your back

15   surgery?

16       A.     Surgery, if it happens again, yes.

17       Q.     Are you getting any money?

18       A.     Right now I get 372 dollars a week

19   until -- until it's -- that day.

20       Q.     And what happens when the settlement

21   goes through?

22       A.     When the settlement goes through?    My

23   lawyer gets it, and then I get a lump sum, and

24   then the 372 stops.

25       Q.     Okay.

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 104

Malandruccolo

1

2    A.     And --

3    Q.     And the 185, is that 185,000?

4    A.     Yes.   Yes.   Yes.

5    Q.     And then that's going to be paid to you
6 in a single sum, and your lawyer is going to take
7 some of it?

8    A.     Yes, he takes his out of there.   He
9 gets his part.   I don't have to tell you what
10 that part is.   I'm not being smart.

11    Q.     When did you begin discussions about
12 that settlement, do you know?

13    A.     The settlement on the back?

14    Q.     Yes.

15    A.     It's been a while ago.   They made an
16 offer, they did.   Liberty Mutual likes -- what
17 the lawyers -- my lawyers said, Liberty Mutual
18 likes to clear the slate.   They don't like paying
19 weekly.   So, they made an offer, and we made one
20 back, you know.

21    Q.     And do you know when that process
22 started?

23    A.     No, I don't exactly, no.   It's seems
24 like forever, but I guess it hasn't been that many
25 years.   It ain't forever.   Just seems long to me.

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 105

Malandruccolo

1

2 No, I don't.   I just get a call from Matt and he

3 will say, come in or something, sign a paper, I

4 will come in and -- I guess because he doesn't --

5 their office is not that far from my house.

6    Q.    Okay.   So, Matt is your worker's

7 compensation lawyer?

8    A.    Yes.   Matt Barkowski.

9    Q.    And do you know when you started your

10 worker's compensation claim?

11    A.    When I started?   Yes, they had to pay

12 me some back, it was like -- no.   I'm not 100

13 percent positive on this, but it was weeks and

14 weeks and weeks.   I didn't get it right away, but

15 they didn't -- because you had to fight for it to

16 pay, and then they had to pay me.   And they paid

17 me close to 6,000 on the first check, because they

18 had to pay me back, you know, pay me for the

19 weekly stuff that I would lose, which is nothing

20 of what I made as being out there as a carpenter,

21 you know. I worked two jobs all my life, and then

22 I get down to about a third of what I make in a

23 year.

24    Q.    What two jobs did you work?

25    A.    I worked side work.   You know, I've

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 106

Malandruccolo

1
2    always did it all my life.   And I used to work
3    years ago at a steel mill at nighttime, the
4    Carpenters Local in the daytime.
5         Q.    You are not working at all any more?
6         A.    No.   No.   No.
7         Q.    Let me try and get this.   December 17,
8    2002, again?
9         A.    Yes.
10        Q.    Okay.   Had you already filed your
11   worker's compensation claim by then, when you went
12   in for that surgery, had you filed the worker's
13   compensation claim?
14        A.    Yes.   That had been -- yes.   Yes.
15   Because when I went for the operation, I think I
16   had already been to the lawyer.   I had already
17   been to the lawyer, yes.
18        Q.    Okay.
19        A.    I'm almost sure.   I'm -- I'm saying I
20   did.   I don't know.   I don't know.   I think I
21   was.   I must have been.
22        Q.    If you were injured in `96, and you
23   said it was five years, it seems like you should
24   have talked to him in 2001?
25        A.    Yes.   But I didn't talk to the lawyer

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 107

Malandruccolo

1

2     A. .   Right.   When I left there, it had to

3   be a year or more that I had -- before that, that

4   I had left over to Motivo because we were out of

5   there.   Had to be a little bit better than a

6   year, because I went through the needle process

7   the first -- that's the bill that they paid.   And

8   then when I went for the operation, and I was

9   going to be off for a while, I wasn't off at any

10  time with a needle.   I would go get it in the

11  morning and then go to work.   And then when I --

12  so, it had to be at least a little bit better than

13  a year.   Am I confusing you?   So --

14     Q.     Okay.   Now, let's try and   --

15     A.     I am confused.

16     Q.     We can check, but I'm just trying to

17  get, you filed the worker's compensation claim, I

18  guess, sometime after you left Raytheon?

19     A.     After I left there.   I was gone for a

20  while.

21     Q.     But before you quit working as a

22  carpenter?

23     A.     Yes.   Before I quit, I think.   I

24  think it was in that time.   Before the operation.

25  I think it was just before the operation, or

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 108

Malandruccolo

1

2. something like that.

3     Q.    Okay.   And how did you get hooked up

4 with the worker's compensation board?

5     A.    How did I --

6     Q.    How did you know to file a worker's

7 compensation claim?

8     A.    I went to a lawyer.

9     Q.    How did you know to go to him?

10     A.    I hadn't -- I didn't know what -- I

11 just -- I guess tried to find out how to go to --

12 what I was going to do.

13     Q.    Did you just ask somebody, another

14 carpenter?

15     A.    Yes, might have been.   Yes.   Because

16 I didn't know what to do.   I didn't have --I knew

17 I wouldn't have nothing coming in.   So -- but I

18 knew it was a work-related injury.   And then when

19 I went to him, that's when first he looked at it

20 and thought the five years had been passed, that I

21 had anything done.   But in the meantime they had

22 paid, I guess when they give me a needle, they had

23 paid one office visit, and that opened the claim.

24     Q.    Okay.

25     A.    If I had known I needed all these

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX           PAGE A – 109

Malandruccolo

1

2   dates, I could have gotten them out of the file

3   cabinet.

4       Q.    Did there come a time when a doctor

5   told you you shouldn't be working as a carpenter

6   any more?

7       A.    Yes, completely, yes.  Doctor Sugarman

8   did after the operation.  After the operation he

9   said I wouldn't be doing anything.

10      Q.    Because  --

11      A.    Light duty, no nothing.

12      Q.    That was after December 18th, 2003?

13      A.    Yes, that's totally, totally, totally

14   disabled, yes.  So -- no, not totally disabled.

15   But that I wouldn't be working at -- at anything.

16      Q.    Okay.  And what did you or your wife

17   do then after he told you that; is that when you

18   applied for social security?

19      A.    No, I went to social security before --

20   before --

21      Q.    Before the operation?

22      A.    I am confused.  No, not before.

23   Right -- right after I got operated on I went to

24   social security.  I don't know the date.

25      Q.    I'm just trying to get a general time

Malandruccolo

1
2  line.
3      A.      Yes, I don't know the date. · It was
4  after -- I filed for social security, and I had no
5  -- I had filed -- social security had me before
6  the doctor, said that, you know, absolutely,
7  because the insurance company, workmen's comp
8  fights you right up until the day that the doctor
9  -- I mean, because you have to pay the doctor so
10 much money for a deposition, right?   And they --
11 it was like $2,500.00 a crack.   The last time I
12 was supposed to have a deposition, and when I went
13 in to Doctor Sugarman, the insurance company
14 called my lawyer and told them, forget the
15 deposition.   So, they didn't have to -- he didn't
16 have to go.   They had gave up or whatever.   But
17 they are going to fight you until the very, very,
18 very end, workmen's comp does.
19     Q.      Okay.   Well, let's go back to you had
20 the surgery, and then you went to social security?
21     A.      Yes.
22     Q.      And when did you call Gem Group, or you
23 said it was your wife?
24     A.      I called.   My wife and I, she worked on
25 all the paperwork, anything, spelling, all that

Malandruccolo

1

2 stuff, she does all that.   I just talk, okay?

3 And I do talk on telephone.   I have no problem

4 with that.

5              And I called the Gem Group.   The

6 thing was when you get your -- the thing, that

7 paper from social security stating that, you know,

8 they told me on the phone, when you get that, then

9 you call Gem Group, and they send you a paper.

10 There's not a whole lot of paperwork with the Gem

11 Group.   It's just a paper that comes like maybe

12 -- it might have been two pages, where you fill

13 out your name and all, and then the next page is

14 how you want your taxes out.   There's nothing to

15 it.   And then you send them that paper.   And

16 then they take that paper, and that's your -- you

17 are filed.   And that's it.

18              And then when I went from there was

19 trying to find out when I was going to get my back

20 pension, because of I retired disability, December

21 the 17th, and then -- as a matter of fact, my

22 first two pension checks didn't come.  I had to

23 call and, you know, from that date, the six

24 months, or five and a half months that takes

25 social security to do their stuff, I still didn't

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 112

Malandruccolo

2    get my two checks from the Gem Group that --

3    because the girl was new, Jane't was new.    I

4    didn't get my checks.    The paperwork was done,

5    and I didn't get them.

6              So, I called the business agent, and

7    talked to him the day before.    And he said he

8    would take care of it.    So, he turned around, and

9    he didn't take care of it right away.    I called

10   Sandy at the hall, Sandy called him, and the guy

11   at the Gem Group called and send the checks would

12   be, and they were there within a couple days, my

13   two checks, they totaled 5,000, something,

14   whatever it was, of my pension.    So -- did I go

15   too far?

16       Q.      Did you ever talk to any carpenters who

17   were on disability pension?

18       A.      Yes.

19       Q.      Who?

20       A.      Do I know carpenters or talk to them?

21       Q.      Yes.

22       A.      Ralph Seisk -- well, not disability.

23   They are on just -- Ricky Laxton's on disability.

24       Q.      Okay.

25       A.      As a matter of fact, Ricky was in on --

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 113

Malandruccolo

1

2    union hall lawyer before I knew of Mr. Bernstein,

3    and he said, "I don't handle it."

4         Q.    Who was the union hall lawyer?

5         A.    I'm trying to think of his name.   I

6    don't know his name.

7         Q.    In Delaware, Pennsylvania?

8         A.    No, he's in Delaware.   He's in

9    Delaware.

10        Q.    Okay.   Was it a guy named Boyce, B-O

11   --

12        A.    No, Joyce.   Joyce, I think it is.

13   Joyce.

14        Q.    Joyce, like J-O-Y-C-E?

15        A.    I think that it is, yes.   I know him

16   to see, I worked with him.   Bad on names.   But

17   he got his.   He got hurt, and he got his.   He

18   was having trouble, too.

19        Q.    Okay.   And your wife has been handling

20   all your pension affairs, right?

21        A.    She handles everything, yes.

22        Q.    Is she using any medication or

23   anything?   She's okay, right?

24        A.    She's all right, yes.   She's very

25   smart.   She uses medication, but she's a very

```
 1                          Malandruccolo
 2   smart girl.
 3        Q.      Let me show you a document I've marked
 4   as Defendant's Exhibit 13.    Have you ever seen
 5   this document before?
 6        A.      No, I don't think so.    Is this the one
 7   I marked out for disability?    Is this mine?
 8        Q.      Do you recognize any of the
 9   handwriting?
10        A.      The only thing I ever do is this.
11        Q.      Look on the last page.
12        A.      That's mine.
13        Q.      Okay.   You are pointing to the
14   signature at the top of the last page?
15        A.      Yes.   Yes.    The printing and all.
16   My wife would print it for me.
17        Q.      Okay.   Does that look like your wife's
18   printing there?
19        A.      Could be, yes.    I don't know.    But
20   that looks like -- that's my signature, though, on
21   the last page.    That's for sure.
22        Q.      And the rest looks like your wife's
23   printing?
24        A.      I would say, but I don't know --
25   understand her if she would mess my social
```

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 115

1                    Malandruccolo

2    security up.   I don't think -- that part doesn't

3    look right.

4        Q.      Okay.

5        A.      She sure knows my social security

6    number.   If I went to the Gem Group, there's not

7    a lot of paperwork from the Gem Group.   The Gem

8    Group, what I remember, what I filled out, because

9    I talked to Jane't at that time, and I was doing

10   the talking at that time.   The papers I filled

11   out for Jane't was the ones with your --

12       Q.      Tax selections?

13       A.      -- how much tax deductions and stuff

14   like that.   There wasn't a whole lot of paperwork

15   from the Gem Group.

16       Q.      Then did your wife sign those forms,

17   too?

18       A.      She might have -- no, I printed out

19   some of the forms.   The ones for Jane't, the ones

20   for the retirement,  some I did.   I am not

21   positive of -- everything, like I said, this is

22   memory, you know --

23       Q.      Okay.   On here it says you have worked

24   -- your last employer was Carpenter's Local 626?

25       A.      Yes.   That's what I use all the time.

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 116

Malandruccolo

1
2    Q.    Okay.   So, that would have been
3    something you or your wife put in there?
4    A.    Yes.   That's who I use as an employer,
5    Local 626.
6    Q.    Do you know when you got this form?
7    A.    This form?
8    Q.    Yes.
9    A.    What was -- let me -- I haven't read
10   all through it, yes.  I don't know what it's for.
11   Q.    Okay.  This is your pension
12   application for your disability pension, I can
13   tell you that.
14   A.    Okay.  If my wife did it, she -- you
15   know, I signed the stuff.  I did sign it.  She
16   will print stuff and I will sign it.
17   Q.    Okay.  Do you remember when you first
18   called Gem Group to ask for a copy of the
19   application?
20   A.    When they sent it to me?
21   Q.    Yes.   When did you ask for it?
22   A.    Oh, God.  I don't know.  I called
23   the Gem Group and they told me when I got the --
24   when I got the -- what you call it, found out
25   whether I was going -- when I got the thing from

Kaplan, Leaman & Wolfe
215.922.7112
BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 117