

## In The Matter Of:

*Alan D. Barr and John Malandruccolo, Jr.  v.*
*Local 626 Pension and Annuity Plan*

---

*Jane't Garnett*
*June 15, 2005*

---

*Hawkins Reporting Service*
*715 N. King Street, Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 05PI077.TXT, 32 Pages*
*Min-U-Script® File ID: 3657013757*

## Word Index included with this Min-U-Script®

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 156

Alan D. Barr and John Malandruccolo, Jr.  v.
Local 626 Pension and Annuity Plan

Jane't Garne
June 15, 200

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALAN D. BARR and
JOHN MALANDRUCCOLO, JR., :
    Plaintiffs,             : C.A. No. 04-1468 KAJ
    v.                      :
CARPENTERS PENSION AND :
ANNUITY PLAN OF            :
PHILADELPHIA AND VICINITY, :
successor by merger to     :
CARPENTERS LOCAL 626 PENSION: 
AND ANNUITY PLAN,          :
    Defendant.             :

Deposition of JANET GARNETT, taken
pursuant to notice, before CAROL DI SERAFINO,
Professional Reporter and Notary Public, duly
authorized to administer oaths, on WEDNESDAY, JUNE 15,
2005, at 8:30 a.m., held at the offices of GEMGroup,
Brandywine Corporate Center, 650 Naamans Road, Suite
303, Claymont, Delaware.  There being present:
    APPEARANCES:
        JOSEPH M. BERNSTEIN, ESQ.
        800 North King Street, Ste. 302
        Wilmington, Delaware  19801
        Attorney for Plaintiffs

Page 2

APPEARANCES, cont'd:
    TIMOTHY J. SNYDER, ESQ.
    YOUNG CONAWAY STARGATT & TAYLOR
    The Brandywine Building
    1000 West Street, 17th Fl.
    Wilmington, Delaware  19801
    and
    KENT G. CPREK, ESQ.
    JENNINGS SIGMOND
    The Penn Mutual Towers
    510 Walnut Street, 16th Fl.
    Independence Square
    Philadelphia, Pennsylvania 19106-3683
    Attorneys for Defendant

Page 3

INDEX TO TESTIMONY
DEPOSITION OF:                          PAGE
JANET GARNETT
    Direct by Mr. Bernstein         4
            INDEX TO EXHIBITS
GARNETT EXHIBIT NO.:                    PAGE
1  Document labeled "Exhibit 3," consisting    10
   of Table of Contents pages and Pages 1-29
2  Packet of Amendments             13
3  Summary Plan Description, 2001, labeled     14
   "Exhibit 1"
4  Pension and Annuity Plan         15
5  Pension Application              18
6  Letter dated April 15, 2004      29

Page 4

[1] JANE'T GARNETT, being first duly [2]
sworn/affirmed according to law, was [3]
examined and testified as follows:

[5] BY MR. BERNSTEIN:

[6] Q: Okay. Miss Garnett, I know we
were [7] introduced before. Just for the
record my name is [8] Joseph Bernstein.
I'm an attorney. And I'm [9] representing
Alan Barr and John Malandruccolo and
they [10] have filed a lawsuit against
Carpenters Local 626 [11] Pension and
Benefit Plan, and the reason you're here
[12] today is so that I can ask you some
questions about [13] your knowledge
about their claims and your connection
[14] or actually GEMGroup's connection
with the Local 626 [15] Plan.

[16] Now if there is anything I say that you
[17] don't understand, ask me to explain
it, stop me and [18] I'll try and explain it.

[19] A: Okay.

[20] Q: Do you have any questions up to

this [21] point?

[22] A: No.

[23] Q: First I'd like you to describe for me
[24] your educational background.

Page 5

[1] A: I have a Bachelor of Science degree
in [2] accounting and I graduated from
high school of course.

[3] Q: When did you get your B.S. degree?

[4] A: December of 2000.

[5] Q: Where was that from?

[6] A: Delaware State University.

[7] Q: And after you graduated college
could [8] you give me a rundown starting
with your first job up [9] to the present
time of your employment history.

[10] A: I was an internal auditor for the Air
[11] Force audit agency for three years.
Came as an [12] internal auditor for
Student Finance Corporation. And [13]
then I did a career change and came to
GEMGroup.

[14] Q: When did you start working at
GEMGroup?

[15] A: GEMGroup was October of 2001.

[16] Q: The job that you took at GEM-
Group, was [17] that a new job or did you
replace someone?

[18] A: I replaced someone.

[19] Q: Do you know the name of the
person that [20] you replaced?

[21] A: Yes. Sarah Kelly.

[22] Q: Sarah Kelly?

[23] A: Yes.

[24] Q: Okay. Does Sarah Kelly still work
for

Page 6

[1] GEMGroup?

[2] A: No.

[3] Q: Did she retire? Move on? If you
know.

[4] A: She retired.

[5] Q: She retired. Approximately how
old was [6] Sarah Kelly?

[7] A: I do not know.

[8] Q: Over 50 would you say?

[9] A: Yeah. Pretty much.

[10] Q: Now in connection with your job
at [11] GEMGroup what's your job title?

[12] A: Pension analyst/eligibility analyst.
[13] Pension and eligibility analyst.

[14] Q: Now can you describe exactly
what [15] GEMGroup does as an organ-
ization, what their business [16] is.

[17] A: It's a third-party administrator for
[18] local unions within the metropolitan
area.

[19] Q: Now my understanding is that at
one time [20] they were Plan admin-

istrator for the Local 626 Pension [21] an
Annuity Plan and that's since merge
into the [22] Philadelphia Plan; is tha
correct?

[23] A: That's correct.

[24] Q: I'm just going to refer to them a
Local

Page

[1] 626 Plan; all right?

[2] A: Okay.

[3] Q: So when I refer to them, that's wha
I [4] mean.

[5] Local 626 Plan was one of GEM
Group's [6] clients?

[7] A: Correct.

[8] Q: Would that be fair to say?

[9] A: Correct.

[10] Q: Now does GEMGroup have othe
clients [11] that have similar plans, pen-
sion/benefit plans, that [12] GEMGroup
acts as administrator for?

[13] A: Yes.

[14] Q: Okay. And without divulging any
trade [15] secrets, if you can just give me a
ballpark figure of [16] how many plans
GEMGroup currently administers. I'm
[17] not asking for names. If you can.

[18] A: In this office? We have three [19]
locations.

[20] Q: In this office.

[21] A: Probably six or seven. Six-plus.

[22] Q: Okay. Now the records that GEM-
Group [23] keeps, are the records seg-
regated according to each [24] particular
plan that they administer?

Page 8

[1] A: Yes.

[2] Q: So, in other words, you'd have one
set [3] of records for Plan A, another set of
records for Plan [4] B or Client B; correct?

[5] A: Correct.

[6] Q: And where are the records kept for
the [7] Local 626 Pension Plan?

[8] A: When we had them here?

[9] Q: Yes.

[10] A: They were kept in a file room.

[11] Q: As I understand it GEMGroup no
longer [12] administers the Local 626
Plan.

[13] A: That's correct.

[14] Q: Do you know who does ad-
minister the Plan [15] now?

[16] A: Philadelphia's Carpenters.

[17] Q: So the union itself acts as their
own [18] administrator of their own Plan?

[19] A: I don't know.

[20] Q: If you know.

[21] A: Yeah. I don't know.

[22] Q: When did GEMGroup stop being

[23] administrator for the Local 626 Plan?

[24] A: I stopped all pension processes

---

Page 9

[1] effective January 1st of 2005.

[2] Q: And is that roughly the date that all [3] the files were shipped to Phila-del-lphia?

[4] A: Yes.

[5] Q: Now the records that you kept when [6] GEMGroup administered the Plan, were they records —

[7] If I wanted to look up, for example, [8] Alan Barr, would he have a separate file?

[9] A: Yes. Every individual has separate [10] files.

[11] Q: So any individual who makes any kind of [12] application for benefits, the first time they make an [13] application a file is opened?

[14] A: Correct.

[15] Q: Is that something that you do? Is that [16] something somebody else does?

[17] A: Something that I do.

[18] Q: Now in some of the documents provided to [19] me there was reference to a contact log. Do you know [20] what that is?

[21] A: A contact log?

[22] Q: Yeah.

[23] A: No.

[24] Q: If a Plan member contacts GEM-Group

---

Page 10

[1] either by phone or by mail or in person, [2] is any record made of that contact?

[3] A: By mail? Yes.

[4] Q: And what kind of record is made?

[5] A: Usually if there's correspondence a [6] member is sending in, that is placed in their file.

[7] Q: How about phone calls?

[8] A: No phone calls.

[9] Q: Records are not kept of phone calls?

[10] A: No, unless it's — no.

[11] Q: Okay. I want to show you —

[12] MR. BERNSTEIN: Can we have this marked [13] as Garnett No. 1.

[14] (Deposition Exhibit Garnett No. 1 marked [15] for identification).

[16] BY MR. BERNSTEIN:

[17] Q: Miss Garnett, I'm showing you what has [18] been marked as Garnett Exhibit 1 and the first page, [19] it says Exhibit 3. Take a few minutes and look [20] through that document and tell me if you've ever seen [21] that before.

---

[22] A: This is the Plan document ex-[hibits.

[23] Q: Now Garnett Exhibit 1 that you're [24] looking at, is that the official Pension and Annuity

---

Page 11

[1] Plan for Carpenters Local 626?

[2] MR. CPREK: Objection.

[3] BY MR. BERNSTEIN:

[4] Q: If you know.

[5] MR. CPREK: How about in her [6] understanding?

[7] MR. BERNSTEIN: All right.

[8] THE WITNESS: To my understanding?

[9] BY MR. BERNSTEIN:

[10] Q: Yeah. To your understanding.

[11] MR. CPREK: It's what you under-stand.

[12] THE WITNESS: Yeah. Like, this sect-ion [13] (indicating) —

[14] BY MR. BERNSTEIN:

[15] Q: That Exhibit includes amend-ments.

[16] A: Some of these are not even signed.

[17] Q: If there's anything you're not fam-iliar [18] with —

[19] A: Yeah. Some of it I'm not familiar with.

[20] Q: Let me ask you this: Are you familiar [21] with the main document which consists of a Table of [22] Contents and 29 numbered pages?

[23] A: Yes. Yes.

[24] Q: We'll refer to that, the cover sheet,

---

Page 12

[1] Table of Contents and Pages 1 through 29 for now as —[2] maybe we can revise and just put the others, put this [3] (indicating) aside, and just refer to that part of the [4] document as Garnett No. 1.

[5] MR. CPREK: So you're limiting Ex-hibit 1 [6] to the Table of Contents and the 29 pages?

[7] MR. BERNSTEIN: The cover page, T-able of [8] Contents and 29 pages.

[9] BY MR. BERNSTEIN:

[10] Q: Is this the document that you would have [11] looked to if any ques-tions arose concerning how the [12] Local 626 Plan was to be administered?

[13] A: Yes.

[14] Q: Are there any other documents that you [15] would look to other than Garnett No. 1?

[16] A: Well, Garnett No. 1 is the main document [17] we follow by with the Local because that's the Plan.

[18] Q: Are there any other documents —

[19] A: And any amendments they have.

---

Page 13

[20] Q: — that you would rely on? [21] Now are you familiar with the [22] amendments —

[23] A: Yes.

[24] Q: — that may have been adopted?

---

Page 13

[1] Now the amendments, at least as I [2] understand, are —

[3] MR. BERNSTEIN: We can have this marked [4] as Garnett No. 2.

[5] (Deposition Exhibit Garnett No. 2 marked [6] for identification).

[7] BY MR. BERNSTEIN:

[8] Q: Do you want to look through the [9] amendments to see if there's any you're not familiar [10] with.

[11] A: Yeah, they are.

[12] Q: Okay. All right. [13] So you are familiar with all the [14] documents contained in Garnett No. 2, or you've seen [15] them before?

[16] A: Yeah. I seen 'em.

[17] Q: Now are there any other doc-uments other [18] than the Exhibit 1 and Exhibit 2 that you customarily [19] would rely on in carrying out your job duties as an [20] administrator?

[21] A: Yeah. I rely on both of them actually [22] because the amendments are — yes.

[23] Q: Is there anything else?

[24] A: The Summary Plan Description.

---

Page 14

[1] Q: As I understand it —

[2] MR. BERNSTEIN: Let's have this mar-ked [3] as Exhibit 3, Garnett No. 3.

[4] (Deposition Exhibit Garnett No. 3 marked [5] for identification).

[6] BY MR. BERNSTEIN:

[7] Q: After the page marked "Exhibit 1" there [8] is a cover page entitled Summ-ary Plan Description - [9] Active Employ-ees - 2001 Version. Do you see that?

[10] A: Uh-huh.

[11] Q: Is that the Summary Plan Des-cription [12] that was just referred to?

[13] A: Yes.

[14] Q: What is your understanding of the [15] difference, if any, between Exhibit No. 1 and Exhibit [16] No. 3?

[17] A: Exhibit No. 1 is basically the laws and [18] the rules. Exhibit No. 3 is just a summary of the [19] Plan. That's what it is, a summary of the Plan, so [20] it's the summary of this Plan.

[21] Q: And is the Plan Summary some-thing that's [22] required under the fede-ral pension laws?

[23] A: I don't know.

[24] Q: You don't know. Okay.

---

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

Page 15

[1] Do you know whether either one or both [2] of those documents are distributed to Plan [3] beneficiaries?

[4] A: When you say beneficiaries, are you [5] talking about —

[6] Q: In other words, somebody who is a [7] potential pension applicant, disability applicant, [8] member of the union.

[9] A: They receive theirs. Yes.

[10] Q: Do they receive both documents or just [11] one or the other?

[12] A: They will receive the Summary Plan [13] Description.

[14] Q: Okay. Do they usually receive the Plan [15] itself as far as you know?

[16] A: No.

[17] Q: If a plan union member, beneficiary, [18] calls and says I'd like to have a copy of the Plan, [19] that would be sent to them?

[20] A: Yes.

[21] MR. BERNSTEIN: Have this marked as No. [22] 4.

[23] (Deposition Exhibit Garnett No. 4 marked [24] for identification).

Page 16

[1] BY MR. BERNSTEIN:

[2] Q: Miss Garnett, I'm showing you what's [3] been marked as Garnett Exhibit No. 4 and my question [4] is, have you ever seen that document before? I think [5] the contents are listed on the cover page, if that [6] helps you.

[7] A: No.

[8] Q: Okay. Now going back to Exhibit No. 1, [9] I want you to take a look at Section 5.01 which is I [10] believe on Page 14. And do you see that?

[11] A: Uh-huh.

[12] Q: Could you just read that to yourself [13] just to refresh your recollection.

[14] A: (Witness complies). Okay.

[15] Q: Okay?

[16] A: Okay.

[17] Q: Now there is a sentence in there that [18] says, quote, "Payment will not otherwise be made —" [19] the heading is General Conditions. "Payment will not [20] otherwise be made until a complete application is [21] filed or before retirement, separation from service, [22] death, disability or termination of the Plan unless [23] required by law."

[24] Now as I understand it this is the

Page 17

[1] paragraph that requires someone who is seeking [2] benefits to file an application; is that correct?

[3] A: Completed application. Yes.

[4] Q: And unless an application is filed a

[5] file doesn't get opened —

[6] A: Basically.

[7] Q: — and nothing happens. [8] In other words, if somebody calls up and [9] says I'm going to retire in three months, I want to [10] put in for my pension, what would you do?

[11] A: I would send them an application.

[12] Q: And if someone were to call up and say I [13] can't work any longer, I want to file for a disability [14] benefit, what would you do?

[15] A: I'd send them an application.

[16] Q: And let's talk about disability benefits [17] now. On Section 4.10 which is on Page 11, would it be [18] fair to say that the first paragraph there where it [19] says, quote, under 4:10 "An active participant may [20] retire after a disability which causes him to cease [21] work in covered employment and termination of [22] sickness or disability benefits from an employee [23] welfare benefit plan of an employer other than [24] worker's compensation," is that the definition of disability —

Page 18

[1] MR. CPREK: To the best of her [2] understanding.

[3] MR. BERNSTEIN: According to your [4] understanding.

[5] MR. CPREK: You can ask her her [6] understanding. She has no authority to interpret the [7] plan.

[8] THE WITNESS: To my understanding —

[9] MR. BERNSTEIN: I'll withdraw the [10] question.

[11] THE WITNESS: Thank you.

[12] BY MR. BERNSTEIN:

[13] Q: Let's talk about applications. And I'm [14] going —

[15] MR. BERNSTEIN: Can we have this marked [16] as an exhibit.

[17] (Deposition Exhibit Garnett No. 5 marked [18] for identification).

[19] BY MR. BERNSTEIN:

[20] Q: What I'm showing you is a completed [21] application that was apparently filled out by an Alan [22] Barr.

[23] A: Okay.

[24] Q: Now my first question is, is that the

Page 19

[1] application form that is customarily employed by [2] GEMGroup for Local 626 Pension Fund? I know it looks [3] like there's a Page 3 missing —

[4] A: Yeah, it is. There's a Page 3 missing.

[5] Q: — but that's what we got.

[6] MR. CPREK: I believe it's — there's an [7] instruction sheet that somehow didn't

get copied. [8] This is the file copy.

[9] MR. BERNSTEIN: Okay.

[10] MR. BERNSTEIN:

[11] Q: But other than perhaps a missing Page 3, [12] is this the application form that was used —

[13] A: Yes.

[14] Q: — by GEMGroup? [15] Now on the first page there's a Section [16] 8 entitled Disability Pension and apparently in [17] looking at the form there are two types of disability [18] pensions; correct?

[19] A: That's correct.

[20] Q: There's a Disability A and Disability B; [21] correct?

[22] A: That's correct.

[23] Q: Now as I read this a person is entitled [24] to a Disability A Pension if they qualify for a Social

Page 20

[1] Security Disability award and are totally and [2] permanently disabled.

[3] A: No. Only if they — yeah. If they [4] qualify for Social Security award. Yes.

[5] Q: So if someone were to get this [6] application and had a question about whether they [7] would qualify or not, who would that question be [8] directed to?

[9] A: For Social Security award? They would [10] contact the Social Security Administration.

[11] Q: No. Let's say I'm a union member —

[12] A: Okay.

[13] Q: — and I'm filling out this application [14] and I haven't gotten a Social Security award yet and I [15] call GEMGroup. That would be referred to you?

[16] A: Yes.

[17] Q: And if the question was what will happen [18] to my union pension if I don't have a Social Security [19] award, what would your answer have been?

[20] A: I would say if you're disabled you can [21] go out on occupational. You can apply for [22] occupational disability.

[23] Q: And that's —

[24] A: That's Part B.

Page 21

[1] Q: Part B?

[2] A: Yes.

[3] Q: So Part B, the Disability B application, [4] would cover someone who has not received a Social [5] Security award.

[6] A: Exactly.

[7] Q: Now at the top of Page 2 it looks like [8] the conditions for getting a Disability B Pension [9] before age 65 is that you have to be unable to work in [10] any substantial gainful employment, and

it also says [11] that "to the sole discretion of the Trustees and [12] option of the Trustees."

[13] Now my first question is, have you ever [14] processed a Disability B application?

[15] A: Yes.

[16] Q: Okay. And what happens if someone does [17] not apply for Disability A but only applies for a [18] Disability B Pension? How is that processed?

[19] A: That's processed by receiving a medical [20] record release form from the participant. They sign, [21] Also we can get their medical records. Medical [22] records will then be brought towards the Board with [23] the application and then when it goes to the Board of [24] Trustees, I don't know.

### Page 22

[1] Q: So you get whatever medical records —

[2] A: From the doctors that the participant [3] provides.

[4] Q: Okay. And those are all put in a packet [5] or something?

[6] A: All in their file.

[7] Q: And that packet is sent —

[8] A: The whole file.

[9] Q: — to the Trustees?

[10] A: Yes.

[11] Q: And do you know what the Trustees do [12] with it?

[13] A: No.

[14] Q: If an application under Disability B is [15] approved, do you find out about that?

[16] A: Yes. The file will be returned back to [17] me telling me it's been OK'd.

[18] Q: If you know, does the Plan Trustees [19] employ any medical or occupational professionals to [20] review the packet that the applicant sends in support [21] of his Disability B claim?

[22] A: I don't know.

[23] Q: Would that be something I suppose the [24] Trustees would know?

### Page 23

[1] A: Yes.

[2] Q: Now let's go back and talk about the [3] Disability A Pension. When a person inquires about a [4] pension, was it your practice to typically tell them [5] there are two kinds of disability pensions, A and B?

[6] A: I would first ask them if they have a [7] Social Security award.

[8] Q: Now in your job as pension analyst were [9] you given any kind of training —

[10] A: Yes.

[11] Q: — as to what kind of questions to

ask [12] when people call up and inquire?

[13] A: Yes.

[14] Q: What kind of training did you get?

[15] A: Before Miss Kelly retired she gave me [16] almost a month's worth of training and I basically sat [17] in. She told me how to deal with certain people, [18] certain locals, certain questions.

[19] Q: Did you develop or were you given or [20] you have some kind of checklist of things to ask [21] disability pension applicants?

[22] A: She just basically — I wrote some [23] notes. That's it.

[24] Q: So all pretty much in your head —

### Page 24

[1] A: Yeah.

[2] Q: — fair to say? Okay. All right. [3] Hypothetically, someone calls up and [4] inquires about a disability pension and, as I [5] understand your testimony, the first thing you ask is, [6] have you gotten a Social Security award —

[7] A: Yes.

[8] Q: — correct?

[9] A: Yes.

[10] Q: And if they say yes, what do you say?

[11] A: I will say okay, I'm sending the packet [12] out. Please complete the application and attach your [13] Social Security award with it.

[14] Q: Do you ask the person who's calling to [15] send you a copy of their Social Security award with [16] the application?

[17] A: Yes. Please attach your Social Security [18] award.

[19] Q: And that's returned?

[20] A: That's returned.

[21] Q: And I assume from reading this that if [22] you qualify for Social Security, if you've gotten a [23] Social Security disability award, you're gonna get [24] almost automatically —

### Page 25

[1] A: Your pension.

[2] Q: — a Disability A Pension?

[3] A: (No response).

[4] Q: If you know.

[5] A: Yeah. I don't —

[6] Q: Let me ask you this then: Is there [7] anything else that an applicant has to do to qualify [8] for a Disability A Pension other than fill out the [9] application form and provide evidence of a Social [10] Security award?

[11] A: They also have to provide a medical [12] records release form, too. Everyone fills out a [13] medical record release form for disability pension.

[14] Q: So you don't simply just rely on Social [15] Security's determination.

[16] A: No.

[17] Q: When a person applying for a Disability [18] A Pension fills out the form, sends you the medical [19] records and provides evidence of a Social Security [20] award, what happens next?

[21] A: Goes to the Board of Trustees.

[22] Q: And they're the ones who review this and [23] either approve or disaprove; correct?

[24] A: Correct.

### Page 26

[1] Q: Are you familiar with the Social [2] Security definition of "disability"?

[3] A: No.

[4] Q: Going back to my hypothetical, if an [5] individual called up and was directed to you and the [6] first question you ask him is, have you gotten your [7] Social Security Disability award and he said no, what [8] would you tell them?

[9] A: I would say I will send you an [10] application. Please complete the medical release [11] forms and return the application back.

[12] Q: Is there any way that application would [13] be submitted for approval to the Trustees until or [14] before a Social Security award was received?

[15] A: Yes. That's the — yes.

[16] Q: So let me make sure I understand it. If [17] they say I haven't gotten an award, you send them an [18] application and —

[19] A: Medical release forms.

[20] Q: — the medical release forms —

[21] A: Uh-huh.

[22] Q: — and if that were sent back without a [23] Social Security award letter, what would happen?

[24] A: I would get the medical release forms,

### Page 27

[1] ask the doctors for the medical records, and submit it [2] to the Board of Trustees.

[3] Q: You don't know what would happen to it [4] after that?

[5] A: If they approve it — if they deny it, [6] they will get a denial letter for appeal. If they [7] approve it, they have a number of years to get a [8] Social Security award.

[9] Q: Would one of the grounds for denying —[10] at least to your understanding, would it be a ground [11] to deny a Disability A Pension application due to the [12] fact that there was no Social Security award?

[13] A: It's the Trustees' —

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 160

[14] Q: That's up to the Trustees?

[15] A: Yes.

[16] Q: With respect to members of Local 626, do [17] you have any knowledge of processing applications for [18] Disability A Pensions that were not accompanied by [19] Social Security awards?

[20] A: Disability A Pension has to have a [21] Social Security — if they're applying for Disability [22] A, it's requiring a Social Security award.

[23] Q: Well, that goes back to my last [24] question. Let's say you get a completed application

Page 28

[1] with the release signed but no Social Security award.

[2] A: That's Disability B. That's a [5] occupational pension. They're applying for two [4] different types, A and B.

[5] Q: All right. So what I hear you saying [6] is, if you don't submit a Social Security award, you [7] can't get a Disability A Pension but you might get a [8] Disability B Pension —

[9] A: Exactly.

[10] Q: — is that correct?

[11] A: That's correct.

[12] Q: And that's why you would refer that [13] application either with or without —

[14] A: (Witness moves head up and down).

[15] Q: — the Social Security award.

[16] A: Uh-huh. In B, it's giving the [17] participant time to get a Social Security award.

[18] Q: If applicants ask you questions about [19] well, what's the difference between an A — let's say [20] I get this form in the mail and I'm looking at it and [21] I want to know what the difference between an A award [22] and a B award is. Were you instructed to explain that [23] or instructed not to explain that or what would you [24] say?

Page 29

[1] A: I would basically say with the A award [2] you already have your Social Security award, and with [3] the B you have to submit medical records and it's a [4] Trustee decision. Both are Trustee decisions.

[5] Q: Did you ever tell an applicant it's [6] easier to get approved if you have —

[7] A: No.

[8] Q: — a Social Security award?

[9] A: No.

[10] Q: Or did you ever tell an applicant it's [11] more difficult to get approved if you don't have a [12] Social Security award?

[13] A: No.

[14] Q: Did you ever tell an applicant to hang [15] on to their application until they get a Social [16] Security award?

[17] A: No.

[18] MR. BERNSTEIN: Can I have this marked [19] as No. 6.

[20] (Deposition Exhibit Garnett No. 6 marked [21] for identification.)

[22] BY MR. BERNSTEIN:

[23] Q: I'm showing you what's been marked as [24] Garnett No. 6 and ask you if you've ever seen that

Page 30

[1] document before.

[2] A: Yes, I have.

[3] Q: And, first, can you tell me [4] approximately when you received or you became aware of [5] this document.

[6] A: Approximately the date of the letter.

[7] Q: Now on Page 2 of that letter there is a [8] bullet point headed Pension Starting Dates. Do you [9] see that?

[10] A: Yes.

[11] Q: And it says, quote, "The Trustees have [12] also adopted clarifying language that provides that no [13] disability pension, special early retirement pension [14] or early retirement pension will be paid for any month [15] before you actually file an application with the Local [16] 626 Plan office. The Trustees especially want to [17] emphasize the Plan rules on disability pensions," and [18] then there are three points under that.

[19] Was there an amendment adopted to a Plan [20] to clarify in any way what's stated in that bullet [21] point headed Pension Starting Dates, if you know?

[22] A: I don't know.

[23] Q: Okay. Do you have any knowledge as to [24] why this subject needed clarification?

Page 31

[1] A: No.

[2] MR. BERNSTEIN: I believe that's all I [3] have.

[4] MR. CPREK: No questions.

[5] (Deposition concluded at or about [7] 9:55 a.m.)

[8] (Deposition transcript was [9] presented to the witness for reading and [10] signing.)

Page 32

STATE OF DELAWARE    )
                     : SS.
NEW CASTLE COUNTY     )
    CERTIFICATION
I, CAROL DISERAFINO, Professional Reporter and Notary Public, do hereby certify that the foregoing deposition of JANE'T GARNETT was held before

me, pursuant to notice, at the time and place indicated; that said witness was by me duly sworn to tell the truth, the whole truth, and nothing but the truth; that the testimony of said witness was correctly recorded in machine shorthand by me and thereafter transcribed under my supervision; and that I am neither of counsel nor kin to any party in said action nor interested in the outcome thereof.
    I certify that the foregoing transcript was presented to the witness for reading and signing.
    WITNESS my hand at Wilmington, Delaware, this 17th day of July, 2005.
    CAROL DISERAFINO,
    COURT REPORTER-NOTARY PUBLIC
    Cert. No. 182-PS

# EXHIBIT 3



149425 1                              10



# CARPENTERS LOCAL 626 PENSION & ANNUITY PLAN

As Restated, Effective May 1, 1999

Pursuant to prior resolution and as evidenced by our signatures, the undersigned Trustees of the Local No. 626 United Brotherhood of Carpenters and Joiners of America Pension Fund adopt the attached restated plan reflecting the plan as restated, effective May 1, 1994, amendments signed on September 12, 1995, December 12, 1995, September 19, 1996, May 15, 1997, August 14, 1997, February 26, 1998 and November 10, 1998, conforming and stylistic changes in Sections 1.09, 3.03, 3.05, 3.06, 3.07, 4.01 - 4.16, 5.01, 5.05, 5.06, 5.07, 5.09, 5.12, 6.01 - 6.07 and the Definitions of Eligibility Years (deleted), Early Retirement Date, Future Service Benefit, Normal Retirement Date, PBGC Assumptions (deleted), Severance Benefit and Vesting Years, and amendments adopted at meetings on February 26, 1998, November 10, 1998 and May 17, 1999.

UNION TRUSTEES

_____
Joseph P. Durham

_____
Michael A. Stipo

_____
Michael J. McCaffery

MANAGEMENT TRUSTEES

_____
Blaine S. Streeper

_____
Michael J. Healy

_____
E. Andrew DiSabatino, Jr.

Signed on:____May 17____, 1999

4096.3



# TABLE OF CONTENTS

Page

### ARTICLE I - ADMINISTRATION

1.01  Establishment and Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.02  Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.03  Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.04  Consultants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.05  Delegation and Allocation of Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.06  Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.07  Limitation of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.08  Indemnification of Fiduciaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.09  Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### ARTICLE 2 - AMENDMENT AND TERMINATION

2.01  Plan Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2.02  Protected Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2.03  Merger or Transfer of Plan Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2.04  Termination of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2.05  Termination Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2.06  Effect of Plan Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.07  Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.08  Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.09  Choice of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.10  Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

### ARTICLE 3 - ELIGIBILITY

3.01  Eligible Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
3.02  Entry Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
3.03  Active Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
3.04  Vested Participant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
3.05  Hours of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.06  One-Year Break-in-Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.07  Grace Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.08  Permanent Break-in-Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.09  Partial Cashout Repayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4096.3

i



BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

## ARTICLE 4 - BENEFITS

4.01    Normal Retirement Age . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
4.02    Normal Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
4.03    Past Service Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
4.04    Pre-ERISA Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
4.05    Post-ERISA Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
4.06    Future Service Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
4.07    Severance Benefit Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
4.08    Special Early Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
4.09    Early Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
4.10    Disability Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
4.11    Severance Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
4.12    Maximum Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
4.13    Top-Heavy Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
4.14    Restricted Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
4.15    Tax Discrimination Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
4.16    Post-Retirement Increases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## ARTICLE 5 - PAYMENT OF BENEFITS

5.01    General Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
5.02    Small Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
5.03    Required Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
5.04    Basic Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
5.05    Optional Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
5.06    Suspension of Early Retirement Benefits . . . . . . . . . . . . . . . . . . . . . . 14
5.07    Suspension of Normal Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . 15
5.08    Suspension Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
5.09    Reemployment Forfeiture Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
5.10    Resumption of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
5.11    Participant Reporting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
5.12    Rollovers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## ARTICLE 6 - SPOUSE AND OTHER BENEFITS

6.01    Joint and Survivor Annuity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
6.02    Joint and Survivor Annuity Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
6.03    Active Ten-Year Participant Spouse Benefits . . . . . . . . . . . . . . . . . . . 19
6.04    Active Participant Death Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
6.05    Vested Participant Spouse Benefits . . . . . . . . . . . . . . . . . . . . . . . . . 19
6.06    Death Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
6.07    Retiree Death Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4096.3                                            ii

6.08    Domestic Relations Orders .................................... 20
6.09    No Assignment of Benefits ................................... 20
6.10    Endorsement of Checks ...................................... 20
6.11    Facility of Payment .......................................... 20

**ARTICLE 7 - CLAIMS PROCEDURE**

7.01    Application ................................................ 22
7.02    Approval or Denial of Claims ................................ 22
7.03    Request for Review .......................................... 22
7.04    Decision on Review .......................................... 22
7.05    Delayed Response ........................................... 22
7.06    Hearings .................................................. 23
7.07    Information ................................................ 23
7.08    Mistaken Facts ............................................. 23
7.09    Finality .................................................. 23

**ARTICLE 8 - FUNDING**

8.01    Funding Policy ............................................. 24
8.02    Employer Contributions ..................................... 24
8.03    Irrevocability ............................................. 24
8.04    Trust for Participants ...................................... 24
8.05    Source of Benefit Payments ................................. 24
8.06    Withdrawal Liability ........................................ 24

**DEFINITIONS** ................................................ 25

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX          PAGE A – 166

## 1999 CARPENTERS 626 PENSION & ANNUITY PLAN          PAGE 1

### ARTICLE 1
### ADMINISTRATION

**1.01 Establishment and Name.** The Trustees establish and continue a pension plan to be known as the Carpenters Local 626 Pension and Annuity Plan.

**1.02 Purpose.** The Plan has been established for the exclusive purpose of providing benefits to participants and their beneficiaries after retirement or separation from service and defraying the reasonable expenses of the Plan and its associated Trust.

**1.03 Plan Administrator.** The Trustees are the administrator and named fiduciary of the Plan. They shall be appointed and removed and supervise the operation of the Plan in accordance with the Plan, Trust Agreement, ERISA and Code. They have and may exercise all powers granted to them under the Trust Agreement with respect to a plan of benefits or which are otherwise necessary or appropriate to the performance of their duties under law.

**1.04 Consultants.** The Trustees may engage managers, accountants, actuaries, investment consultants, lawyers, medical and clerical consultants or other service providers to aid in establishing, administering, amending or terminating the Plan. The fees charged by any service providers shall be paid from Plan assets.

**1.05 Delegation and Allocation of Responsibility.** The Trustees may delegate any duty or power with respect to the Plan to others or allocate duties among themselves by written direction or other action of the Trustees, including contract principles not inconsistent with ERISA.

**1.06 Reliance.** The Trustees may request information from an Employer, Employee and others as provided in a Collective Bargaining Agreement, the Trust Agreement or by law. The Trustees may rely on information from an Employer, Employee or claimant and the advice, report or other work product of an actuary, accountant, lawyer, investment adviser or other professional or expert engaged by the Plan in the performance of their duties.

**1.07 Limitation of Liability.** The Trustees shall not be liable to anyone for acts or omissions in the administration of the Plan except as required by law. A delegation or allocation of duties or appointment of an Investment Manager shall relieve the uninvolved Trustees of responsibility and liability for matters delegated or allocated to others to the maximum extent permitted by law.

**1.08 Indemnification of Fiduciaries.** The Plan shall indemnify the Trustees against any loss or liability by reason of their acts or omissions in administration of the Plan to the maximum extent allowed by law. The Trustees may purchase insurance to cover the potential liability of a Trustee or to cover liability or losses occurring by reason of an act or omission of the Trustees or their advisers or delegees subject to law. The Trustees may use Plan assets to provide indemnity to other parties, subject to law.

4096.3

**2.06 Effect of Plan Termination.** Termination of the Plan shall not terminate the Trust Agreement, the obligation to pay benefits accrued to the date of termination and administrative expenses of the Plan, payment and collection of withdrawal liability or other responsibilities, duties or services required by law or necessary or appropriate for the terminated Plan or continuing Trust.

**2.07 Notices.** Any notice under the Plan shall be in writing and sufficient if properly deposited for first class mail delivery to the Plan office. Any notice from the Plan shall be in writing and sufficient if deposited for first class mail delivery to the most recent address of the person or organization in the records of the Trust or Plan.

**2.08 Construction.** The Trust Agreement and Plan shall be construed to maintain qualified status under the Code and relative simplicity of language. The following rules illustrate this principle.

(a) The use of any word or phrase includes all related terms or synonyms fairly required by context.

(b) The definition of a noun defines the corresponding verb, adjective and adverb.

(c) A masculine, feminine or neuter pronoun includes the other genders.

(d) The use of the present verb tense includes all other tenses.

(e) The singular includes the plural and the plural the singular.

4096.3

(f) Statutory Code and ERISA terms have the same meaning as the statute, unless otherwise defined.

(g) "Or" includes "and," "the" includes "a" or "an" and the verb "to include" and variants are not limiting.

(h) The Trust Agreement, Plan and related documents shall be construed as a consistent set of documents with differences of language considered matters of style rather than an indication of different legal obligations absent a change in governing law or other clear indication of an intended substantive difference.

**2.09 Choice of Law.** The Plan shall be administered and construed under the internal laws of Delaware when reference to state law is necessary or appropriate.

**2.10 Severability.** If any part of the Plan is illegal, unenforceable or impracticable, it shall be modified or removed in the manner most consistent with the purpose of the Trust Agreement and Plan. The remainder of the Trust Agreement and Plan shall continue in full force and effect.

## ARTICLE 4
## BENEFITS

**4.01  Normal Retirement Age.** A Participant may retire at the later of age 65 or the fifth (5th) anniversary of his most recent Entry Date with his vested Normal Retirement Benefit.

**4.02  Normal Retirement Benefit.** The benefit payable beginning at the Normal Retirement Date of a Participant in the Basic Form is a monthly payment under the following rules.

(a)  With respect to an Active Participant and any Participant with a Disability on May 1, 1993 or an Active Participant on May 1, 1996, the payment is the sum of his accrued Past Service Benefit, Pre-ERISA Benefit, Post-ERISA Benefit, Future Service Benefit and the Actuarial Equivalent of the Severance Benefit Account.

(b)  With respect to any other Employee, Participant or Beneficiary, the payment equals his accrued benefit (including any Severance Benefit Account, early retirement benefit, retirement-type subsidy or optional form) calculated under the prior provisions of the Plan with respect to Hours of Service in Covered Employment before May 1, 1993 and a Post-ERISA Benefit, Future Service Benefit and Severance Benefit Account for Hours of Service in Covered Employment after April 30, 1993 or, if lower, a benefit calculated under Section 4.02(a) for all Service.

(c)  The accrued benefit (including any Severance Benefit Account, early retirement benefit, retirement-type subsidy or optional form) of a Participant

shall never be less than the accrued benefit under prior Plan provisions for Service to April 30, 1993. The monthly minimum shall continue to increase (without duplication) by three and one-tenth cents (3.1¢) for subsequent Hours of Service in Covered Employment and the Actuarial Equivalent of subsequent credits to the Severance Benefit Account.

**4.03  Past Service Benefit.** A Participant is eligible for a past service benefit if his most recent initiation or reinitiation in the Union occurred before November 2, 1964 and a contribution was made to the Plan for his work in the 1965 Plan Year.

(a)  For Active Participants on May 1, 1993 and other Participants described in Section 1.09(b) in or after Plan Year 1993, the monthly payment equals $20 for each year (to the nearest year) from his initiation or reinitiation date in the Union to April 30, 1965 up to a maximum of 15 years.

(b)  For Active Participants on May 1, 1996 and other Participants described in Section 1.09(c) in or after Plan Year 1996, the monthly payment equals $21 for each year of service (to the nearest year) from his initiation or reinitiation in the Union to April 30, 1965 up to a maximum of 15 years.

**4.04  Pre-ERISA Benefit.** The benefit credited for the Plan Years 1965 to 1974 is based on time for which contributions were paid to the Plan for work by an Eligible Employee in a Plan Year.

(a)  For Active Participants on May 1, 1993 and other Participants described in

4096.3

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX

PAGE A – 169

## 1999 CARPENTERS 626 PENSION & ANNUITY PLAN          PAGE 10

the "annuity" or severance contribution rate in the Collective Bargaining Agreement governing contributions.

(b)    The prevailing rates for Covered Employment in the jurisdiction of Union and interest credited for the Plan Year, with annual compounding are shown in the following table.

| Plan Year | Annuity Rate | Interest Rate |
|-----------|--------------|---------------|
| 1989 | 25¢ | 9.0% |
| 1990 | 50¢ | 8.5% |
| 1991 | 65¢ | 8.5% |
| 1992 | 65¢ | 7.5% |
| 1992-1993 | 65¢ | 7.5% |
| 1994 | 65¢ | 6.0% |
| 1995-10/31/96 | 65¢ | 7.5% |

The annuity rate after October 31, 1996 is zero and the interest rate is the rate on one (1) year Treasuries with a constant maturity as of the March 1 preceding the beginning of the Plan Year, plus one percent (1%) rounded down to the nearest one-tenth percent (.1%)

(c)    From November 1, 1996 forward, an "annuity" contribution will only be credited to the extent that amounts paid to the Plan (divided by hours worked) for work by a Participant exceed the hourly Pension Contribution Rate.

**4.08 Special Early Retirement Benefit.** A Participant who has not previously retired and who satisfies the requirements of (a) or (b) may retire once with a special early retirement pension after age 60. The special early retirement benefit stops on any return to

construction work and cannot be reinstated. The special early retirement pension is calculated as provided in (c) - (f).

(a)    An Active Participant at or after age 60 with fifteen (15) or more Benefit Years is eligible to retire with a special early retirement benefit.

(b)    A Participant with a Separation Date at or after age 50 with twenty-five (25) or more Benefit Years is eligible for a special early retirement benefit at or after age 60.

(c)  The monthly benefit until the earlier of death or the month the Participant reaches age 62 equals his Normal Retirement Benefit and a supplement equal to his Normal Retirement Benefit.

(d)    The monthly benefit from the month after the Participant reaches age 62 until the earlier of death or the month a Participant reaches age 65 equals his Normal Retirement Benefit plus one-half (½) of the supplement payable before age 62.

(e)    The monthly benefit from the month after age 65 equals the Normal Retirement Benefit.

(f)  The supplement cannot exceed the Past Service Benefit (calculated at $20 per year of past service credit) plus the product of four cents (4¢) multiplied by hours for which contributions were paid to the Plan for work by a Participant in Plan Years 1965 to 1974 and Hours of Service in Covered Employment in Plan Years after 1974.

4096.3

**4.09 Early Retirement Benefit.** A Participant may retire after he has reached age fifty-five (55) and accumulated at least ten (10) Benefit Years.

(a) With respect to a Participant with a Separation Date after age 50 and the completion of twenty-five (25) or more Benefit Years who is an Active Participant on or after May 1, 1997 and retires on or after June 1, 1997, the early retirement pension is a monthly amount equal to his Normal Retirement Benefit.

(b) With respect to a Participant who is an Active Participant immediately before his Annuity Starting Date but does not qualify for benefits under (a), the early retirement pension is a monthly amount equal to his Normal Retirement Benefit less one-half percent (½%) for each full month between his Annuity Starting Date and age 62.

(c) With respect to any other Participant, the early retirement pension is a monthly amount equal to his Normal Retirement Benefit less one-half percent (½%) for each full month between the Annuity Starting Date and his Normal Retirement Date.

**4.10 Disability Benefit.** An Active Participant may retire after a Disability which causes him to cease work in Covered Employment and termination of sickness or disability benefits from an employee welfare benefit plan of an Employer other than workers compensation.

(a) The monthly benefit equals the greater of $100 or his Normal Retirement Benefit and is payable until recovery or termination of Disability as defined in the Plan based on the Benefit Years of a Participant or the duration of Disability Benefits. A supplement of $75 a month is payable until the Participant is eligible for Medicare benefits.

(b) A Participant may elect an Early Retirement Benefit (but not a Special Early Retirement Benefit) if disability benefits terminate before his Normal Retirement Date. If Disability is continuous to the Normal Retirement Date of a Vested Participant, the benefit shall continue as if the retiree then had elected a Normal Retirement Benefit to be paid in the form selected for disability benefits except as provided in (c).

(c) The sixty-six (66) month guaranty in the Basic Form will be reduced by the number of months of payment of disability benefits. This rule will apply with or without recovery or termination of Disability before the Normal Retirement Date of a Participant.

**4.11 Severance Benefit.** A Participant may receive a distribution of the Actuarial Equivalent of his vested Severance Benefit Account in the Normal Form after an absence from construction work (other than supervision) for two Plan Years or upon earlier Retirement.

**4.12 Maximum Benefits.** The accumulated benefit with respect to any Participant under the Plan shall not exceed the Defined Benefit Plan Limit or, before January 1, 2000, the Combined Plan Limit for a calendar year treating all Employers as a single employer and using income reportable on Form W-2 by the Employers as compensation. The

4096.3

## 1999 CARPENTERS 626 PENSION & ANNUITY PLAN          PAGE 14

### ARTICLE 5
### PAYMENT OF BENEFITS

**5.01  General Conditions.**  Benefits will only be paid to Vested Participants and their Spouses and Beneficiaries. Payment will not otherwise be made until a complete application is filed or before Retirement, separation from service, death, Disability or termination of the Plan unless required by law. Payment of the accrued benefit (and any subsidies or ancillary benefits) to or with respect to a Participant under the Plan shall not be duplicated. No more than one form of payment or benefit shall be paid for any one month notwithstanding the occurrence of multiple retirement events or the existence of multiple payment options in or before the month.

**5.02  Small Benefits.**  The Trustees shall pay any benefit with an Actuarial Equivalent of $3,500 or less in a lump sum without the consent of a Participant or Spouse.

**5.03  Required Payments.**  Payment of benefits must begin by April 1 after the close of the calendar year in which a Vested Participant attains age 70½ in the Normal Form. Absent the consent of a Participant, payment of the Normal Retirement Benefit will begin in the Normal Form not later than the sixtieth (60th) day after the close of the calendar year including the latest of his 65th birthday, the tenth (10th) anniversary of his most recent Entry Date or permanent separation from Industry Service.

**5.04  Basic Form.**  The basic form of benefit payment under the Plan is a monthly single life annuity beginning on the first day of the month after Retirement or, if earlier, Normal Retirement Age, for the life of the Participant with a guarantee of sixty-six (66) monthly payments. The basic form is the normal form of payment for an unmarried Participant.

**5.05  Optional Forms.**  A Participant or Spouse may choose an optional form of payment.

(a)  An unmarried Participant may choose a single life annuity in place of the Basic Form (and its associated death benefits) or a lump sum payment of the Severance Benefit Account in place of monthly payments.

(b)  With the consent of his Spouse, a married Participant may choose a single life annuity or the Basic Form in place of the Joint and Survivor Annuity or a lump sum payment of the Severance Benefit Account in place of monthly payments.

(c)  A Spouse may choose a lump sum payment of the Severance Benefit Account or the Actuarial Equivalent of monthly survivor benefits after the death of an Employee in place of monthly payments.

**5.06  Suspension of Early Retirement Benefits.**  Payment of any benefit other than the Normal Retirement Benefit will stop at the beginning of the first month in which an Employee is employed in construction work.

(a)  Any overpayment of benefits before discovery of the reemployment may be recovered from future benefit payments in any fashion which does not impair the Normal Retirement Benefit.

4096.3

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 172

(b) A Special Early Retirement Benefit is permanently lost on any return to construction work and will not be reinstated.

(c) An Early Retirement Benefit or Disability Benefit may be paid or resume after renewed Retirement or new or continuing Disability.

**5.07 Suspension of Normal Retirement Benefit.** Payment of a Normal Retirement Benefit will be suspended and forfeited for each calendar month in which a Participant has forty-eight (48) or more Hours of Service in Industry Service in the Delaware Area. The Plan may presume that the Participant has worked forty-eight (48) hours on learning of any work in Industry Service in the Delaware Area.

**5.08 Suspension Notice.** A Normal Retirement Benefit payment will not be withheld due to reemployment in Industry Service unless the Plan notifies the Participant of the suspension during the first month in which the Plan withholds payment by personal delivery or first class mail. The notification must explain the specific reasons for the suspension, the Plan provisions relating to the suspension of payments, the procedures for review of the suspension of benefits as a denied claim for benefits, the procedures to apply for resumption of benefits on renewed retirement and, as soon as practicable, the periods of Industry Service and amount and procedure for recovery of any overpayments against future benefits and include a copy of relevant Plan provisions and reference to 29 C.F.R. §2530.203-3.

4096.3

**5.09 Reemployment Forfeiture Amount.** The amount of Normal Retirement Benefit forfeited on reemployment in Industry Service varies with the type of payment.

(a) In the case of benefits payable periodically for a lifetime, the forfeiture is equal to the benefit payable for each month of suspension.

(b) In the case of a benefit payable in a form other than a life annuity, the forfeiture equals the lesser of the amount of benefits payable as a single life annuity under the Plan since actual retirement, or the actual amount paid or scheduled to be paid for the month of suspension.

(c) Any benefits paid on a non-monthly basis will be converted to the Actuarial Equivalent of monthly payments to determine the amount of lost benefits.

(d) Suspended payments are lost forever. They will nonetheless be treated as paid to the Participant in computing benefit payments which begin or resume at a later date.

(e) A Top-Heavy Minimum Benefit will not be forfeited.

(f) The Trustees may temporarily waive suspension of benefits on the basis of considerations relevant to the purposes of the suspension rules by action under the Trust Agreement. The waiver may be limited to a class or group of retirees or a class or group of work without affecting the enforcement of suspension rules in other cases.

## ARTICLE 7
## CLAIMS PROCEDURE

**7.01  Application.**  Any person who believes he is eligible for a benefit under the Plan must file a written application for the benefit with the Plan office.  No one has a right to payment of benefits before submission of an application and supporting information in the form and manner required by the Trustees.  A claim will not be considered filed in order to start the claims procedure until the claimant has answered all questions, signed the application and provided any information requested on the application form.

**7.02  Approval or Denial of Claims.**  A claimant for benefits shall be notified of approval or disapproval of the claim.

(a)  Notice of approval may be made by payment or otherwise.

(b)  The Plan shall notify the claimant of the complete or partial denial of an application in writing within 90 days of the date the claim was filed.  The notice shall be written in a manner which an average person without pension expertise should be able to understand.

(c)  If special circumstances require additional time for processing the claim, the Plan may extend the time for response by notice to the claimant mailed within the original 90-day period.  The extension shall not exceed 180 days from the date the claim was filed.

(d)  A denial notice shall explain the reason the claim was denied, make specific reference to the pertinent Plan provision upon which the denial is based,

describe any additional material or information necessary for the claim to be honored, explain the need for additional material or information and include a statement that the claimant has a right to file a written request for review of the claim denial for review of the claim denial within 60 days of written notification of denial of the claim.

**7.03  Request for Review.**  A claimant may submit a written request for review by the Trustees at the address on the denial notice or the Plan address in the summary plan description within sixty days of the denial notice or a longer period allowed in a written notice from the Plan.  The claimant or his duly authorized representative may review pertinent documents available to the Plan and submit issues and comments in writing in connection with a request for review.

**7.04  Decision on Review.**  A decision on a request for review ordinarily shall be made by the Trustees at their regular quarterly meeting scheduled at least 30 days after an appeal is received.  If special circumstances require extension of time for processing, a decision may be deferred to the following scheduled quarterly meeting.  Written notice of the extension shall be mailed to the claimant within the original period.  The decision shall be in writing and include specific reasons for the decision and specific references to the Plan.

**7.05  Delayed Response.**  The lack of a timely response by the Plan may be treated as a denial of the claim by the claimant for purposes of exhaustion of remedies.  It shall not entitle the claimant to payment of denied benefits.

4096.3

**7.06 Hearings.** A claimant shall appear in person before the Trustees upon written request. The Trustees may deny an application for failure to appear without prejudice to a new application. A claimant may request a hearing in connection with review of a denial of benefits.

**7.07 Information.** A claimant shall furnish any information, or proof requested by the Plan which is reasonably required to administer the Plan. Failure on the part of a claimant to comply with a request for information or proof within a reasonable period of time and in good faith shall be sufficient ground to deny payment.

**7.08 Mistaken Facts.** The Trustees may take any action they consider necessary or appropriate to correct any overpayment or underpayment resulting from incorrect information received by or communicated to the Plan in good faith or as the consequence of administrative error. The Trustees may adjust any benefit and recover any prior payments, by reduction of future benefits or otherwise, to correct any misstatement of material fact by a claimant.

**7.09 Finality.** An unappealed denial or decision or exercise of discretion by the Trustees on a claim is final and binding. Judicial review shall be limited to the grounds on which an arbitration award may be vacated under the Federal Arbitration Act in Title 9, U.S.C.

4096.J

(b) For each Plan Year beginning after April 30, 1974, an Employee receives a full year of service for 800 or more Hours of Service in Covered Employment and a half year for 400 or more Hours of Service in Covered Employment.

**Code** . . . the Internal Revenue Code of 1986, as amended, also abbreviated as IRC.

**Collective Bargaining Agreement** . . . a collective bargaining or related agreement between the Union and an Employer, including the Trust Agreement, an agreement between the Trustees and an Affiliated Employer or applicable labor-management relations law which obligates an organization to make contributions to the Plan.

**Combined Plan Limit** . . . IRC 415(e).

**Contiguous Service** . . . work for an Employer which precedes or follows Covered Employment with no intervening quit, discharge or retirement.

**Covered Employment** . . . Hours of Service for which contributions are payable to the Plan under a Collective Bargaining Agreement, work under a reciprocal agreement as provided in the reciprocal agreement and military service under IRC 414(u) and prior laws of the United States.

**Death Benefit** . . . Plan 6.06, 6.07.

**Defined Benefit Plan Limit** . . . IRC 415(b).

**Delaware Area** . . . the states of Delaware and Maryland and any other state or metropolitan area in which work for which contributions to the Plan are required is performed on the Annuity Starting Date of a Participant.

**Disability** . . . a disability which causes an Eligible Employee to cease work in Covered Employment and

(a) in the case of an Eligible Employee with less than 10 Benefit Years of Service on the date of the onset of his disability and after sixty (60) monthly payments of a disability pension as to any other Participant, prevents him from engaging in any substantial gainful activity and entitles him to a disability benefit under the Social Security Act, or

(b) with respect to the first sixty (60) months of payment of a disability pension to an Eligible Employee with 10 or more Benefit Years on the date of the onset of his disability, leaves him, in the opinion of a qualified physician selected by the Trustees, unable to perform the principal functions required of a journeyman carpenter in the course of the trade.

**Disability Benefit** . . . Plan 4.10.

**Domestic Relations Order** . . . IRC 414(p)(1)(B).

**Early Retirement Date** . . . the first day of the first month for which an Early Retirement Benefit is payable.

**Early Retirement Benefit** . . . Plan 4.09.

**Eligible Employee** . . . Plan 3.01.

**Employee** . . . a person employed by the Employers for purposes of IRC 414.

4096.3

BARR V. CARPENTERS PENSION PLAN, D DEL 04-1468 KAJ
DEFENDANTS' SUMMARY JUDGMENT APPENDIX                    PAGE A – 176

## 1999 CARPENTERS 626 PENSION & ANNUITY PLAN          PAGE 28

**Post-ERISA Benefit** . . . Plan 4.05.

**Pre-ERISA Benefit** . . . Plan 4.04.

**Qualified Domestic Relations Order** . . . IRC 414(p)(1)(A), (2), (3).

**Restricted Benefits** . . . 26 C.F.R. §1.401(a)(4)-5(b)(3)(iii).

**Restricted Employee** . . . a present or former highly compensated employee who is not excluded from discrimination rules under the Code and regulations and is described in 26 C.F.R. §1.401(a)(4)-5(b)(3)(ii).

**Retirement** . . . permanent separation from Industry Service after age 55 or Disability.

**Separation Date** . . . the Annuity Starting Date of a Participant or, if earlier, the date of his last Hour of Service in Covered Employment in or before a One-Year Break which has not been cured.

**Service** . . . all Hours of Service in Covered Employment or Contiguous Employment with the Employers.

**Service Benefit** . . . Plan 4.11.

**Severance Benefit Account** . . . Plan 4.07.

**Special Early Retirement Benefit** . . . Plan 4.08.

**Spouse** . . . the lawful spouse of a Participant at his Annuity Starting Date or for one year or more before an earlier death and, to the extent provided in a

Qualified Domestic Relations Order, a prior spouse.

**Super Top-Heavy Plan** . . . IRC 416(h)(2)(B).

**Suspension Notice** . . . Plan 5.08.

**Top-Heavy Group** . . . IRC 416(g)(2)(B).

**Top-Heavy Minimum Benefit** . . . IRC 416(c)(1).

**Top-Heavy Plan** . . . IRC 416(g)(1).

**Trust** . . . the trust created by the Trust Agreement.

**Trust Agreement** . . . the Agreement and Declaration of Trust, originally dated February 22, 1967, between the Union and Delaware Contractors Association as amended to date and in the future.

**Trustees** . . . the Employer and Union representatives appointed to administer the Trust and Plan under the Trust Agreement.

**Union** . . . Local No. 626, United Brotherhood of Carpenters and Joiners of America or its successor and, for Eligible Employees actively at work or available for work on January 1, 1980, and solely with respect to the period before January 1, 1980, Local Union No. 108 of the Wood, Wire and Metal Lathers International Union.

**Vested Participant** . . . Plan 3.04.

**Vesting Years** . . . a period of service used in determining nonforfeitable benefits.

4096.3

AMENDMENT TO
CARPENTERS LOCAL 626 PENSION AND ANNUITY PLAN
(As Restated Effective May 1, 1999)

The undersigned Trustees of the Local 626, United Brotherhood of Carpenters & Joiners of America Pension Fund adopt the following changes to the Carpenters Local 626 Pension & Annuity Plan, as restated effective May 1, 1999.

1.      Effective for new retirees with an Annuity Starting Date on or after May 1, 2000, amend Section 5.05 (Optional Forms) to read as follows:

**5.05     Optional Forms.**   A Participant or Spouse may choose an optional form of payment.

(a)     An unmarried Participant may choose a single life annuity in place of the Basic Form (and its associated death benefits) or a lump sum payment of the Severance Benefit Account in place of monthly payments.

(b)     With the consent of his Spouse, a married Participant may choose a single life annuity, Basic Form, a joint and 75% survivor annuity with his Spouse or a joint and 100% survivor annuity with his Spouse in place of the Joint and Survivor Annuity or a lump sum payment of the Severance Benefit Account in place of monthly payments.

(c)     A Spouse may choose a lump sum payment of the Severance Benefit Account or the Actuarial Equivalent of monthly ~~survivor~~ benefits after the death of an Employee in place of monthly payments.

(d)     An optional form of payment shall be the Actuarial Equivalent of the Normal Form of payment with respect to a Participant or Spouse unless specifically otherwise indicated in the Plan. The monthly payment for a joint and 75% survivor annuity will be 95% of the amount payable as a Joint & Survivor Annuity. The monthly payment for a joint and 100% survivor annuity will be 90% of the amount payable as a Joint and Survivor Annuity.

WITNESS OUR SIGNATURES to memorialize our concurrent or earlier resolution.

UNION TRUSTEES                              MANAGEMENT TRUSTEES

DATED: 3/9 , 2000

07/09/2004   16:31   GEM GROUP DOCK STGHOND                     NO.249   P002
JUL.20.2001   4:35PM   LAW FIRM OF ...

AMENDMENT TO
CARPENTERS LOCAL 626 PENSION AND ANNUITY PLAN
(As Restated Effective May 1, 1999)

Major Topic:            Disability Benefits

General Effective Date:    May 1, 2001

The undersigned, being all of the Trustees of the Local No. 626, United Brotherhood of Carpenters and Joiners of America Pension Fund, a Taft-Hartley Trust, hereby consent to the following changes to the Carpenters Local 626 Pension & Annuity Plan, as restated effective May 1, 1999, to be effective on May 1, 2001 unless otherwise specifically indicated, and direct that this written consent shall be deemed an action of the Board of Trustees of the Fund with the same effect as if taken at a duly noticed and called meeting of the Board attended by a quorum and direct that this writing be filed with the minutes of proceedings with the Board of Trustees — all pursuant to the provisions of Article V, Section 4 of the Agreement and Declaration of Trust establishing the Pension Fund.

1.    Amend Section 1.09(a) (Effective Date) to read as follows:

(b)    Sections 4.02(a) and related Sections 4.03(a), 4.04(a) and 4.05(a) apply to any Active Participant (and any Participant who was disabled under the terms of the Plan) as of May 1, 1993 and any other Participant who returns to Covered Employment after April 30, 1993 and completes a Vesting Year before five (5) consecutive One-Year Breaks.

2.    Amend Section 3.03 (Active Participant) to read as follows:

3.03 Active Participant. A Participant is active in the Plan as long as he meets one of the following criteria and has not retired or suffered a Permanent Break-in-Service.

(a)    The Participant has 400 or more Hours of Service in Covered Employment for the prior Plan Year.

(b)    The Participant has 250 or more Hours of Service in Covered Employment in the two (2) preceding Plan Years.

(c)    The Participant has been unable to work in Covered Employment within the two (2) preceding Plan Years due to accident, sickness or injury. A Participant shall cease to be active if the inability to work in Covered Employment continues beyond two (2) Plan Years, regardless of the cause.

3.    Amend Section 3.07(d) (Grace Periods) to read as follows:

Page 1 of 3

83877-1 — Carpenters 626 Pension Amendment



07/08/2004    10:37    GEM GROUP → JENN SIGMOND    NO.249    D003
JUL.20.2001    4:35PM    LAW FIRM OF SJS

(d)    An absence from Covered Employment due to accident, sickness or injury (up to two (2) Plan Years) or a Disability will not be treated as a break in service.

4. Amend Section 4.02(a)(Normal Retirement Benefit) to read as follows:

(a)    With respect to an Active Participant and any Participant who was disabled under the terms of the Plan on May 1, 1993 or an Active Participant on May 1, 1996, the payment is the sum of his accrued Past Service Benefit, Pre-ERISA Benefit, Post-ERISA Benefit, Future Service Benefit and the Actuarial Equivalent of the Severance Benefit Account.

5.    Amend Section 4.10 (Disability Benefit) to read as follows:

4.10 Disability Benefit. An Active Participant may retire after a Disability which causes him to cease work in Covered Employment and termination of sickness or disability benefits from an employee welfare benefit plan of an Employer other than workers compensation.

(a)    The monthly benefit equals the greater of $100 or his Normal Retirement Benefit and is payable until the earlier of recovery or termination of Disability or the Participant's Normal Retirement Date. A supplement of $75 a month is payable until the Participant is eligible for Medicare benefits.

(b)    A Participant may elect an Early Retirement Benefit if disability benefits are denied, pending appeal or as a complete alternative in the absence of an appeal or upon completion of an appeal. A Participant may elect an Early Retirement Benefit (but not a Special Early Retirement Benefit) if disability benefits terminate before his Normal Retirement Date. If Disability is continuous to the Normal Retirement Date of a Vested Participant, the benefit shall continue as if the retiree then had elected a Normal Retirement Benefit to be paid in the form selected for disability benefits except as provided in (c).

(c)    The sixty-six (66) month guaranty in the Basic Form will be reduced by the number of months of payment of disability benefits.    This rule will apply with or without recovery or termination of Disability before the Normal Retirement Date of a Participant.

6.    Amend the definition of Disability to read as follows:

Page 2 of 3

83877-1 – Carpenters 626 Pension Amendment

**Disability** . . . A physical disability which causes an Eligible Employee to cease work in Covered Employment, and

(a)   in the case of an Eligible Employee with less than 10 Benefit Years on the date of the onset of his disability, prevents him from engaging in any substantial gainful activity in the discretion and opinion of the Trustees and results in an award of disability benefits under the Social Security Act ;

(b)   for applications before June 1, 2001 and with respect to the first sixty (60) months of payment of a disability pension to an Eligible Employee with 10 or more Benefit Years on the date of the onset of his disability, leaves him, in the opinion of a qualified physician selected by the Trustees, unable to perform the principal functions required of a journeyman carpenter in the course of the trade;

(c)   for applications on or after June 1, 2000 and with respect to the first sixty (60) months of payment of a disability pension to an Eligible Employee with 10 or more Benefit Years on the date of the onset of his disability, prevents him from engaging in any substantial gainful activity, in the sole discretion and opinion of the Trustees and, to continue payment beyond sixty (60) months, results in an award of disability benefits under the Social Security Act.

(d)   Employment which is for the purpose of rehabilitation or not incompatible with a finding of total and permanent disability does not prevent a finding of disability.

WITNESS our signatures to confirm our earlier resolutions.

Management Trustees

_Blaine S. Streeper_

_E. Andrew DiSabatino, Jr._

_John J. McMahon, Jr._

Dated:  7-31-, 2001

Union Trustees

_Joseph P. Durham_

_Michael J. McCaffery_

_Stanley A. Lukas_

83877-1 – Carpenters 626 Pension Amendment

Page 3 of 3

CARPENTERS LOCAL 626 PENSION AND ANNUITY PLAN
(As Restated Effective May 1, 1999)

Major Topic:                    Disability Claims Procedures

General Effective Date:         January 1, 2002

The undersigned Trustees of the Local 626, United Brotherhood of Carpenters & Joiners

of America Pension Fund adopt the following changes to the Carpenters Local 626 Pension &

Annuity Plan, as restated effective May 1, 1999, for benefit denials or applications received on or

after January 1, 2002 unless otherwise specifically indicated. Additions are underlined and

deletions are interlineated for presentation of the changes but the underlining or interlineation

shall not form part of the plan.

1.      Amend Section 7.02 to read as follows

7.02    Approval or Denial of Claims. A claimant for benefits shall be notified of
approval or disapproval of the claim.

(a)     Notice of approval may be made by payment or otherwise.

(b)     The Plan shall notify the claimant of the complete or partial denial of an
application in writing within 90 days of the date the claim was filed. The notice shall be
written in a manner which an average person without pension expertise should be able to
understand.

(c)     If special circumstances require additional time for processing the claim, the Plan
may extend the time for response by notice to the claimant mailed within the original 90-
day period. The extension shall not exceed 180 days from the date the claim was filed.

(d)     A denial notice shall explain the reason the claim was denied, make specific
reference to the pertinent Plan provision upon which the denial is based, describe any
additional material or information necessary for the claim to be honored, explain the need
for additional material or information and include a statement that the claimant has a right
to file a written request for review of the claim denial for review of the claim denial
within 60 days of written notification of denial of the claim and the right to sue under
ERISA 502(a) and the right to sue under ERISA 502(a).

(e)     If a claim involves a claim for a Disability benefit, the following additional rules
apply.

109975_1



(i.)    A claimant will be notified of the Plan's benefit determination within a reasonable period of time after the receipt of the claim, but not later than 45 days after receipt of the claim by the Plan. This period may be extended by the Plan for up to 30 days provided that the extension is necessary due to matters beyond the control of the Plan and the claimant is notified prior to the expiration of the initial 45-day period. The notice to the claimant shall state the reason for the extension and the date by which the Plan expects to render a decision. If, prior to the end of the first 30-day extension period, due to matters beyond the control of the Plan, a decision cannot be made within that extension period, the Plan may extend the time for decision up to 30 more days upon notice to the claimant of the reasons for the extension and the date on which the Plan expects to render a decision. If the extension is necessary due to the failure of the claimant to submit the information necessary to decide the claim, the notice of extension must describe the required information. The claimant will then have 45 days from receipt of the notice within which to provide the specified information.

(ii)    A determination to deny a Disability Benefit shall: (A) disclose any internal rule, guideline, protocol or similar criteria relied upon in making an adverse determination or include a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request, and (B) provide that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

2.    Amend Section 7.03 (Request for Review) to read as follows.

**7.03 Request for Review.** A claimant may submit a written request for review by the Trustees at the address on the denial notice or the Plan address in the summary plan description within sixty days of the denial notice or a longer period allowed in a written notice from the Plan. A request for review of a claim for a Disability Benefit may be submitted to the Trustees within one-hundred eighty (180) days after written denial of the claim. The claimant or his duly authorized representative may review pertinent documents available to the Plan and submit issues and comments in writing in connection with a request for review.

3.    Amend Section 7.04 (Decision on Review) to add a new subsection (e) to read as follows.

**7.04 Decision on Review.** A decision on a request for review ordinarily shall be made by the Trustees at their regular quarterly meeting scheduled at least 30 days after an appeal is received. If special circumstances require extension of time for processing, a decision may be deferred to the following scheduled quarterly meeting. Written notice of the extension shall be mailed to the claimant within the original period.

(a)    The decision on review shall be in writing and, if adverse to the claimant, include specific reasons for the decision and specific references to the Plan, a description of any further or voluntary appeal procedures, a statement that the claimant is entitled to receive,

109374



upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits and the right to sue under ERISA 502(a).

(b)    The following special rules apply for review of a denied claim for a Disability Retirement Benefit.

(i)    An adverse determination will be reviewed by a Plan consultant who has no role in the initial claim denial and the review will be an independent one without giving the original denial any special consideration. The review shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(ii)    If a medical judgment is involved, the person reviewing the claimant's appeal will consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment and who has no role in the initial claim denial.  The medical or vocational experts whose advice was obtained will be identified.

WITNESS OUR SIGNATURES.

UNION TRUSTEES                              MANAGEMENT TRUSTEES

_____                     _____

_____                     _____

DATED: January 14 _____, 2003

109374